## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALBERT PINEY, ROMAN DIAZ, JOSE MARTINEZ, FREDDY SUAZO, and DESMOND GRANT on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TARGET CORPORATION, MSG ENTERTAINMENT HOLDINGS, LLC, THE NEW YORK YANKEES, LP, NYU LANGONE HOSPITAL F/K/A NYU LUTHERAN MEDICAL CENTER, MOUNT SINAI HEALTH SYSTEM, INC., THE NEW YORK TIMES COMPANY, B.J.'S WHOLESALE CLUB HOLDINGS INC., RXR REALTY LLC, TISHMAN SPEYER ASSOCIATES LIMITED PARTNERSHIP D/B/A 509 W 34, LLC, BUENA VISTA THEATRICAL GROUP LTD. D/B/A DISNEY WORLDWIDE SERVICES INC., BXP, INC. F/K/A BOSTON PROPERTIES, INC., KERING AMERICAS, INC., APPLE INC., CONGREGATION RODEPH SHOLOM, 34TH STREET PARTNERSHIP, BANK OF AMERICA CORPORATION, THE TJX COMPANIES, INC., D/B/A MARSHALLS, THE GENTING GROUP D/B/A RESORTS WORLD CASINO, and DOES NOS. 1-50,<br><br>      Defendants. | Civil Action No.: 1:25-cv-00671<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Albert Piney ("Piney"), Roman Diaz ("Diaz") Jose Martinez ("Martinez"), Freddy Suazo ("Suazo"), and Desmond Grant ("Grant") (together, the "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Faruqi & Faruqi, LLP, hereby allege as follows against Defendants City of New York, New York Police Department (collectively, the "NYPD"), Target Corporation ("Target"), MSG Entertainment Holdings, LLC ("MSG"), The New York Yankees, LP ("Yankees"), NYU Langone Hospital f/k/a NYU Lutheran Medical Center ("NYU Lutheran"), Mount Sinai Health System, Inc. ("Mount Sinai"), The New

1

York Times Company ("NYT"), B.J.'s Wholesale Club Holdings Inc. ("BJs"), RXR Realty LLC ("RXR"), Tishman Speyer Associates Limited Partnership d/b/a 509 W 34, LLC ("Tishman"), Buena Vista Theatrical Group Ltd. d/b/a Disney Worldwide Services Inc. ("Disney"), BXP, Inc. f/k/a Boston Properties Inc., ("Boston Properties"), Kering Americas, Inc. ("Kering"), Apple Inc. ("Apple"), Congregation Rodeph Sholom ("Rodeph Sholom"), 34th Street Partnership ("34th St."), Bank of America Corporation ("BOA"), The TJX Companies, Inc., d/b/a Marshalls ("Marshalls"), The Genting Group d/b/a Resorts World Casino ("Resorts World Casino"), and DOES NOS. 1-50 (collectively, the "Vendors"), (together with the NYPD, "Defendants"):

## NATURE OF THE CLAIMS

1.      Pursuant to its Paid Detail Program, the NYPD staffs Police Officers, Detectives, Sergeants, Lieutenants, and Captains (together, referred to as "Officers") at private businesses throughout New York City – including those owned and operated by the Vendors – to perform off-duty uniformed security work for hourly pay.

2.      The NYPD and the Vendors together control the compensation and terms and conditions of employment of the Officers assigned to the Vendors' places of business.

3.      The NYPD and the Vendors engage in a pattern and practice of failing to compensate Officers for the work they perform through the Paid Detail Program, routinely failing to pay their wages until weeks or even months after their regularly scheduled pay days.

4.      Further, the NYPD and the Vendors engage in a pattern and practice of failing to pay Officers at all for the work they perform through the Paid Detail Program.

5.      Additionally, the Vendors fail to provide their employees with Notices of Pay Rate and accurate wage statements, as required by law.

6.      Plaintiffs bring claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et*

*seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated Officers employed by the NYPD who participated in the Paid Detail Program at any time during the full statute of limitations period.

7.      Plaintiffs also bring claims against the Vendors under the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL") and the Freelance Isn't Free Act, N.Y.C. Admin. Code §§ 20-927, *et seq.* ("FIFA") as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Officers employed by the NYPD who participated in the Paid Detail Program at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

9.      Pursuant to 28 U.S.C § 1367, this Court has supplemental jurisdiction over Plaintiffs' related claims arising under State and City law.

10.      Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A.      Plaintiff Albert Piney

11.      Piney is a resident of the State of New York and has been employed by Defendants from July 6, 2011 to the present.

12.      At all relevant times, Piney was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**B.**     <u>**Plaintiff Roman Diaz**</u>

13.     Diaz is a resident of the State of New York and has been employed by Defendants from January 2014 to the present.

14.     At all relevant times, Diaz was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**C.**     <u>**Plaintiff Jose Martinez**</u>

15.     Martinez is a resident of the State of New York and has been employed by Defendants from January 2009 to the present.

16.     At all relevant times, Martinez was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**D.**     <u>**Plaintiff Freddy Suazo**</u>

17.     Suazo is a resident of the State of New York and has been employed by Defendants from January 8, 2008 to the present.

18.     At all relevant times, Martinez was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**E.**     <u>**Plaintiff Desmond Grant**</u>

19.     Grant is a resident of the State of New York and has been employed by Defendants from July 5, 2017 to the present.

20.     At all relevant times, Grant was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**F.**     <u>**Defendant City of New York**</u>

21.     The City of New York is a municipal corporation that controls and oversees, *inter alia*, the operations of the NYPD throughout its five boroughs.

22.    At all relevant times, the City of New York controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

23.    At all relevant times, the City of New York established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

24.    At all relevant times, the City of New York maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

25.    At all relevant times, the City of New York was an "employer" within the meaning of all relevant statutes and regulations.

**G.    Defendant New York City Police Department**

26.    The NYPD is a public administrative agency that controls and oversees the police throughout the City of New York's five boroughs.

27.    The NYPD maintains its principal office at One Police Plaza, New York, NY 10007.

28.    At all relevant times, the NYPD controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

29.    At all relevant times, the NYPD established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

30.     At all relevant times, the NYPD maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

31.     At all relevant times, the NYPD was an "employer" within the meaning of all relevant statutes and regulations.

**H.     Defendant Target Corporation**

32.     Target is a foreign business corporation with its principal place of business located at 1010 Dale St. N. St. Paul, MN 55117.

33.     Target participates in the NYPD's Paid Detail Program.

34.     At all relevant times, Target controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

35.     At all relevant times, Target established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

36.     At all relevant times, Target maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

37.     At all relevant times, Target was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**I.     Defendant MSG Entertainment Holdings, LLC**

38.     MSG is a foreign limited liability company with its principal place of business located at 4 Pennsylvania Plaza, New York, New York 10001.

39.     MSG participates in the NYPD's Paid Detail Program.

40.     At all relevant times, MSG controlled and directed the terms of employment and

compensation of Plaintiffs and all persons similarly situated.

41.     At all relevant times, MSG established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

42.     At all relevant times, MSG maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

43.     At all relevant times, MSG was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**J.      Defendant The New York Yankees, LP**

44.     Yankees is a domestic limited partnership with its principal place of business located at address: 161 St River Avenue, Bronx NY 10451.

45.     Yankees participates in the NYPD's Paid Detail Program.

46.     At all relevant times, Yankees controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

47.     At all relevant times, Yankees established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

48.     At all relevant times, Yankees maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

49.     At all relevant times, Yankees was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**K.**      **Defendant NYU Langone Hospital f/k/a NYU Lutheran Medical Center**

50.      NYU Lutheran is a domestic corporation with its principal place of business located at 150 55th Street, Brooklyn NY 11220.

51.      NYU Lutheran participates in the NYPD's Paid Detail Program.

52.      At all relevant times, NYU Lutheran controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

53.      At all relevant times, NYU Lutheran established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

54.      At all relevant times, NYU Lutheran maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

55.      At all relevant times, NYU Lutheran was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**L.**      **Defendant Mount Sinai Health System, Inc.**

56.      Mount Sinai is a domestic corporation with its principal place of business located at One Gustave L. Levy Place, New York NY 10029.

57.      Mount Sinai participates in the NYPD's Paid Detail Program.

58.      At all relevant times, Mount Sinai controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

59.      At all relevant times, Mount Sinai established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision,

monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

60.     At all relevant times, Mount Sinai maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

61.     At all relevant times, Mount Sinai was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**M.**     **Defendant The New York Times Company**

62.     NYT is a domestic business corporation with its principal place of business located at 620 Eighth Avenue, New York NY 10018.

63.     NYT participates in the NYPD's Paid Detail Program.

64.     At all relevant times, NYT controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

65.     At all relevant times, NYT established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

66.     At all relevant times, NYT maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

67.     At all relevant times, NYT was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**N.**     **Defendant B.J.'s Wholesale Club Holdings Inc.**

68.     BJs is a foreign business corporation with its principal place of business located at 350 Campus Drive, Marlborough MA 01752.

69.     BJs participates in the NYPD's Paid Detail Program.

70.    At all relevant times, BJs controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

71.    At all relevant times, BJs established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

72.    At all relevant times, BJs maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

73.    At all relevant times, BJs was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**O.    Defendant RXR Realty LLC**

74.    RXR is a foreign limited liability company with its principal place of business located at 28 Liberty Street, New York, New York 10005.

75.    RXR participates in the NYPD's Paid Detail Program.

76.    At all relevant times, RXR controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

77.    At all relevant times, RXR established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

78.    At all relevant times, RXR maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

79.    At all relevant times, RXR was an "employer" and/or "hiring party" within the

meaning of all relevant statutes and regulations.

**P.    Defendant Tishman Speyer Associates Limited Partnership d/b/a 509 W 34, LLC**

80.    Tishman is a domestic limited partnership with its principal place of business located at 45 Rockefeller Plaza, New York, New York 100225.

81.    Tishman participates in the NYPD's Paid Detail Program.

82.    At all relevant times, Tishman controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

83.    At all relevant times, Tishman established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

84.    At all relevant times, Tishman maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

85.    At all relevant times, Tishman was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**Q.    Defendant Buena Vista Theatrical Group Ltd. d/b/a Disney Worldwide Services Inc.**

86.    Disney is a domestic business corporation with its principal place of business located at 214 West 42nd Street, 8th Floor, New York, New York 10036.

87.    Disney participates in the NYPD's Paid Detail Program.

88.    At all relevant times, Disney controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

89.    At all relevant times, Disney established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated,

including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

90.    At all relevant times, Disney maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

91.    At all relevant times, Disney was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**R.    Defendant BXP, Inc. f/k/a Boston Properties Inc.**

92.    Boston Properties is a foreign limited liability company with its principal place of business located at 800 Boylston Street, Suite 1900, Boston MA 02199.

93.    Boston Properties participates in the NYPD's Paid Detail Program.

94.    At all relevant times, Boston Properties controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

95.    At all relevant times, Boston Properties established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

96.    At all relevant times, Boston Properties maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

97.    At all relevant times, Boston Properties was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**S.    Defendant Kering Americas, Inc.**

98.    Kering is a foreign business corporation with its principal place of business located at 65 Bleecker Street, 2nd Floor, New York NY 10012.

99.     Kering participates in the NYPD's Paid Detail Program.

100.    At all relevant times, Kering controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

101.    At all relevant times, Kering established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

102.    At all relevant times, Kering maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

103.    At all relevant times, Kering was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**T.    Defendant Apple Inc.**

104.    Apple is a foreign business corporation with its principal place of business located at One Apple Park Way, Cupertino CA 95014.

105.    Apple participates in the NYPD's Paid Detail Program.

106.    At all relevant times, Apple controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

107.    At all relevant times, Apple established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

108.    At all relevant times, Apple maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

109.    At all relevant times, Apple was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**U.    Defendant Congregation Rodeph Sholom**

110.    Rodeph Sholom is a domestic corporation with its principal place of business located at 7 West 83rd Street, New York NY 10024.

111.    Rodeph Sholom participates in the NYPD's Paid Detail Program.

112.    At all relevant times, Rodeph Sholom controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

113.    At all relevant times, Rodeph Sholom established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

114.    At all relevant times, Rodeph Sholom maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

115.    At all relevant times, Rodeph Sholom was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**V.    Defendant 34th Street Partnership**

116.    34th St. is a domestic corporation with its principal place of business located at 1065 Avenue of the Americas, Suite 2400, New York NY 10018.

117.    34th St. participates in the NYPD's Paid Detail Program.

118.    At all relevant times, 34th St. controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

119.    At all relevant times, 34th St. established, implemented, disseminated, and

controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

120.     At all relevant times, 34th St. maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

121.     At all relevant times, 34th St. was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**W.     Defendant Bank of America Corporation**

122.     BOA is a foreign business corporation with its principal place of business located at 100 North Tryon Street, Charlotte NC 28255.

123.     BOA participates in the NYPD's Paid Detail Program.

124.     At all relevant times, BOA controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

125.     At all relevant times, BOA established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

126.     At all relevant times, BOA maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

127.     At all relevant times, BOA was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**X.     Defendant The TJX Companies, Inc., d/b/a/ Marshalls**

128.     Marshalls is a foreign business corporation with its principal place of business

located at 770 Cochituate Road, Framingham MA 01701.

129.    Marshalls participates in the NYPD's Paid Detail Program.

130.    At all relevant times, Marshalls controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

131.    At all relevant times, Marshalls established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

132.    At all relevant times, Marshalls maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

133.    At all relevant times, Marshalls was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**Y.    Defendant The Genting Group d/b/a Resorts World Casino**

134.    Resorts World Casino is a foreign business corporation with its principal place of business located at 110-00 Rockaway Blvd, Jamaica NY 11420.

135.    Resorts World Casino participates in the NYPD's Paid Detail Program.

136.    At all relevant times, Resorts World Casino controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

137.    At all relevant times, Resorts World Casino established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

138.    At all relevant times, Resorts World Casino maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

139.    At all relevant times, Resorts World Casino was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**Z.    Defendants Does Nos. 1 through 10**

140.    Plaintiffs do not know the true names and capacities, whether individual, partners, or corporate, of Does Nos. 1 through 10, and for that reason sues Does Nos. 1 through 10 under fictitious names.

141.    Upon information and belief, Does Nos. 1 through 10 participate in the NYPD's Paid Detail Program.

142.    Upon information and belief, at all relevant times, Does Nos. 1 through 10 controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

143.    Upon information and belief, at all relevant times, Does Nos. 1 through 10 established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

144.    Upon information and belief, at all relevant times, Does Nos. 1 through 10 maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

145.    Upon information and belief, at all relevant times, Does Nos. 1 through 10 were "employers" and/or "hiring parties" within the meaning of all relevant statutes and regulations.

## FACTS

### A.    Background

146.    In or around the Spring of 1998, the NYPD created the Paid Detail Program ("PDP") to allow employees of the NYPD to perform off-duty uniformed security work within New York City.

147.    The primary purpose of the PDP is to provide a highly visible police presence at participating businesses.

148.    NYPD personnel who hold any of the following titles may participate in the PDP: (i) Police Officer; (ii) Detective; (iii) Sergeant; (iv) Lieutenant; or (v) Captains (collectively, "Officers").

149.    The PDP is the only authorized program for businesses to employ uniformed off-duty Officers.

150.    The PDP allows, with limited exceptions, any event planner, corporation, or interested organization approved by the NYPD to employ Officers part-time to provide uniformed security work.

151.    Officers are assigned to work at various businesses through the PDP, including, *inter alia*: (i) retail chains; (ii) department stores; (iii) supermarkets; (iv) houses of worship; (v) sports complexes; (vi) banks; and (vii) office buildings.

152.    The NYPD and the various Vendors work in concert to control all aspects of Officers' employment through the PDP.

### B.    NYPD's Administration of the PDP and Employment of Officers

#### i.    Approval and Denial of Businesses

153.    The NYPD must approve a business before it is permitted to employ Officers

through the PDP.

154.    The NYPD sets the parameters for business participation in the PDP.

155.    The NYPD allows, with limited exceptions, any event planner, corporation, or interested organization to qualify for the PDP, subject to the NYPD's approval.

156.    The NYPD excludes, *inter alia*, government and quasi-governmental entities and personal protection or bodyguard companies from participating in the PDP.

157.    To qualify, businesses are required to provide various information requested by the NYPD.

158.    The NYPD also performs a general background and credit check of each business.

159.    After the NYPD reviews a business's responses, background information, and credit information, it requires the business to sign a "Participation Agreement" and submit a certificate of insurance.

160.    Finally, the Commissioner of the NYPD reviews the signed Participation Agreement and certificate of insurance before granting or denying final approval for the business to participate in the PDP.

**ii.    Approval or Denial of NYPD Employees to Qualify as Officers**

161.    The NYPD also sets the parameters for Officers to participate in the PDP.

162.    To qualify, an Officer must meet various criteria, including, *inter alia*, possessing greater than one year of service in the NYPD and maintaining full duty status throughout the duration of the Officer's participation in the PDP.

163.    The NYPD excludes employees who are considered chronically sick, on performance monitoring, or in possession of "position limitations."

164.    Further, the NYPD limits participation in the PDP to personnel holding specific

titles and ranks. *See supra* ¶ 148.

165. NYPD employees must obtain approval from their commanders and submit a written application, as well as tax documentation, to be considered for participation in the PDP.

166. Further, the NYPD's Paid Detail Unit reviews each applicant's work record before approving them to participate in the PDP.

167. The NYPD maintains authority to unilaterally remove an Officer from the PDP if they are promoted or transferred to a position that disqualifies them, or they are placed on performance monitoring.

### iii.    Direction and Control of PDP Details

168. The NYPD maintains direction, control, and supervision of the assignment of Officers to PDP details.

169. Further, the NYPD maintains and operates an online portal through which participating businesses may schedule Officers to perform off-duty uniformed security work.

170. The NYPD controls when businesses may schedule Officers for details and requires that details last from four to 12 hours.

171. The NYPD evaluates each requested detail and, based on its assessment of safety and security concerns, determines the minimum number of Officers necessary for assignment, as well as the number of Officers required to supervise.

172. The NYPD also controls and determines when Officers may accept details and the number of hours per month Officers may work the same.

173. The NYPD limits Officers with more junior ranks, such as Police Officer or Detective, to a maximum of 80 hours of PDP work per month.

174. The NYPD limits Officers with the more senior ranks, such Sergeant or Lieutenant,

to a maximum of 30 hours of PDP work per month.

175.    The NYPD prohibits Officers from working PDP assignments within three hours of the start of their regularly scheduled non-PDP tours.

176.    Similarly, the NYPD prohibits Officers from working PDP assignments within one hour of the end of their regularly scheduled non-PDP tours.

177.    The NYPD requires Officers to complete Paid Detail Cards for each PDP detail they work.

178.    The NYPD prohibits Officers from trading PDP details with one another.

179.    Per its policies, the NYPD suspends Officers who request PDP details on behalf of other Officers or perform PDP details originally assigned to another Officer without the NYPD's prior authorization.

180.    The NYPD also requires that Officers provide documentation to their NYPD supervisors in the event they have to cancel a previously scheduled PDP detail.

181.    Officers who fail to provide such documentation risk being deemed ineligible for future PDP assignments.

182.    The NYPD prohibits Officers from working for participating businesses, including the Vendors, outside of the PDP.

183.    Officers who schedule details directly with a participating business are disciplined and deemed ineligible for future PDP assignments.

### iv.    Control Over Officers' Uniforms and Physical Appearance on PDP Details

184.    The NYPD maintains control and direction over the uniforms and physical appearance of Officers on PDP details.

185.    The NYPD establishes and enforces a dress code for all Officers on PDP details.

186.    The NYPD mandates that Officers wear NYPD-approved clothing on PDP details, including full uniforms, vests, and eight-point caps.

187.    The NYPD prohibits Officers from wearing, *inter alia*, baseball caps, raid jackets, and other non-uniform apparel.

188.    The NYPD requires Officers to conform to the same grooming and appearance standards applicable to Officers on regularly scheduled non-PDP tours.

189.    The NYPD directs Officers to bring NYPD-issued radios, batons, and activity logs on PDP assignments.

190.    The NYPD subjects Officers to inspection by NYPD supervisors to ensure compliance with PDP uniform and physical appearance requirements.

**v.    Control Over Officers' Work During PDP Details**

191.    The NYPD maintains direction, control, and supervision of the work performed by Officers during PDP details.

192.    Upon arrival at a participating business, the NYPD commands Officers to report to the business's representative or to the ranking Officer supervising the detail.

193.    Additionally, the NYPD directs Officers to sign in on a Paid Detail Attendance Sheet when they arrive.

194.    The NYPD cautions Officers that they are subject at all times to NYPD rules and regulations while working on PDP details.

195.    The NYPD assigns high-ranking officials, such as Sergeants, Lieutenants, and Captains, to perform daily rounds of PDP details to monitor Officers' work.

196.    The NYPD mandates that Officers report to the NYPD any arrests or Officer injuries that occur on PDP details.

197.    At the conclusion of a PDP detail, the NYPD directs Officers to sign out on a Paid Detail Attendance Sheet and present a Paid Detail Card to the participating business's representative or the ranking Officer for signature.

198.    The NYPD instructs participating businesses to report any Officer who breaches NYPD standards.

199.    The NYPD also instructs participating businesses to report any Officer who breaches the business's own internal policies.

200.    The NYPD disciplines Officers who breach NYPD standards or a business's policies on a PDP detail by, *inter alia*: (i) removing the given Officer from the detail; (ii) banning the Officer from future details with a specific business; (iii) suspending an Officer's PDP eligibility; or (iv) expelling an Officer from participation in the PDP completely.

**vi.    Control Over Officers' Wages**

201.    The NYPD directs and controls the manner in which Officers are paid through the PDP.

202.    The NYPD establishes uniform hourly rates based on each Officer's rank.

203.    The NYPD has set an hourly rate of $49.00 for Officers with the rank of Police Officer or Detective.

204.    The NYPD also charges participating businesses an administrative fee of $4.90 for each hour of PDP work performed by a Police Officer or Detective.

205.    The NYPD has set an hourly rate of $61.00 for Officers with the rank of Sergeant.

206.    The NYPD also charges participating businesses an administrative fee of $6.10 for each hour of PDP work performed by a Sergeant.

207.    The NYPD has set an hourly rate of $68.00 for Officers with the rank of Lieutenant.

208.    The NYPD also charges participating businesses an administrative fee of $6.80 for each hour of PDP work performed by a Lieutenant.

209.    The NYPD directs and controls the employment status of Officers, mandating that Officers are classified (incorrectly) as independent contractors for PDP details.

210.    The NYPD requires payment to Officers on an IRS Form 1099, as opposed to an IRS Form W-2.

211.    The NYPD directs Officers to list 1 Police Plaza, New York, New York 10038 (rather than the Officers' home addresses) when completing tax forms for PDP details.

212.    The NYPD administers payment to Officers through the NYPD's Paid Detail Unit.

213.    The NYPD does not permit participating businesses to pay Officers directly.

**C.    Businesses' Participation in the PDP and Employment of Officers**

214.    Once a business such as one of the Vendors obtains approval to employ Officers, it coordinates with the NYPD to assess how many Officers the business needs to staff a particular PDP detail.

215.    Businesses, including the Vendors, direct and control the dates Officers work on PDP details.

216.    Businesses post solicitations on the PDP portal for Officers to view and ultimately accept.

217.    Businesses, including the Vendors, each agree to pay Officers at the uniform hourly rates set forth in the PDP.

218.    Once an Officer is hired, participating businesses, including the Vendors, direct and control the Officer throughout the PDP detail.

219.    Businesses, including the Vendors, direct Officers to the exact location where they

are to work throughout the PDP detail.

220.    Businesses, including the Vendors, determine the meal and break policies for Officers and dictate the circumstances under which an Officer may intervene, such as by detaining a customer suspected of theft.

221.    Businesses, including the Vendors, also require Officers to report their work in Activity Logs at pre-determined intervals.

222.    Businesses, including the Vendors, also subject Officers to discipline and report Officers to the NYPD for failing to follow the business's policies.

223.    Businesses, including the Vendors, enforce NYPD standards in the same manner, by reporting Officers for failing to comply with the same.

224.    Businesses, including the Vendors, control the staffing of Officers insofar as they may decline an Officer who accepts a detail through the PDP portal.

225.    Businesses, including the Vendors, possess the power to extend an Officer's PDP detail past its scheduled end time.

226.    Businesses, including the Vendors, direct and control when Officers are paid for work performed on PDP details.

**D.    Failure to Timely Pay Wages**

227.    Defendants engage in a pattern and practice of delaying payment of wages to Plaintiffs and all other Officers beyond their regularly scheduled paydays.

228.    Plaintiffs and all other Officers' pay periods cover a 14-day time frame, with their regularly scheduled pay day being every other Friday.

229.    However, Defendants routinely fail to pay Plaintiffs and all other Officers for PDP details for weeks, and even months, after Officers complete PDP details.

**E.**     **Failure to Pay Minimum and All Earned Wages**

230.     Similarly, Defendants engage in a pattern and practice of denying Plaintiffs and all other Officers minimum wages and all earned wages at their regular rates of pay.

231.     For PDP details, Defendants agree to pay Plaintiffs and all other Officers at established hourly rates based on the Officer's respective NYPD rank.

232.     The established hourly rates are communicated by Defendants on the PDP portal where Plaintiffs and all other Officers accept PDP details.

233.     However, Defendants sometimes fail to pay any wages at all to Plaintiffs and other Officers for completed PDP details.

**F.**     **Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

234.     The NYLL requires that employers, including the Vendors, provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

235.     Throughout the statutory period, the Vendors have never provided Plaintiffs or any other Officer with Notices of Pay Rate.

236.     The NYLL also requires that employers, including the Vendors, issue or provide employees with accurate wage statements with each payment of wages.

237.    The Vendors never furnished Plaintiffs or any of the other Officers with accurate wage statements during the statutory period.

238.    As a result of Vendors' failure to furnish Notices of Pay Rate and accurate wage statements, Plaintiffs and other Officers have suffered concrete harm.

239.    Specifically, Plaintiffs and other Officers have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid and/or not paid properly; and (iii) taking appropriate action to obtain the payments due to them.

**G.    Plaintiffs' Work for Defendants**

**i.    Background**

240.    Piney was hired by the NYPD as a Police Officer on or around July 6, 2011.

241.    In or around 2013-2014, Piney began participating in the PDP.

242.    In total, Piney has worked over 615 PDP details for Defendants at a number of different businesses, including each of the Vendors.

243.    Diaz was hired by the NYPD as a Police Officer in or around 2014 and is now a Lieutenant.

244.    In or around 2015, Diaz began participating in the PDP.

245.    In total, Diaz has worked over 500 PDP details for Defendants at a number of different businesses, including each of the Vendors.

246.    Martinez was hired by the NYPD as a Police Officer on or around January 2009.

247.    In or around March 2016, Martinez began participating in the PDP.

248.    In total, Martinez has worked over 325 PDP details for Defendants at a number of different businesses, including each of the Vendors.

249.    Suazo was hired by the NYPD as a Police Officer on or around January 8, 2008.

250.    In or around June 2011, Suazo began participating in the PDP.

251.    In total, Suazo has worked over 495 PDP details for Defendants at a number of different businesses, including each of the Vendors.

252.    Grant was hired by the NYPD as a Police Officer on or around July 5, 2017.

253.    In or around 2018, Grant began participating in the PDP.

254.    In total, Grant has worked over 265 PDP details for Defendants at a number of different businesses, including each of the Vendors.

255.    At all times during their PDP details at each of the Vendors, the NYPD and each Vendor jointly supervised and controlled the terms of Plaintiffs' employment by, *inter alia*, assigning them radios and directing them as to: (1) the specific instructions and directions for the work they were to perform; (2) the specific policies and regulations Plaintiffs were required to follow while working for the Vendors; (3) the conduct or behavior that was prohibited verses what was expected while working for the Vendors; (4) the specific areas they were required to monitor and the manner in which they were required to patrol them; (5) suspicious activity they were required to look out for; (6) the manner in which they were required to respond to various incidents; (7) the specific time they were permitted to take a meal break; (8) what they were required to do upon their return from lunch; (9) which other Officers they were required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in which they maintained their appearances, including the requirement that Plaintiffs wear their eight-point hat throughout the entirety of their shift.

**ii.    Wage Violations**

256.    Defendants failed to properly pay Plaintiffs for their hours worked on PDP details

in several ways.

257.    Defendants failed to timely pay Plaintiffs for their hours worked on PDP details.

258.    Throughout the statutory period, Plaintiffs were paid their wages in pay periods spanning a 14-day timeframe, with their regularly scheduled pay days being every other Friday.

259.    However, Defendants routinely failed to pay Plaintiffs for their PDP shifts on their regularly scheduled pay days.

260.    On or around March 21, 2023, Piney worked his first PDP detail at RXR.

261.    Piney worked approximately 55 shifts at RXR, most recently on October 29, 2024.

262.    Piney never received timely payment of wages for the PDP shifts he worked at RXR, and instead waited weeks and even months for his paychecks.

263.    For example, on October 14, 2024, Piney completed a PDP detail at RXR for a total of eight (8) hours but was not paid for this work until approximately two months later, in late December 2024.

264.    On or around February 21, 2023, Piney worked his first PDP detail at Tishman (The Spiral).

265.    Piney worked approximately 41 shifts at Tishman (The Spiral), most recently on October 22, 2024.

266.    Additional, Piney also worked over 120 shifts at Rockefeller Center, which upon information and belief is owned by Defendant Tishman, most recently on July 25, 2023.

267.    Piney never received timely payment of wages for the PDP shifts he worked at Tishman (The Spiral) or Rockefeller Center, and instead waited weeks and even months for his paychecks.

268.    For example, on June 18, 2024, Piney completed a PDP detail at Tishman (The

Spiral) for a total of eight (8) hours but was not paid for this work until several weeks later in August 2024.

269.    On or around February 7, 2023, Piney worked his first PDP detail at Disney.

270.    Piney worked approximately 23 shifts at Disney, most recently on March 28, 2024.

271.    Piney never received timely payment of wages for the PDP shifts he worked at Disney, and instead waited weeks and even months for his paychecks.

272.    For example, on March 28, 2024, Piney completed a PDP detail at Disney for a total of six (6) hours but was not paid for this work until approximately two months later in May 2024.

273.    On or around November 13, 2023, Piney worked his first PDP detail at MSG.

274.    Piney worked approximately three shifts at MSG, most recently on March 4, 2024.

275.    Piney never received timely payment of wages for the PDP shifts he worked at MSG, and instead waited weeks and even months for his paychecks.

276.    For example, on March 4, 2024, Piney completed a PDP detail at MSG for a total of five (5) hours but was not paid for this work until several weeks later in April 2024.

277.    On or around April 20, 2023, Piney worked his first PDP detail at Boston Properties.

278.    Piney worked approximately four shifts at Boston Properties, most recently on November 10, 2023.

279.    Piney never received timely payment of wages for the PDP shifts he worked at Boston Properties, and instead waited weeks and even months for his paychecks.

280.    On or around December 9, 2021, Diaz worked his first PDP detail at Mount Sinai.

281.    Diaz worked approximately 97 shifts at Mount Sinai, most recently on January 23,

2024.

282.    Diaz never received timely payment of wages for the PDP shifts he worked at Mount Sinai, and instead waited weeks and even months for his paychecks.

283.    For example, on January 2, 2024, Diaz completed a PDP detail at Mount Sinai for a total of eight (8) hours but was not paid for this work until several weeks later in February 2024.

284.    On or around November 25, 2021, Diaz worked his first PDP detail at NYT.

285.    Diaz worked approximately 22 shifts at NYT, most recently on February 21, 2024.

286.    Diaz never received timely payment of wages for the PDP shifts he worked at NYT, and instead waited weeks and even months for his paychecks.

287.    For example, on December 8, 2023, Diaz completed a PDP detail at NYT for a total of eight (8) hours but was not paid for this work until approximately two months later, February 2024.

288.    On or around November 29, 2022, Martinez worked his first PDP detail at Kering.

289.    Martinez worked approximately 89 shifts at Kering, most recently on January 19, 2025.

290.    Martinez never received timely payment of wages for the PDP shifts he worked at Kering, and instead waited weeks and even months for his paychecks.

291.    For example, on October 21, 2024, Martinez completed a PDP detail at Kering for a total of 8.25 hours but was not paid for this work until over two months later on December 23, 2024.

292.    To this day, Martinez has not been paid for his last three PDP shifts at Kering.

293.    On or around March 28, 2018, Martinez worked his first PDP detail at NYU Lutheran.

294.    Martinez worked approximately five shifts at NYU Lutheran, most recently on December 23, 2024.

295.    Martinez never received timely payment of wages for the PDP shifts he worked at NYU Lutheran, and instead waited weeks and even months for his paychecks.

296.    To this day Martinez has not been paid at all for the eight (8) hour PDP shift he worked at NYU Lutheran on December 23, 2024.

297.    On or around March 31, 2016, Martinez worked his first PDP detail at BJs.

298.    Martinez worked approximately eight shifts at BJs, most recently on December 18, 2024.

299.    Martinez never received timely payment of wages for the PDP shifts he worked at BJs, and instead waited weeks and even months for his paychecks.

300.    For example, on September 12, 2024, Martinez completed a PDP detail at BJs for a total of eight (8) hours but was not paid for this work until approximately one month later in October 2024.

301.    On or around March 10, 2017, Martinez worked his first PDP detail at Rodeph Sholom.

302.    Martinez worked approximately nine shifts at Rodeph Sholom, most recently on September 21, 2024.

303.    Martinez never received timely payment of wages for the PDP shifts he worked at Rodeph Sholom, and instead waited weeks and even months for his paychecks.

304.    For example, on September 21, 2024, Martinez completed a PDP detail at Rodeph Sholom for a total of 6.5 hours but was not paid for this work until approximately one month later in October 2024.

305.    On or around September 18, 2024, Martinez worked his first PDP detail at Apple.

306.    Martinez worked approximately two shifts at Apple, most recently on September 19, 2024.

307.    Martinez never received timely payment of wages for the PDP shifts he worked at Apple, and instead waited weeks for his paychecks.

308.    For example, on September 18, 2024, Martinez completed a PDP detail at Apple for seven (7) hours but was not paid for this work until several weeks later in October 2024.

309.    On or around March 16, 2023, Martinez worked a PDP detail at 34th St.

310.    Martinez did not receive timely payment of wages for the PDP shift he worked at 34th St., and instead waited months for his paycheck.

311.    For example, Martinez was not paid for his March 16, 2023 eight (8) hour PDP shift at 34th St. until approximately three months later in June 2023.

312.    On or around March 6, 2023, Martinez worked a PDP detail at BOA.

313.    Martinez did not receive timely payment of wages for the PDP shift he worked at BOA, and instead waited weeks for his paycheck.

314.    For example, Martinez was not paid for his March 6, 2023 four (4) hour PDP shift at BOA until several weeks later in April 2023.

315.    On or around August 12, 2011, Suazo worked his first PDP detail at Yankees.

316.    Suazo worked over 60 shifts at Yankees, most recently on December 28, 2024.

317.    Suazo never received timely payment of wages for the PDP shifts he worked at Yankees, and instead waited weeks and even months for his paychecks.

318.    For example, on May 19, 2024, Suazo completed a PDP detail at Yankees for a total of six (6) hours but was not paid for this work until approximately two months later in July

2024.

319.    On or around December 1, 2024, Suazo worked an eight (8) hour PDP detail at Rockefeller Center.

320.    To this day, Suazo has not been paid for the eight (8) hours of work he performed at Rockefeller Center almost two months earlier on December 1, 2024.

321.    Most recently, on March 17, 2024, Grant worked a seven (7) hour PDP shift at Target.

322.    Grant never received timely payment of wages for the PDP shifts he worked at Target, and instead waited months for his paychecks.

323.    For example, Grant was not paid for his March 17, 2024 seven (7) hour PDP shift at Target until approximately three months later in June 2024.

324.    On May 11, 2022, Grant worked a six (6) hour PDP shift at Marshalls.

325.    Grant never received timely payment of wages for the PDP shifts he worked at Marshalls, and instead waited weeks and even months for his paychecks.

326.    For example, Grant was not paid for his May 11, 2022 six (6) hour PDP shift at Marshalls until several weeks later July 2022.

327.    On or around October 15, 2020, Grant worked his first PDP detail at Resorts World Casino.

328.    Grant worked approximately three shifts at Resorts World Casino, most recently on August 13, 2023.

329.    Grant never received timely payment of wages for the PDP shifts he worked at Resorts World Casino, and instead waited weeks and even months for his paychecks.

330.    For example, on August 13, 2023, Grant completed a PDP detail at Resorts World

Casino for a total of five (5) hours but was not paid for this work until several weeks later October 2023.

331.    Several other Officers have confirmed to Plaintiffs that Defendants also failed to timely pay their wages.

332.    The Defendants also paid Plaintiffs below the federal and State minimum wage rates and below their regular rate of pay for all hours worked.

333.    For example, on December 23, 2024, Martinez worked a PDP detail at NYU Lutheran for eight (8) hours.

334.    To this day, the NYPD and NYU Lutheran have failed to pay Martinez any compensation at all for the hours he worked on the December 23, 2024 PDP detail.

335.    Similarly, to this day, Suazo has not been paid for the eight (8) hours of work he performed at Rockefeller Center almost two months earlier on December 1, 2024.

336.    Several other Officers who have worked PDP details have confirmed to Plaintiffs that these Defendants also failed to pay them their wages for the work they performed for Defendants.

337.    Additionally, the Vendors for whom Plaintiffs worked did not provide Plaintiffs with accurate wage statements for any of the PDP details that they completed.

338.    Nor did any of the Vendors provide Plaintiffs with any Notices of Pay Rate.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

339.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by the NYPD and participated in the PDP at any time during the full statute of limitations period (the "FLSA Collective").

340.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated,

had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) failing to compensate Plaintiffs and the FLSA Collective at the federal minimum wage for all hours worked in a workweek; and (ii) failing and refusing to timely pay all wages owed.

341.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the provisions of the FLSA.

342.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

343.    As a result of their unlawful conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid and late wages, with interest, plus an additional equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

344.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 4,500 members of the FLSA Collective.

345.    Plaintiffs are currently unaware of the identities of the individual members of the FLSA Collective.

346.    Accordingly, the Court should require Defendants to provide Plaintiffs with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiffs may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

347.    Plaintiffs bring this action, in part, as a class action under the NYLL and FIFA, as well as all applicable regulations thereunder.

**A.    Class Definition**

348.    Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other Officers who worked for the NYPD and participated in the PDP at any time during the full statute of limitations period (the "Class").

349.    Plaintiffs alleges, on behalf of themselves and the Class, that the Vendors violated the NYLL and FIFA by, *inter alia*: (i) failing to compensate Plaintiffs and the Class at the State minimum wage for all hours worked; (ii) failing to compensate Plaintiffs and the Class at their established regular rates of pay and in accordance with their agreed terms of employment; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiffs and the Class with Notices of Pay Rate; and (v) failing to furnish accurate wage statements to Plaintiffs and the Class.

350.    Plaintiffs and the Class have standing to seek such relief because of the adverse effects that the Vendors' wage practices have had on them individually and as a group.

351.    The wage practices described herein are part of the Vendors' normal course of conduct.

352.    Pursuant to FRCP 23, Plaintiffs' NYLL and FIFA claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B.    Numerosity and Impracticability of Joinder**

353.    The members of the Class are so numerous that joinder is impracticable.

354.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 6,750 members of the Class.

355.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.    Common Questions of Law and Fact**

356.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

357.    Indeed, there are few, if any, purely individual issues in this action.

358.    The questions of law and fact that are common to Plaintiffs and the Class include, without limitation:

(a)    Whether the Vendors failed to pay Plaintiffs and the Class all minimum wages owed;

(b)    Whether the Vendors failed to pay Plaintiffs and the Class all wages owed at their regular rates of pay and in accordance with their agreed terms of employment;

(c)    Whether the Vendors failed to timely pay Plaintiffs and the Class their wages;

(d)    Whether the Vendors failed to provide Plaintiffs and the Class with Notices of Pay Rate;

(e)    Whether the Vendors failed to furnish accurate wage statements to Plaintiffs and the Class; and

(f)    Whether Plaintiffs and the Class are entitled to liquidated damages and injunctive relief.

359.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D.**     **Typicality of Claims and Relief Sought**

360.     Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent.

361.     Plaintiffs and the Class work, or have worked, for the Vendors and are, or were, subject to the same compensation policies and practices.

362.     The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are typical of the Vendors' treatment of Officers assigned to them through the PDP, generally, and of the Class specifically.

363.     Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.**     **Adequacy of Representation**

364.     Plaintiffs will fairly and adequately protect the interests of the Class because their interests are coextensive and aligned with those of the Class.

365.     Plaintiffs have no interests adverse to the Class they seek to represent.

366.     Plaintiffs are willing and able to represent the Class as fairly and vigorously as they pursue their similar individual claims.

367.     Plaintiffs have retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

368.     The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.**     **Requirements of Rule 23(b)(1)**

369.     Without certification of the Class, the same evidence and issues would be subject

to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

370.    Accordingly, certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class, and the Vendors.

371.    By filing this Complaint, Plaintiffs preserve the rights of the members of the Class with respect to the statute of limitations on their claims.

372.    Therefore, not certifying the Class would substantially impair and/or impede the ability of the members thereof to protect their interests.

## G.    Requirements of Rule 23(b)(2)

373.    The Vendors acted on grounds, described herein, generally applicable to Plaintiffs and the Class by denying Plaintiffs and the Class minimum wages, failing to pay them in accordance with their agreed terms of employment, failing to pay wages on time, failing to pay wages at their regular rates of pay, and failing to provide Notices of Pay Rate and furnish accurate wage statements.

374.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the Class as a whole.

375.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum wages, wages paid at their regular rates of pay, timely payment of wages, Notices of Pay Rate and accurate wage statements.

376.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs and the Class's entitlement to monetary and non-monetary remedies for such wage violations.

377.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H.    Requirements of Rule 23(b)(3)**

378.    The common issues of fact and law affecting Plaintiffs' claims and those of the Class – including, without limitation, the common issues identified above – predominate over issues affecting only individual claims.

379.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and those of the Class.

380.    The cost of proving the Vendors' pattern and practice of denying minimum and other wages makes it impractical for the members of the Class to pursue their claims individually.

381.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of the members of the Class (they must have worked for the NYPD and participated in the PDP during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiffs and the FLSA Collective against all Defendants)*

382.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

383.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and all applicable regulations thereunder.

384.    The FLSA requires covered employers, including Defendants, to pay Officers all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

385.    Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

386.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

387.    As a result of Defendants' failure to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

388.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

389.    Defendants' violations of the FLSA have significantly harmed Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE
### *(On Behalf of Plaintiffs and the FLSA Collective against all Defendants)*

390.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

391.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

392.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than the federal minimum wage for all hours worked in a workweek.

393.    Plaintiffs and the FLSA Collective were not exempt from the requirement that their

employer pay them minimum wages under the FLSA.

394.    During the statute of limitations period, the Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek.

395.    As a result of Defendants' failures to compensate Plaintiffs and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

396.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

397.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
*(On Behalf of Plaintiffs and the Class against the Vendors)*

398.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

399.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

400.    The NYLL requires covered employers, including the Vendors to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

401.    Plaintiffs and the Class were not exempt from the requirement that the Vendors timely pay them their wages.

402.    Throughout the statute of limitations period, the Vendors have engaged in a policy and practice of failing to pay Plaintiffs all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

403.    As a result of the Vendors' failure to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, the Vendors have violated the NYLL and/or applicable regulations thereunder.

404.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

405.    The Vendors' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
*(On Behalf of Plaintiffs and the Class against the Vendors)*

406.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

407.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

408.    The NYLL requires covered employers, including the Vendors, to compensate Officers at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

409.    Plaintiffs and the Class were not exempt from the requirement that the Vendors pay them minimum wages under the NYLL.

410.    During the statute of limitations period, the Vendors have engaged in a policy and

practice of failing to compensate Plaintiffs and the Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

411.    As a result of the Vendors' failure to compensate Plaintiffs and the Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek, the Vendors have violated the NYLL and/or applicable regulations thereunder.

412.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

413.    The Vendors' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

<strong><u>FIFTH CAUSE OF ACTION</u><br><u>VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED</u><br><em>(On Behalf of Plaintiffs and the Class against the Vendors)</em></strong>

414.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

415.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

416.    The NYLL requires covered employers, including the Vendors, to compensate Officers at their established regular rates of pay for all hours worked.

417.    Plaintiffs and the Class were not exempt from the requirement that the Vendors pay them at their established regular rates of pay for all hours worked under the NYLL.

418.    During the statute of limitations period, the Vendors have engaged in a common policy and practice of failing to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek.

419.    As a result of the Vendors' failures to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek, the Vendors have violated the NYLL and/or applicable regulations thereunder.

420.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

421.    The Vendors' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PROVIDE NOTICES OF PAY RATE**
***(On Behalf of Plaintiffs and the Class against the Vendors)***

422.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

423.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

424.    The NYLL requires covered employers, including the Vendors, to provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

425.    Plaintiffs and the Class were not exempt from the requirement that the Vendors provide them with Notices of Pay Rate.

426.    During the statute of limitations period, the Vendors have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the Class.

427.    As a result of the Vendors' failure to provide Notices of Pay Rate to Plaintiffs and the Class, the Vendors have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

428.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the Class in accordance with the NYLL.

429.    Further, due to the Vendors' failure to provide Notices of Pay Rate, Plaintiffs and the Class have suffered concrete harm.

430.    Specifically, Plaintiffs and the Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid and/or not paid properly; and (iii) taking appropriate action to obtain payments due to them.

431.    The Vendors' violations of the NYLL entitle Plaintiffs and each member of the Class to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS
### (*On Behalf of Plaintiffs and the Class against the Vendors*)

432.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

433.    During the full statutory period, Plaintiffs and the Class were protected by the

provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

434.    The NYLL requires covered employers, including the Vendors, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

435.    Plaintiffs and the Class were not exempt from the requirement that the Vendors furnish them proper wage statements.

436.    During the statute of limitations period, the Vendors have engaged in a policy and practice of unlawfully failing to provide accurate wage statements to Plaintiffs and the Class.

437.    As a result of the Vendors' failure to furnish accurate wage statements to Plaintiffs and the Class, the Vendors have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

438.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiffs and the Class in accordance with the NYLL.

439.    Further, due to the Vendors' failure to furnish accurate wage statements, Plaintiffs and the Class have suffered concrete harm.

440.    Specifically, Plaintiffs and the Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid and/or not paid properly; and (iii) taking appropriate action to obtain payments due to them.

441.    The Vendors' violations of the NYLL have significantly damaged Plaintiffs and the

Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE FIFA: LATE PAYMENT OF COMPENSATION**
***(On Behalf of Plaintiffs and the Class against the Vendors)***
***(Brought in the Alternative to Plaintiffs' and the Class' Claims under the FLSA and NYLL)***

442.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

443.    In the alternative to their claims brought under the FLSA and NYLL, Plaintiffs and the Class allege violations of the FIFA, N.Y.C. Admin. Code §§ 20-927, *et seq.*, and all applicable regulations thereunder.

444.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FIFA and all applicable regulations thereunder.

445.    The FIFA requires hiring parties, including the Vendors, to pay freelance workers all contracted compensation on or before the date such contracted compensation is due under the terms of a contract or, if the contract does not specify when the contracted compensation is due or the mechanism by which such due date shall be determined, no later than 30 days after completion of the freelance worker's services under the contract.

446.    Plaintiffs and the Class were not exempt from the requirement that the Vendors timely pay them their contracted compensation under the FIFA.

447.    During the statute of limitations period, the Vendors have engaged in a policy and practice of hiring Plaintiffs and the Class to complete services without specifying when contracted compensation is due or the mechanism by which such due date shall be determined.

448.    As a result, Plaintiffs and the Class are owed all contracted compensation within 30 days of the completion of services by Plaintiffs and the Class.

449.    Throughout the full statute of limitations periods, the Vendors have engaged in a policy and practice of failing to pay Plaintiffs and the Class all contracted compensation within 30 days of the completion of services performed by Plaintiffs and the Class under their contracts.

450.    As a result of the Vendors' failure to pay Plaintiffs and the Class all contracted compensation within 30 days of completion of services, the Vendors have violated the FIFA and/or applicable regulations thereunder.

451.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the FIFA.

452.    The Vendors' violations of the FIFA have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid compensation, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE FIFA: FAILURE TO PAY ALL COMPENSATION**
*(On Behalf of Plaintiffs and the Class against the Vendors)*
*(Brought in the Alternative to Plaintiffs' and the Class' Claims under the FLSA and NYLL)*

453.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

454.    In the alternative to their claims brought under the FLSA and NYLL, Plaintiffs and the Class allege violations of the FIFA, N.Y.C. Admin. Code §§ 20-927, *et seq.*, and all applicable regulations thereunder.

455.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FIFA and all applicable regulations thereunder.

456.    The FIFA requires hiring parties, including the Vendors, to pay freelance workers all contracted compensation on or before the date such contracted compensation is due under the terms of a contract or, if the contract does not specify when the contracted compensation is due or

the mechanism by which such due date shall be determined, no later than 30 days after completion of the freelance worker's services under the contract.

457.    Plaintiffs and the Class were not exempt from the requirement that the Vendors pay them their contracted compensation under the FIFA, and they are entitled to be paid all contracted compensation for all services completed for the Vendors.

458.    During the statute of limitations period, the Vendors have engaged in a policy and practice of hiring Plaintiffs and the Class to complete services without specifying when contracted compensation is due or the mechanism by which such due date shall be determined.

459.    As a result, the Vendors owe all contracted compensation to Plaintiffs and the Class within 30 days of the completion of services by Plaintiffs and the Class.

460.    During the statute of limitations periods, the Vendors have engaged in a policy and practice of failing to pay Plaintiffs and the Class all contracted compensation for the completion of services by Plaintiffs and the Class.

461.    As a result of the Vendors' failure to pay Plaintiffs and the Class all contracted compensation for completion of services by Plaintiffs and the Class, the Vendors have violated the FIFA and/or applicable regulations thereunder.

462.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the FIFA.

463.    The Vendors' violation of the FIFA have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid compensation, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.    Designate Plaintiffs as the representatives of the Class, and their counsel of record as class counsel;

F.    Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiffs and the Class as a result of the Vendors' violations of the NYLL and FIFA, and award those damages against the Vendors and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiffs, the FLSA Collective, and/or the Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

I.      Award Plaintiffs, the FLSA Collective, and/or the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J.      Grant Plaintiffs, the FLSA Collective, and/or the Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective and the Class, hereby demand a trial by jury on all issues of fact and damages.

Dated:  January 23, 2025
        New York, New York

FARUQI & FARUQI, LLP

By:  _/s/ Innessa M. Huot_____
     Innessa M. Huot

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com

*Attorneys for Plaintiffs, the Proposed*
*FLSA Collective, and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

ALBERT PINEY, ROMAN DIAZ, JOSE MARTINEZ,
FREDDY SUAZO, and DESMOND GRANT on behalf of
themselves and others similarly situated,

      Plaintiffs,

   v.

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, TARGET CORPORATION, MSG
ENTERTAINMENT HOLDINGS, LLC, THE NEW YORK
YANKEES, LP, NYU LANGONE HOSPITAL F/K/A NYU
LUTHERAN MEDICAL CENTER, MOUNT SINAI
HEALTH SYSTEM, INC., THE NEW YORK TIMES
COMPANY, B.J.'S WHOLESALE CLUB HOLDINGS
INC., RXR REALTY LLC, TISHMAN SPEYER
ASSOCIATES LIMITED PARTNERSHIP D/B/A 509 W
34, LLC, BUENA VISTA THEATRICAL GROUP LTD.
D/B/A DISNEY WORLDWIDE SERVICES INC., BXP,
INC. F/K/A BOSTON PROPERTIES, INC., KERING
AMERICAS, INC., APPLE INC., CONGREGATION
RODEPH SHOLOM, 34TH STREET PARTNERSHIP,
BANK OF AMERICA CORPORATION, THE TJX
COMPANIES, INC., D/B/A MARSHALLS, THE
GENTING GROUP D/B/A RESORTS WORLD CASINO,
and DOES NOS. 1-50,

      Defendants.

---

Civil Case No.:

**CONSENT TO SUE**

---

   I, Albert Piney, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Piney, et al. v. City of New York, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

   I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print):   Albert Piney

Signature: _Albert Piney_
Albert Piney (Jan 23, 2025 07:55 EST)

Date: 01/23/2025

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALBERT PINEY, ROMAN DIAZ, JOSE MARTINEZ, FREDDY SUAZO, and DESMOND GRANT on behalf of themselves and others similarly situated, | Civil Case No.: |
| **Plaintiffs,** | **CONSENT TO SUE** |
| v. | |
| CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TARGET CORPORATION, MSG ENTERTAINMENT HOLDINGS, LLC, THE NEW YORK YANKEES, LP, NYU LANGONE HOSPITAL F/K/A NYU LUTHERAN MEDICAL CENTER, MOUNT SINAI HEALTH SYSTEM, INC., THE NEW YORK TIMES COMPANY, B.J.'S WHOLESALE CLUB HOLDINGS INC., RXR REALTY LLC, TISHMAN SPEYER ASSOCIATES LIMITED PARTNERSHIP D/B/A 509 W 34, LLC, BUENA VISTA THEATRICAL GROUP LTD. D/B/A DISNEY WORLDWIDE SERVICES INC., BXP, INC. F/K/A BOSTON PROPERTIES, INC., KERING AMERICAS, INC., APPLE INC., CONGREGATION RODEPH SHOLOM, 34TH STREET PARTNERSHIP, BANK OF AMERICA CORPORATION, THE TJX COMPANIES, INC., D/B/A MARSHALLS, THE GENTING GROUP D/B/A RESORTS WORLD CASINO, and DOES NOS. 1-50, | |
| **Defendants.** | |

I, Roman Diaz, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Piney, et al. v. City of New York, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): **Roman Diaz**

Signature: Roman Diaz (Jan 22, 2025 23:40 EST)

Date: 01/22/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ALBERT PINEY, ROMAN DIAZ, JOSE MARTINEZ, FREDDY SUADO, and DESMOND GRANT on behalf of themselves and others similarly situated, | Civil Case No.: |
| | **CONSENT TO SUE** |
| Plaintiffs, | |
| v. | |
| CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TARGET CORPORATION, MSG ENTERTAINMENT HOLDINGS, LLC, THE NEW YORK YANKEES, LP, NYU LANGONE HOSPITAL F/K/A NYU LUTHERAN MEDICAL CENTER, MOUNT SINAI HEALTH SYSTEM, INC., THE NEW YORK TIMES COMPANY, B.J.'S WHOLESALE CLUB HOLDINGS INC., RXR REALTY LLC, TISHMAN SPEYER ASSOCIATES LIMITED PARTNERSHIP D/B/A 509 W 34, LLC, BUENA VISTA THEATRICAL GROUP LTD. D/B/A DISNEY WORLDWIDE SERVICES INC., BXP, INC. F/K/A BOSTON PROPERTIES, INC., KERING AMERICAS, INC., APPLE INC., CONGREGATION RODEPH SHOLOM, 34TH STREET PARTNERSHIP, BANK OF AMERICA CORPORATION, THE TJX COMPANIES, INC., D/B/A MARSHALLS, THE GENTING GROUP D/B/A RESORTS WORLD CASINO, and DOES NOS. 1-50, | |
| Defendants. | |

I, Jose Martinez, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Piney, et al. v. City of New York, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Jose Martinez

Signature: *Jose Martinez (Jan 23, 2025 04:12 EST)*          Date: 01/23/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ALBERT PINEY, ROMAN DIAZ, JOSE MARTINEZ, FREDDY SUAZO, and DESMOND GRANT on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TARGET CORPORATION, MSG ENTERTAINMENT HOLDINGS, LLC, THE NEW YORK YANKEES, LP, NYU LANGONE HOSPITAL F/K/A NYU LUTHERAN MEDICAL CENTER, MOUNT SINAI HEALTH SYSTEM, INC., THE NEW YORK TIMES COMPANY, B.J.'S WHOLESALE CLUB HOLDINGS INC., RXR REALTY LLC, TISHMAN SPEYER ASSOCIATES LIMITED PARTNERSHIP D/B/A 509 W 34, LLC, BUENA VISTA THEATRICAL GROUP LTD. D/B/A DISNEY WORLDWIDE SERVICES INC., BXP, INC. F/K/A BOSTON PROPERTIES, INC., KERING AMERICAS, INC., APPLE INC., CONGREGATION RODEPH SHOLOM, 34TH STREET PARTNERSHIP, BANK OF AMERICA CORPORATION, THE TJX COMPANIES, INC., D/B/A MARSHALLS, THE GENTING GROUP D/B/A RESORTS WORLD CASINO, and DOES NOS. 1-50,<br><br>Defendants. | Civil Case No.:<br><br>**CONSENT TO SUE** |

I, Freddy Suazo, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Piney, et al. v. City of New York, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Freddy Suazo

Signature: *Freddy Suazo (Jan 23, 2025 10:21 EST)*    Date: 01/23/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALBERT PINEY, ROMAN DIAZ, JOSE MARTINEZ, FREDDY SUAZO, and DESMOND GRANT on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TARGET CORPORATION, MSG ENTERTAINMENT HOLDINGS, LLC, THE NEW YORK YANKEES, LP, NYU LANGONE HOSPITAL F/K/A NYU LUTHERAN MEDICAL CENTER, MOUNT SINAI HEALTH SYSTEM, INC., THE NEW YORK TIMES COMPANY, B.J.'S WHOLESALE CLUB HOLDINGS INC., RXR REALTY LLC, TISHMAN SPEYER ASSOCIATES LIMITED PARTNERSHIP D/B/A 509 W 34, LLC, BUENA VISTA THEATRICAL GROUP LTD. D/B/A DISNEY WORLDWIDE SERVICES INC., BXP, INC. F/K/A BOSTON PROPERTIES, INC., KERING AMERICAS, INC., APPLE INC., CONGREGATION RODEPH SHOLOM, 34TH STREET PARTNERSHIP, BANK OF AMERICA CORPORATION, THE TJX COMPANIES, INC., D/B/A MARSHALLS, THE GENTING GROUP D/B/A RESORTS WORLD CASINO, and DOES NOS. 1-50, <br><br> Defendants. | Civil Case No.: <br><br> **CONSENT TO SUE** |

I, Desmond Grant, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Piney, et al. v. City of New York, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Desmond Grant

Signature: Desmond Grant (Jan 23, 2025 01:09 EST)     Date: 01/22/2025