**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALBERT PINEY, et al.,

                Plaintiffs,

                v.

CITY OF NEW YORK, et al.,

                Defendants.

Civil Case No. 1:25-cv-00671-DEH-SLC

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT,
CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF
PLAINTIFFS' NOTICE OF SETTLEMENT AND CLAIM FORM**

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................... 1

II.    THE SETTLEMENT ................................................................................................... 3

       A.    Settlement Terms ........................................................................................... 3

       B.    Allocation to the Class .................................................................................. 3

       C.    Specific Release ............................................................................................ 4

       D.    Attorneys' Fees and Costs ............................................................................. 5

       E.    Service Award ............................................................................................... 5

III.   CLASS ACTION SETTLEMENT PROCEDURE ..................................................... 5

ARGUMENT ......................................................................................................................... 6

I.     THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO PRELIMINARILY
       CERTIFY THE SETTLEMENT CLASS UNDER RULE 23 ..................................... 6

       A.    Numerosity .................................................................................................... 7

       B.    Commonality ................................................................................................. 7

       C.    Predominance ................................................................................................ 8

       D.    Typicality .................................................................................................... 10

       E.    Adequacy .................................................................................................... 10

       F.    Superiority ................................................................................................... 12

II.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .............. 14

       A.    The Settlement is Procedurally Fair ............................................................ 16

       B.    The Settlement is Substantively Fair, Reasonable, and Adequate ......................... 17

             1.    Litigation Through Trial Would Be Complex, Costly, and Long (#1) ..... 17

             2.    The Reaction of the Class Has Been Positive (#2) ................................. 18

             3.    Discovery Has Advanced Far Enough for the Parties to Evaluate the
                   Strengths and Weaknesses of the Case (#3) ............................................. 19

             4.    Plaintiffs Will Face Significant Risks if the Case Proceeds (#4-5) .......... 20

             5.    Risks Involved in Maintaining the Class Through Trial (#6) ................... 21

             6.    Defendant's Ability to Withstand a Greater Judgment Is Not
                   Determinative (#7) ................................................................................... 22

             7.    The Settlement Fund is Substantial, Even in Light of the Best Possible
                   Recovery and Attendant Risks of Litigation (#8-9) .................................. 22

III.   THE NOTICE PLAN, THE DISTRIBUTION PROCESS, AND THE RELEASES
       SHOULD BE APPROVED ........................................................................................ 24

IV.    APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE FLSA ......... 25

V.      THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING ......... 25

CONCLUSION ......................................................................................................................... 26

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                                           **Page(s)**

*Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*,
    No. 702965/2013 .................................................................................................. 12

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................... 17

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006) ........................................................................ 15

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ................................................................................. 9

*Bryant v. Potbelly Sandwich Works, LLC*,
    No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ....................... 25

*Caballero v. Senior Health Partners, Inc.*,
    No. 16 CV 00326 (CLP), 2018 WL 6435900 (E.D.N.Y. Dec. 7, 2018) ................... 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ....................................................................... *passim*

*Clark v. Ecolab Inc.*,
    No. 04 Civ. 4488(PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ................. 14

*Cohetero v. Stone & Tile, Inc.*,
    No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717 (E.D.N.Y. Jan. 25, 2018) ..................... 23

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ............................................................................................. 9

*Consol. Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................................. 7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ................................................................................. 8

*Dorn v. Eddington Sec., Inc.*,
    No. 08 Civ. 10271 LTS, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) .................... 20

*Eldred v. Comforce Corp.*,
    No. 3:08-CV-1171, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) ......................... 7, 9

*Elliot v. Leatherstocking Corp.*,
    No. 3:10-CV-0934 (MAD/DEP), 2012 WL 6024572, (N.D.N.Y. Dec. 4, 2012) ............ *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................15

*Felix v. Breakroom Burgers & Tacos*,
    No. 15 Civ. 3531 (PAE), 2016 WL 3791149 (S.D.N.Y. Mar. 8, 2016) ...............................23

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).................................................................. *passim*

*Griffin v. Aldi, Inc.*,
    No. 5:16-cv-00354 (LEK/ATB) (N.D.N.Y. Nov. 15, 2018) .................................23

*Hadel v. Gaucho, LLC*,
    No. 15 Civ. 3706 (RLE), 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ................................7

*Handschu v. Special Servs. Div.*,
    787 F.2d 828 (2d Cir. 1986)...........................................................................24

*Hernandez v. Fresh Diet, Inc.*,
    12-cv-4339, 2014 WL 5039431 (S.D.N.Y. Sept. 29, 2014) ...................................20

*Hernandez v. Merrill Lynch & Co., Inc.*,
    11 Civ. 8472(KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ...........................15

*Hill v. City of N.Y.*,
    No. 13-CV-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019).........................7

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) ........................................................................20

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................8

*Jianmin Jin v. Shanghai Original, Inc.*,
    No. 16-cv-5633, 2018 WL 1597389 (E.D.N.Y. Apr. 2, 2018) .................................20

*Long v. HSBC USA Inc.*,
    No. 14 Civ. 6233(HBP), 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ................................7

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
    No. 5:15-cv-00441 (MAD/TWD), 2016 WL 340 (N.D.N.Y. June 17, 2016) ................ *passim*

*Mayhew v. KAS Direct, LLC*,
    No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018)...................................10

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995).......................................................................14

iv

*McEarchen v. Urban Outfitters, Inc.*,
  No. 13-CV-3569, 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017) ...........................................20

*Mercado v. Metro. Transp. Auth.*,
  No. 20 Civ. 6533, 2021 WL 2593462 (S.D.N.Y. June 24, 2021).............................................6

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................................25

*N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
  477 F. App'x 809 (2d Cir. 2012) ........................................................................................9

*In re Nasdaq Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................14, 15

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..............................................................................20, 22

*Palacio v. E\*Trade Fin. Corp.*,
  No. 10 Civ. 4030(RJH)(DCF), 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ......................15

*Parker v. City of N.Y.*,
  No. 15 CV 6733 (CLP), 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018).................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)........................................................................................19

*Pierre v. City of N.Y., et al.*,
  No. 20-cv-05116-ALC-VF (S.D.N.Y. July 30, 2020) ....................................................11, 12

*Pino v. Harris Water Main & Sewer Contractors Inc.*,
  No. 17-cv-5910, 2021 WL 3675148 (E.D.N.Y. Aug. 19, 2021) ............................................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................................15

*Quow v. Accurate Mech. Inc.*,
  No. 1:15-CV-09852 (KHP), 2018 WL 3368673 (S.D.N.Y. July 10, 2018) ...........................19

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) ......................................................................................23

*Reyes v. Autamarea Grp., LLC*,
  No. 10-CV-6451 (RLE), 2011 WL 4599773 (S.D.N.Y. June 3, 2011) .................................16

*Rivas v. Dinex Grp., LLC*,
  No. 20-cv-03117, 2021 WL 2850627 (S.D.N.Y. July 8, 2021).............................................16

*Rodriguez-Hernandez v. K Bread & Co., Inc.*,
No. 15-cv-6848 (KBF), 2017 WL 2266874 (S.D.N.Y. May 23, 2017)...................................23

*Ruiz v. Citibank, N.A.*,
93 F. Supp. 3d 279 (S.D.N.Y. 2015).........................................................................................20

*Scott v. Chipotle Mexican Grill, Inc.*,
12-CV-8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017).....................................................20

*Surdu v. Madison Glob., LLC*,
No. 15 Civ. 6567 (HBP), 2017 WL 3842859 (S.D.N.Y. Sept. 1, 2017) ................................23

*Sykes v. Mel S. Harris and Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015).......................................................................................................10

*In re Traffic Exec. Ass'n E. R.Rs.*,
627 F.2d 631 (2d Cir. 1980).....................................................................................................15

*Vargas v. Cap. One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ...............................................................................................24

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................20

*Vogel v. City of N.Y.*,
No. 14 Civ. 9171, 2017 WL 4712791 (S.D.N.Y. Sept. 19, 2017)...........................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).......................................................................................................14

*Wang v. Masago Neo Asian Inc.*,
CV 14-6249(DRH)(ARL), 2016 WL 7177514 (E.D.N.Y. Sept. 26, 2016)..............................23

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)......................................................................................................14

**Statutes**

29 U.S.C. § 216(b) .................................................................................................................6, 7

Fair Labor Standards Act ................................................................................................ *passim*

NYC Freelance Isn't Free Act ......................................................................................1, 7, 21

NYLL ................................................................................................................................ *passim*

**Other Authorities**

William B. Rubenstein, *4 Newberg on Class Actions* §§ 13 :10 (6th ed. 2024).................5, 15, 17

Plaintiffs, on behalf of themselves and the proposed Class (defined *infra*), and with the consent of Defendant Asphalt Green, Inc. ("Asphalt Green" or "Defendant") (together with Plaintiffs, the "Parties"), hereby submit this memorandum of law in support of their motion for: (i) preliminary approval of the proposed settlement; (ii) certification of the proposed settlement Class; (iii) appointment of Faruqi & Faruqi, LLP as class counsel; and (iv) approval of Plaintiffs' Settlement Notice and Claim Form.[1]

## I.    <u>INTRODUCTION</u>

On January 23, 2025, the *Piney* Plaintiffs commenced a class and collective action on behalf of themselves and all similarly situated New York City Police Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors ("Officers") against the City of New York ("City"), the New York Police Department (together, "NYPD") and several private businesses for which Officers performed uniformed security services through the NYPD's Paid Detail Program ("PDP").  Declaration of Innessa M. Huot ("Huot Decl.") ¶ 7.[2]  Among these private businesses is Asphalt Green, who Plaintiffs allege engaged in a common policy and practice of denying fifty-eight (58) Officers, including named Plaintiff Devon Dawkins ("Dawkins"), timely payment of wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  *Id.* ¶ 8; *see generally* ECF No. 91 ("SAC").[3]  On February 19, 2025, Plaintiffs moved for conditional certification of a collective action.  *See* ECF Nos. 54-56; 67.

The Parties have engaged in extensive investigation, discovery, and negotiations to evaluate the strengths and weaknesses of Plaintiffs' claims as well as the claims of all other Officers who performed PDP shifts for Asphalt Green, as well as Defendant's defenses relating to

---

[1] All capitalized terms have the same meanings as defined in the Settlement Agreement.
[2] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Exhibit __."
[3] Plaintiffs also bring analogous claims in the alternative under the NYC Freelance Isn't Free Act ("FIFA").

same.  Huot Decl. ¶ 12.  The Parties exchanged and analyzed records concerning every single Officer who worked for Asphalt Green in New York State through the PDP at any time throughout the statutory period, who together comprise the settlement class that Plaintiffs seek to represent (the "Class" or "Class Members").  *Id*. ¶ 13.  After a meticulous review of the comprehensive and detailed time records and compensation data related to all Class Members, Class Counsel was able to calculate the precise damages for each Officer.  *Id*. ¶ 14.

The Parties then engaged in substantial and arm's length settlement discussions, exchanging numerous settlement proposals, damage calculations, and additional data. *Id.* ¶ 15.  Over the next several months, the Parties continued to actively negotiate, exchanging additional settlement demands and offers, and engaging in further settlement discussion sessions.  *Id.* ¶ 16.

Following these extensive negotiations, on June 6, 2025, the Parties reached a settlement ("Settlement") of Plaintiffs' class and collective claims against Asphalt Green, which they now present to the Court for approval.  *Id.* ¶ 17; Exhibit A ("Agreement").  The Parties agreed to resolve all claims against Asphalt Green, specifically related to PDP shifts worked by Class Members for Asphalt Green in New York State, for $30,550.00, which represents a ***remarkable 65% recovery*** of the entire Class's potential wage damages.  Huot Decl. ¶¶ 19-20.  The Settlement also covers attorneys' fees and costs, as well as a service award to Plaintiff Dawkins for all services rendered on the Class's behalf in connection with the Action, negotiations resulting in this Agreement, and acts performed in furtherance of this Agreement. *Id.* ¶¶ 21-22; Agreement §§ I(B)-(C).

Approval of the class action Settlement at bar requires two steps: (i) preliminary approval of the proposed Settlement and Court authorization to disseminate notice of the same to all members of the proposed class; and (ii) final approval following a fairness hearing, at which time Class Members will have been afforded an opportunity to opt out of or object to the Settlement.

Here, Plaintiffs request that this Court preliminarily approve the Settlement and authorize the dissemination of Settlement Notices and Claim Forms (Exhibit B), through which Class Members can choose whether to participate. As detailed more fully below, the proposed settlement Class comports with Federal Rule of Civil Procedure 23 ("Rule 23").

Moreover, preliminary approval is appropriate because the Settlement is both procedurally and substantively fair and satisfies each of the nine so-called "*Grinnell* factors." Finally, the proposed Settlement Notice comports with requirements of due process and Rule 23, as it adequately advises Class Members of their rights under the Settlement and provides simple instructions on how to submit a claim, as well as the consequences of failing to do so, in addition to clearly instructing them regarding their rights and the process by which to opt out or object.

Accordingly, Plaintiffs respectfully request that the Court preliminarily certify the proposed settlement Class, appoint Faruqi & Faruqi, LLP as Class Counsel, authorize the dissemination of Settlement Notices and Claim Forms, and set a date for a fairness hearing.

## II.  THE SETTLEMENT

### A.  Settlement Terms

The proposed Settlement provides for a settlement payment of $30,550.00, which includes all fees and costs payable to Class Counsel and a service award to Plaintiff Dawkins. *See* Agreement §§ I(A)-(C). After deduction of all fees, costs, and the service award, the amount each Authorized Claimant will receive is based on their actual damages, as determined by their time and compensation data. *See id.* § I(D)(a).

### B.  Allocation to the Class

Per the Agreement, all Class Members who filed consent to join forms to opt into this Action are automatically considered Authorized Claimants and are eligible to receive their Settlement Checks, unless they opt out of the Settlement. *Id.* § III(B)(b). The remaining Class

Members are considered Authorized Claimants and are eligible to receive Settlement Checks if they: (i) provided services for Asphalt Green in New York State through the PDP at any time from January 23, 2019 through June 6, 2025; (ii) do not affirmatively opt out of the Settlement; and (iii) timely submit a Claim Form. *Id*. §§ I(D)(b)(i); III(A)-(C).  After the payment of the Fee & Cost Payments ($10,683.33),[4] and the service award ($500.00) from the Gross Settlement Fund ($30,550.00), the remaining amount of $19,366.67 becomes the Net Allocation Fund ("NAF") from which settlement payments are allocated to each Class Member based on their actual damages, as calculated from their specific time and compensation data. *Id.* § I(D).  Class Members who become Authorized Claimants will receive their share of the NAF.  *Id.* § I(D)(a)-(b).  The Settlement Administrator's fee of $500.00 will be paid from the unclaimed funds allocated to Class Members who fail to become Authorized Claimants.  Should such amount be insufficient to cover the fee, then Asphalt Green shall pay such amount over and above their payment into the Gross Settlement Fund, up to a maximum of $500.00, thereby not reducing the NAF.  *Id*. § I(E).

### C.    Specific Release

In consideration for Defendant's payment of the Gross Settlement Fund, by operation of the Court issuing a Final Approval Order, Class Members who do not submit opt-out statements will release their "Released State Law Claims" (defined *id*. § II(A)).  Further, by opting into this case or submitting a Claim Form in exchange for the settlement payment, each Authorized Claimant shall release their "Released Federal Claims" (defined *id*. § II(B)).  Significantly, both the Released State Law Claims and the Released Federal Claims are specifically limited to claims related to services provided for Asphalt Green in New York State through the PDP.  *Id*. §§ II(A)-(B).  The Agreement explicitly provides that both the Released State Law Claims and the Released

---

[4] Fee and Cost Payments include $10,183.33 in attorneys' fees, and $500.00 in actual costs and expenses. *See* Agreement § I(B).

Federal Claims "are not intended to be a general release of any claim that is unrelated to Plaintiffs'
provision of services through the PDP for Asphalt Green in New York State[.]" *Id.*

### D.    Attorneys' Fees and Costs

Pursuant to the Agreement, and subject to Court approval, Class Counsel shall be paid a
total of $10,183.33 as reasonable attorneys' fees ("Fee Payment"), which represents one-third of
the Gross Settlement Fund, as well as $500.00 as reimbursement for litigation expenses ("Cost
Payment"). *Id.* § I(B).  Together, the Fee & Cost Payments ($10,683.33) represent attorneys' fees
and costs for services rendered on Plaintiffs' and the Class's behalf in connection with this Action,
negotiations resulting in the Settlement, and other acts performed in furtherance of the Settlement,
and obtaining Court approval of same.  *Id.*

### E.    Service Award

Additionally, Plaintiff Dawkins will apply to the Court to receive a service award of
$500.00 in recognition of the services he provided on behalf of the Class as a representative and
for the time and effort he expended in furtherance of this Action and in securing the Settlement.
*Id.* § I(C).  Defendant has agreed not to oppose this application.

### III.    CLASS ACTION SETTLEMENT PROCEDURE

The class action settlement procedure in this action includes the following three steps:

1. Preliminary approval of the proposed Settlement;

2. Dissemination of the Settlement Notice and Claim Form to Class Members; and

3. A final settlement approval hearing at which Class Members may be heard
   regarding the Settlement and arguments concerning the fairness, adequacy, and
   reasonableness of the Settlement may be presented.

*See* Rule 23(e); *see also* William B. Rubenstein, *4 Newberg on Class Actions* ("*Newberg*") §§
13:10, *et seq.* (6th ed. 2024).  Plaintiffs respectfully request that the Court now take the first step—
granting preliminary approval of the Agreement, which includes approval of Plaintiffs' proposed

Settlement Notice and Claim Form—and authorize the Settlement Administrator to take the second step of mailing the Settlement Notice and Claim Form to Class Members.  Exhibit B.

Plaintiffs respectfully submit for the Court's consideration the following proposed schedule for Settlement approval and final resolution of Plaintiffs' and the Class's claims against Defendant for PDP shifts worked at Asphalt Green in New York, throughout the statutory period:

    i. Within thirty (30) days of the Preliminary Approval Order ("PA Order"), the Settlement Administrator shall mail the Settlement Notice and Claim Form (*see* Exhibit B) to Class Members via First Class U.S. Mail.

    ii. Class Members shall have sixty (60) days after the mailing of the Settlement Notices to submit a Claim Form, opt out of the Settlement, or object to the Settlement.  *See* Agreement § III(B)(a).  Class Members who do not timely receive the Settlement Notice or are unable to return the Claim Form within sixty (60) days due to such factors as military service, medical issues, or other extraordinary circumstances shall have an additional fifteen (15) days from the initial mailing to submit their Claim Forms.

    iii. Within 150 days of the PA Order, Plaintiffs shall file a motion for final approval of the proposed Settlement.

    iv. Within 160 days of the PA Order (or at any time convenient for the Court), the Court schedule a Fairness Hearing to consider final approval of the Settlement.  *Id.*

Plaintiffs respectfully submit with the instant motion a proposed Order setting forth the above-summarized schedule.  *See* Exhibit C.

## ARGUMENT[5]

### I.  THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO PRELIMINARILY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23

Plaintiffs respectfully request that the Court certify the Class and the Collective for settlement purposes.  As detailed below, all requirements of Rule 23 are satisfied.[6]  Defendant, for

---

[5] Unless otherwise noted, all internal quotation marks and citations are omitted.

[6] In addition to meeting the criteria under Rule 23, Plaintiffs have also satisfied the criteria to proceed as a collective action under the FLSA.  For a collective action to proceed under 29 U.S.C. § 216(b), two requirements must be met: (i) all members must affirmatively consent to join; and (ii) all members must be "similarly situated."  *Mercado v. Metro. Transp. Auth.*, No. 20 Civ. 6533,

settlement purposes only, does not oppose Plaintiffs' request for class and collective certification.

### A.    Numerosity

The Class is comprised of 58 Class Members, which is more than sufficient to satisfy numerosity.  *See* Rule 23(a)(1).  Courts in the Second Circuit have consistently held that "numerosity is presumed at a level of 40 members[.]"  *Eldred v. Comforce Corp.*, No. 3:08-CV-1171 (LEK/DEP), 2010 WL 812698, at *15 (N.D.N.Y. Mar. 2, 2010) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Given that the proposed Class here contains far more than 40 individual members, numerosity is satisfied.

### B.    Commonality

The Court should certify the Class because common questions of law and fact predominate over questions affecting only individual members.  *See* Rule 23(a)(2).  This element is easily met because the commonality requirement may be satisfied by a single common issue.  *See Hill v. City of N.Y.*, No. 13-CV-6147 (PKC) (JO), 2019 WL 1900503, at *6 (E.D.N.Y. Apr. 29, 2019) ("Even a single common legal or factual question will suffice to prove commonality.").  Here, Plaintiffs allege against Defendant that they and their fellow Officers should have been paid timely wages. *See generally* SAC. These claims raise legal and factual questions regarding Asphalt Green's status as an "employer" under the FLSA and NYLL.  *See id.*  Plaintiffs' alternative claims under FIFA raise similar factual and legal questions—specifically, whether they and other Officers qualify as "freelancer workers" and whether Asphalt Green qualifies as a "hiring part[y]."  *See id.* ¶¶ 1484-

---

2021 WL 2593462, at *1-2 (S.D.N.Y. June 24, 2021).  Because the requirements of Rule 23 are more stringent than FLSA § 216(b), Plaintiffs have also met the criteria for final certification of the FLSA Collective as "similarly situated" under 29 U.S.C. § 216(b).  *See Hadel v. Gaucho, LLC*, No. 15 Civ. 3706 (RLE), 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016) (certifying the FLSA collective "[b]ecause the standard for conditional certification as an FLSA collective is less stringent than the standard for certification of a class action pursuant to Rule 23[.]") (citing *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *12 (S.D.N.Y. Sept. 11, 2015)).

1505. Accordingly, common questions in this case include: (i) whether Asphalt Green employed Plaintiffs and the Class; (ii) whether Asphalt Green was a "hiring part[y]" with respect to Plaintiffs and the Class; (iii) whether Plaintiffs and the Class Members were "freelance workers"; and (iv) whether Defendant timely paid Class Members their earned wages. *See id.* ¶¶ 529, 1484-1505.

Given that this Action necessitates several common factual and legal questions, as opposed to the requisite single common question, commonality under Rule 23(a)(2) is satisfied. *Pino v. Harris Water Main & Sewer Contractors Inc.*, 17-cv-5910, 2021 WL 3675148, at *6 (E.D.N.Y. Aug. 19, 2021) (finding commonality where "Plaintiffs and the Class members share[d] common questions as to whether they received accurate pay rate notices and wage statements and whether any wage notices received were compliant with the NYLL"); *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111, at *2 (N.D.N.Y. June 17, 2016) (commonality in wage-and-hour settlement) (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (commonality where workers were allegedly not paid proper overtime); *Elliot v. Leatherstocking Corp.*, 3:10-CV-0934 (MAD/DEP), 2012 WL 6024572, at *2 (N.D.N.Y. Dec. 4, 2012) (commonality where "class members raise common issues concerning defendant's failure to pay overtime, minimum wages and properly distribute service charges.").

## C. Predominance

Overlapping with Rule 23(a)(2)'s commonality standard, Rule 23(b)(3) requires, *inter alia*, that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" "The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007). To be clear, Rule 23(b)(3) "scarcely demands commonality as to all questions. . . . In

particular, when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013). Put differently, Rule 23(b)(3) requires only "a sufficient constellation of common issues [that] binds class members together" and may be satisfied despite "variations in the sources and application of a defense[.]" *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010).

Here, "Class-wide issues predominate [because] resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [ ] these particular issues are more substantial than the issues subject only to individualized proof." *N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 812 (2d Cir. 2012) (quoting *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). Indeed, the core issues in this case focus on Defendant's policies and practices with respect to Officers who work for Asphalt Green through the PDP program. Plaintiffs contend that Officers perform similar tasks and have similar responsibilities. *See generally* SAC. Plaintiffs also allege that Defendant fails to pay timely wages to the Officers. *See id.* Each of these core issues involve a common nucleus of operative facts based on Defendant's common management policies and payroll procedures which applied to all Class Members. *See e.g.*, *Marroquin Alas*, 2016 WL 3406111, at *3 (finding predominance in wage case where questions concerning overtime pay were "universal" to workers); *Eldred*, 2010 WL 812698, at *19 (certifying class and finding "[t]he predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job."). Also, damages in this case have been calculated by applying the same mechanical formula based on each Class Members' actual work time and compensation data. Because common issues in this Action predominate over individualized issues

(if any) and damages are, in fact, provable in the aggregate, predominance has been established.

### D.    Typicality

Plaintiffs' claims are typical to the Class Members' claims.  Rule 23(a)(3).  "Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  *Vogel v. City of N.Y.*, 14 Civ. 9171, 2017 WL 4712791, at *4 (S.D.N.Y. Sept. 19, 2017) (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 508 (S.D.N.Y. 2011)).  Plaintiffs and the Class are all Officers who worked for Asphalt Green through the PDP, were subject to Defendant's uniform policies, and were harmed by Defendant in the same manner in that they were not paid timely wages.  *See Marroquin Alas*, 2016 WL 3406111, at *2 (typicality satisfied since plaintiffs' claims are based on same factual and legal theories as the class members).  Since Plaintiffs' claims are identical to those of the Class Members they seek to represent, typicality is easily satisfied.

### E.    Adequacy

"Under Rule 23(a)(4) . . . adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class."  *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015).  "Plaintiffs must also have attorneys who are qualified, experienced, and generally able to conduct the litigation."  *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *5 (S.D.N.Y. June 26, 2018).

Plaintiffs do not have any interests that conflict with their fellow Officers.  Huot Decl. ¶ 23; *Elliot*, 2012 WL 6024572, at *2 (adequacy satisfied where there is "no evidence that plaintiffs' and the class members' interests are at odds.").  Plaintiffs have worked extensively on behalf of the Class to achieve this Settlement.  Huot Decl. ¶ 22.  For example, Plaintiff Dawkins searched for and provided documents and spent many hours with Class Counsel reviewing filings, records,

10

and Defendant's documents, explaining his experiences working for Asphalt Green, responding to inquiries from his colleagues, reviewing and submitting a declaration in support of Plaintiffs' motion for collective certification, participating in multiple meetings with Class Counsel that were invaluable to the prosecution and resolution of this Action, and assisting in myriad other ways. *Id.*

Next, Class Counsel are "qualified, experienced, and generally able to conduct the litigation." *Mayhew*, 2018 WL 3122059, at *5. Counsel from Faruqi & Faruqi, LLP have extensive experience representing employees and have served as lead counsel in numerous class and collective actions across the country. Huot Decl. ¶¶ 3-4. Some of the firm's more recent public recoveries include, *inter alia*: *Pierre v. City of N.Y., et al.* (B&H Foto), No. 20-cv-05116-ALC, ECF No. 516 (S.D.N.Y. Nov. 15, 2024) ($650,000 class and collective action settlement of FLSA and NYLL claims identical to those raised in the current *Piney* case); *Pierre v. City of N.Y., et al.* (TD Bank), No. 20-cv-05116-ALC, ECF No. 499 (S.D.N.Y. Oct. 15, 2024) ($8,930,186.41 class and collective action settlement of FLSA and NYLL claims identical to those raised in the current *Piney* case); *Conte, et al. v. Metro. Transp. Auth., et al.*, No. 21-cv-02516-VEC (S.D.N.Y. Sept. 14, 2023) ($2.9 million collective action settlement for late payment of wages and overtime); *Mercado v. Metro. Transp. Auth.*, No. 20 Civ. 6533 (AT) (S.D.N.Y. July 5, 2023) ($7.25 million settlement on behalf of officers for late payment of wages and overtime); *Goins v. BB&T Sec., LLC, et al.*, No. 1:20-cv-09891(PGG)(JLC) (S.D.N.Y. Jan. 6, 2022) ($500,000 settlement of FLSA, NYLL, NYCHRL, and NYSHRL claims); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-CV-26 (VSB) (S.D.N.Y. May 6, 2020) ($5.4 million settlement on behalf of sergeants and lieutenants for late payment of wages and overtime); *Hall v. J. Caiazzo Plumbing & Heating Corp. et al*, No. 1:21-cv-05416(SJB) (E.D.N.Y. Sep 28, 2022) ($110,000 collective action settlement for wage and hour claims); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al*, 1:20-cv-02481-RWL

(S.D.N.Y. Feb. 25, 2021) ($160,000 collective action settlement of minimum wage and overtime claims); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, No. CV-18-1397(ST) (E.D.N.Y. Feb. 4, 2021) ($425,000 settlement for unpaid wages and overtime).[7]  Huot Decl. ¶ 4.

Faruqi & Faruqi, LLP is uniquely qualified to prosecute this Action and has successfully done so, as evidenced by the firm successfully prosecuting nearly identical claims in *Pierre v. City of N.Y., et al.*, No. 20-cv-05116-ALC-VF (S.D.N.Y. July 30, 2020), successfully obtaining collective certification in that case (*id.* ECF No. 184) which is currently pending in this Court, engaging in thorough investigation of Class Members' claims against Asphalt Green, reviewing detailed discovery pertaining to every single Class Member, and securing a favorable settlement with Asphalt Green, which Plaintiffs now seek to be approved by this Court.  Therefore, adequacy has been satisfied and the Court should appoint Faruqi & Faruqi, LLP as Class Counsel.

## F.    Superiority

In addition to imposing a predominance standard (*see supra* § I(C)), Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively

---

[7] *See also, Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al*., No. 20 CV 726 (LB) (E.D.N.Y. Dec. 23, 2020) ($135,000 settlement of FLSA and NYLL overtime claims); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, NYSCEF No. 80 (N.Y. Sup., Queens Cty. June 24, 2020) ($550,000 class action settlement for unpaid wages); *Reeves, et al. v. La Pecora Bianca, Inc, et al.,* No. 151153/2018 (N.Y. Sup. Ct., N.Y. Cty. June 11, 2020) ($462,500 class action settlement for wage-and-hour claims); *Porrini v. McRizz, LLC, et al.*, No. 2:19-cv-03979-ARR-RML (E.D.N.Y. Aug. 16, 2022) ($260,000 settlement of minimum wage and overtime claims); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS (E.D.N.Y. May 8, 2019) ($700,000 class and collective settlement for unpaid wages and overtime); *Izzio, et al. v. Century Golf Partners Mgmt., L.P.*, No. 3:14-cv-03194-M (N.D. Tex. Feb. 13, 2019) ($1.425 million class and collective settlement for unpaid wages and overtime); *Griffin v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB) (N.D.N.Y. Nov. 15, 2018) ($9.8 million class and collective action settlement for unpaid wages and overtime); *Run Them Sweet, LLC v. CPA Global LTD, et al.*, No. 1:16-cv-1347 (E.D. Va. Oct. 6, 2017) ($5.6 million class settlement); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 6:15-cv-03519-BCW (W.D. Mo. July 7, 2017) ($51 million class settlement); *Strong, et al. v. Safe Auto Ins. Grp., Inc., et al.*, No. 2:16-cv-765 (S.D. Ohio Aug. 28, 2017) ($250,000 class action settlement for overtime and statutory damages).  Huot Decl. ¶ 4.

adjudicating the controversy." In assessing superiority, the Court must consider: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Rule 23(b)(3). Here, each of these factors weighs in favor of finding superiority.

First, the number of Officers who already joined the case against Asphalt Green as opt-in plaintiffs (22 of the total potential 58 Officers) demonstrates that Class Members do not have a strong interest in conducting separate actions. Huot Decl. ¶ 24. Second, despite this Action being well-known among Class Members, no similar actions have been filed against Asphalt Green by individual Officers. *Id.* ¶ 25. Accordingly, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this Action. The alternative would be the potential filing of 58 individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's or the Parties' time and resources. *Elliot*, 2012 WL 6024572, at *2 (finding settlement in wage case would conserve judicial resources and is more efficient for class members). Although Plaintiffs seek approval of a Settlement with Defendant, certification of the Class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards of conduct on Defendant.

Third, Plaintiffs, most Class Members, and Asphalt Green are located in this District, so venue is appropriate. The PDP exists only within the confines of the City of New York—and largely in Manhattan—making the Southern District of New York the most sensible, convenient, and appropriate venue for this dispute and approval of this Settlement. *See* SAC ¶¶ 1, 524.

Fourth, because this Action is being settled as to the claims against Asphalt Green

involving work performed through the PDP at Asphalt Green's locations in the City of New York, there will be no difficulties in managing this case as a class action. Moreover, the Parties have formulated a thorough, detailed procedure for the administration of their Settlement and have selected a competent Settlement Administrator to assist with this same. Agreement §§ III(B).

Class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all Parties. Accordingly, Plaintiffs respectfully request that the Court certify the Class and the collective pursuant to Rule 23 and the FLSA to effectuate this Settlement.

## II. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (discussing the "strong judicial policy in favor of settlements, particularly in the class action context"); *Marroquin Alas*, 2016 WL 3406111, at *4 ("Generally, class actions are complex and consume a tremendous amount of time and resources."); *Elliot*, 2012 WL 6024572, at *3 (stating in the wage-and-hour context, "Class actions are generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties. . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Clark v. Ecolab Inc.*, No. 04 Civ. 4488(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).

Under Rule 23, a court's review of a proposed class settlement is a "two-step process." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Initially, the court

decides whether the settlement should be preliminarily approved and, if so, "notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.* At the preliminary approval stage—the present stage—the Court's review is relatively lenient, as it is difficult to adjudge the appropriateness of a class action settlement prior to the dissemination of notice and an opportunity for "the proposed settlement . . . to be tested in a fairness hearing[.]" *E.g.*, *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 13:13 n.8 (noting that "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation*, (Third) § 30.41 (1995)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (court's first-stage analysis consists of a review for "obvious deficiencies").

Also, "[f]airness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *E.g.*, *Hernandez v. Merrill Lynch & Co., Inc.*, 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*Trade Fin. Corp.*, 10 Civ.

4030(RJH)(DCF), 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Autamarea Grp., LLC*, No. 10-CV-6451 (RLE), 2011 WL 4599773, at *1 (S.D.N.Y. June 3, 2011) (same).

Here, the Settlement is procedurally fair, substantively fair, and satisfies each of the nine factors delineated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Accordingly, the Court should grant preliminary approval and authorize the distribution of Settlement Notices and Claim Forms to Class Members. Exhibit B.

## A.    The Settlement is Procedurally Fair

The Parties' Settlement is procedurally fair, thus warranting preliminary approval. To make this determination, "courts examine the settlement's terms and the negotiating process leading to settlement." *Elliot*, 2012 WL 6024572, at *3. Here, Plaintiffs engaged in a thorough investigation even before filing their claims. Huot Decl. ¶¶ 5-9. The Settlement was the result of months of negotiations where the Parties exchanged demands, offers, counter-demands, and counter-offers. *Id.* ¶¶ 12-17. Critically, prior to the exchange of any settlement proposals, Class Counsel analyzed detailed time records and compensation data for every single Class Member. *Id.* ¶¶ 13-15. The substantial discovery allowed Class Counsel to calculate the precise damages for every single Class Member and negotiate vigorously on their behalf to secure a settlement that represents a ***remarkable 65% recovery*** of all of their potential wage damages. *Id.* ¶¶ 13-20.

Under these circumstances, a presumption in favor of procedural fairness arises. *See Rivas v. Dinex Grp., LLC*, No. 20-cv-03117, 2021 WL 2850627, at *2 (S.D.N.Y. July 8, 2021) (finding a settlement procedurally fair "because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims through factual and legal investigation."); *see also Elliot*, 2012 WL 6024572, at *3 (finding procedural fairness where parties exchanged discovery). Also, the settlement terms themselves support a finding of

procedural fairness because the Settlement is for a reasonable and substantial sum, allocation thereof is based on Class Members' actual damages, and the settlement procedure provides Class Members with an opportunity to opt out of or object to the terms. *See* Agreement §§ III(C)-(D).

### B.    The Settlement is Substantively Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the factors set forth in *Grinnell*. *E.g.*, *Marroquin Alas*, 2016 WL 3406111, at *4-5 (reviewing *Grinnell* factors and approving wage-and-hour settlement). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" (*Newberg* § 13:13 n.9) to determine whether the settlement falls within "the range of reasonableness" (*id*. at § 13:15), it is useful for the Court to consider the criteria on which it will ultimately adjudge the settlement.

The *Grinnell* factors are: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial;  (vii) the ability of the defendant to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. The *Grinnell* factors weigh in favor of approval of the Settlement, and certainly in favor of preliminary approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, and Long (#1)

By reaching a favorable settlement prior to summary judgment motions or trial, the Parties avoid significant expense and delay.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Marroquin Alas*, 2016 WL 3406111, at *4,

*8, *10 (approving $282,500 settlement and stating "[h]ere, significant discovery and statistical experts would be required followed by a fact-intensive trial. Preparing and presenting evidence to support Plaintiffs' position would consume tremendous time and resources"); *Frank*, 228 F.R.D. at 185 (finding a wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved").

This case is no exception, with a $30,550.00 fund and 58 Class Members with both federal and State claims, further litigation here would cause substantial expenses and delay. Indeed, additional pre-class certification and potential post-certification discovery would need to be completed. Plaintiffs would file a motion for class certification under Rule 23, which Asphalt Green would likely oppose. Defendant would also likely oppose Plaintiffs' motion for collective certification under FLSA Collective. In addition, the Parties would need to complete document discovery, including the search for and production of additional ESI, and numerous depositions, after which the Parties would likely file competing motions for summary judgment. If the Court denied the Parties' summary judgment motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex, and would consume significant time and resources from both the Parties and the Court. Any judgment might also be appealed, further extending the litigation. The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

## 2.     The Reaction of the Class Has Been Positive (#2)

Because settlement notices have not yet been issued, the Court should more fully analyze this factor after Class Members have been notified of the Settlement and given the opportunity to opt out or object. *Caballero v. Senior Health Partners, Inc.*, No. 16 CV 00326 (CLP), 2018 WL 6435900, at *4 (E.D.N.Y. Dec. 7, 2018) ("The second *Grinnell* factor – the reaction of the Class – could not be evaluated at the time of the preliminary approval stage[.]"); *Parker v. City of N.Y.*,

No. 15 CV 6733 (CLP), 2018 WL 6338775, at *4 (E.D.N.Y. Dec. 4, 2018) (same); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (second *Grinnell* factor is considered only "to the limited extent possible at the preliminary approval stage"). That said, it should be noted that Plaintiffs strongly support the Settlement and many of the additional 22 Officers who already joined the case as opt-in plaintiffs, and already qualify as Authorized Claimants, have expressed their strong support for the Settlement. Huot Decl. ¶ 24.

### 3. Discovery Has Advanced Far Enough for the Parties to Evaluate the Strengths and Weaknesses of the Case (#3)

The Parties completed extensive enough discovery to recommend settlement. *Id.* ¶¶ 5-15. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852 (KHP), 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018). The Parties' discovery here meets this standard.

Class Counsel conducted a thorough investigation and legal research on the underlying merits of the class claims, likelihood of obtaining liquidated damages, and the proper measure of damages. Huot Decl. ¶ 6. They also researched Defendant's likely affirmative defenses. *Id.* After filing, Class Counsel conducted further investigations including, but not limited to, interviewing Plaintiffs and certain Class Members, some of whom joined this Action as opt-in plaintiffs. *Id.* ¶ 9. As referenced above, the Parties exchanged detailed time records and compensation data for every single Class Member. *Id.* ¶ 13. Before any negotiations took place, Class Counsel meticulously analyzed all records and prepared detailed damage calculations for each individual Class Member. *Id.* ¶ 14. Armed with such extensive discovery, data, and analysis, Class Counsel was able to vigorously negotiate on behalf of the Class Members to secure a settlement that represents a **65% recovery** of their best-case scenario wage damages. *Id.* ¶¶ 15-19.

These facts strongly favor preliminary approval. *See Marroquin Alas*, 2016 WL 3406111,

at *4 (sampling of pay records, employee handbooks, and company policies sufficient to evaluate settlement); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

### 4.    Plaintiffs Will Face Significant Risks if the Case Proceeds (#4-5)

"Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Although Plaintiffs believe their case is strong, it is subject to considerable risk, particularly in light of some decisions in the Second Circuit in which courts have declined to grant Rule 23 class certification or have decertified FLSA collectives. *E.g.*, *Jianmin Jin v. Shanghai Original, Inc.*, 16-cv-5633, 2018 WL 1597389, at *1 (E.D.N.Y. Apr. 2, 2018) (decertifying collective action); *McEarchen v. Urban Outfitters, Inc.*, 13-CV-3569, 2017 WL 3912345, at *2-3 (E.D.N.Y. Sept. 6, 2017) (same); *Scott v. Chipotle Mexican Grill, Inc.*, 12-CV-8333, 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (decertifying collective and denying class certification); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 282, 299-301 (S.D.N.Y. 2015) (same); *Hernandez v. Fresh Diet, Inc.*, 12-cv-4339, 2014 WL 5039431, at *2, *6, *8-9 (S.D.N.Y. Sept. 29, 2014) (same).

Even if successful on their motion for collective certification of the FLSA Collective and their class certification motion, further litigation would present significant risks to Plaintiffs and Class Members. In fact, this is true even if this case proceeded to a trial on the merits. To the extent a class is certified under Rule 23, the Class will be comprised of former and presently employed Officers, a number of whom may not wish to participate in pre-trial discovery and trial

of this Action.  Moreover, Plaintiffs would have to overcome Defendant's defenses, including their contentions that Plaintiffs and Class Members are not entitled to protections under the FLSA and NYLL because they are supposedly not Asphalt Green employees, that Plaintiffs and Class Members do not qualify as "freelancer workers" under FIFA, and that Asphalt Green does not qualify as a "hiring party" under FIFA.  While Class Counsel believe that they could ultimately establish both liability and damages, Defendant is equally confident in its defenses.  Proceeding to trial would require significant additional factual development and perhaps expert testimony.  *See, e.g.*, *Marroquin Alas*, 2016 WL 3406111, at *5 (noting that "establishing liability would be a time-consuming and costly process").  Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of a trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed Settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

### 5.      Risks Involved in Maintaining the Class Through Trial (#6)

Should the case proceed, Asphalt Green would likely oppose Plaintiffs' application for collective certification under the FLSA and for Rule 23 class certification of the NYLL claims.  If Defendant's efforts were unsuccessful, they would likely appeal the Court's determinations.  *See Frank*, 228 F.R.D. at 186 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification.  While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement."); *see also Elliot*, 2012 WL 6024572, at *4 (risk of maintaining certification weighed in favor of settlement approval where plaintiff would face vigorous opposition).  Settlement eliminates the risks and delays inherent in this process.  As such, this factor weighs in favor of approval.

### 6.    Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (#7)

Defendant is a medium-sized company that could likely withstand a greater judgment. However, Defendant's ability to withstand a greater judgment "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  As the Honorable Sidney H. Stein explained in *Painewebber*:

> [E]vidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, since the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures.  However, the converse is not necessarily true; *i.e.*, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. . . . PaineWebber has the ability to withstand a judgment in this action of greater than [the settlement amount].  Accordingly, this element of the *Grinnell* test weighs neither for nor against approval of the Settlement.

171 F.R.D. at 129, *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Thus, this factor is neutral and does not weigh against granting preliminary approval.

### 7.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and Attendant Risks of Litigation (#8-9)

Here, the total potential wage damages for all 58 Class Members amount to $47,388.00. Huot Decl. ¶ 20.  Defendant agreed to settle this case for $30,550.00, which amounts to an impressive 65% recovery of all such damages.  *See id.* ¶ 19; Agreement § I(A).  The proposed Settlement represents substantial value for Class Members' best-case scenario damages, especially given the attendant risks of litigation, including prevailing on motions to certify the Class and the FLSA Collective, sustaining certification of the FLSA Collective through trial, surviving a motion for summary judgment, succeeding on all claims at trial, and prevailing on appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect

to a settlement–a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

This Settlement reflects a reasonable compromise, and the 65% recovery percentage substantially exceeds the range of reasonableness that is routinely approved in other wage-and-hour settlements within this Circuit.  *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wang v. Masago Neo Asian Inc.*, CV 14-6249(DRH)(ARL), 2016 WL 7177514, at *2-4 (E.D.N.Y. Sept. 26, 2016) (approving a 30% recovery of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354 (LEK/ATB) (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Surdu v. Madison Glob., LLC*, No. 15 Civ. 6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding settlement reasonable where class members receive approximately 50% of economic damages, "[i]n light of the risks of litigation[.]"); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (a recovery of 24.96% is reasonable "[i]n light of [] litigation risks[.]"); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks); *see also Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation.").

Indeed, weighing the benefits of the Settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable and certainly warrants notice to the Class. *See Elliot*, 2012 WL 6024572, at *4 (granting final approval of settlement and finding that

"meaningful payment to class members [] is outweighed by the mere possibility of further relief.").

Thus, the nine *Grinnell* factors weigh heavily in favor of preliminary approval of the Settlement.  If a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination.  Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion'" (*Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## III.    THE NOTICE PLAN, THE DISTRIBUTION PROCESS, AND THE RELEASES SHOULD BE APPROVED

The proposed Settlement Notice and Claim Form (Exhibit B), complies with due process and Rule 23.  Notice must provide: "[T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. … The notice must clearly and concisely state in plain, easily understood language:

> (i)    the nature of the action;
>
> (ii)    the definition of the class certified;
>
> (iii)    the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)    that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3)."

Rule 23(c)(2)(B).  Courts are given broad power on procedures for providing notice, so long as such procedures are consistent with standards of reasonableness that due process clauses in the U.S. Constitution impose.  *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").  "When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Cap. One Fin. Advisors*, 559

F. App'x 22, 26 (2d Cir. 2014) (quoting Rule 23(c)(2)(B)).  Here, since address records are available for all Class Members, notice will be sent by First Class Mail.  Agreement § III(B).

The contents of the proposed Settlement Notice exceed the requirements of due process and Rule 23.  *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally.").  The Settlement Notice describes the terms of the Settlement, informs Class Members about the allocation of attorneys' fees and service award, details the specific claims they are releasing, and provides specific information on the date, time, and place of the final approval hearing.  *See* Exhibit B.  This provides more than sufficient due process to Class Members and complies with Rule 23.  *Marroquin Alas*, 2016 WL 3406111, at *6 (approving similar settlement notices to workers in wage class action).

## IV.    APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE FLSA

Given that the proposed Settlement satisfies Rule 23, it is necessarily appropriate under the FLSA as well.  "Because 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."  *Bryant v. Potbelly Sandwich Works, LLC*, No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996(CM), 2014 WL 2199427, at *7 (S.D.N.Y. May 23, 2014).  For the reasons stated above, the proposed Settlement between the Parties warrants approval under Rule 23.  As a result, approval of the proposed Settlement under the FLSA is also warranted.

## V.    THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING

The proposed PA Order (Exhibit C) sets forth a proposed sequence of deadlines associated with the Settlement.  The Parties respectfully request that the Court enter the proposed PA Order and set a Fairness Hearing at approximately 160 days from the entry of the Court's PA Order.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement, preliminarily certify the Class and Collective, designate Faruqi & Faruqi, LLP as Class Counsel, authorize the mailing of the proposed Settlement Notice and Claim Form, and issue an Order scheduling a fairness hearing.

Dated: July 7, 2025

**FARUQI & FARUQI, LLP**

By:   _/s/ Innessa M. Huot_
     Innessa Melamed Huot

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com

*Attorneys for Plaintiffs, the proposed FLSA Collective, and the proposed Class*