# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between the *Piney* Plaintiffs, individually and on behalf of a class they seek to represent ("Class Members" or collectively "Plaintiffs") and Brooklyn Institute of Arts and Sciences a/k/a Brooklyn Museum ("Brooklyn Museum" or "Defendant"). Plaintiffs and Defendant are collectively referred to herein as the "Parties."

# RECITALS AND BACKGROUND

**WHEREAS,** on January 23, 2025, Plaintiffs filed a Complaint captioned *Piney, et al. v. City of New York, et al.*, No. 1:25-cv-00671-DEH-SLC (the "Action");

**WHEREAS,** Plaintiffs allege, *inter alia*, that Defendant violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL") and the Freelance Isn't Free Act, N.Y.C. Admin. Code §§ 20-927, *et seq.* ("FIFA") by failing to timely pay wages, failing to pay minimum wages, failing to pay all wages owed, and failing to provide accurate wage statements and Notices of Pay Rate;

**WHEREAS,** Brooklyn Museum has denied and denies that it engaged in any unlawful or improper conduct with respect to Plaintiffs or that any Plaintiffs were employees of Brooklyn Museum;

**WHEREAS,** the Parties have engaged in an extensive investigation with respect to Plaintiffs' claims and have analyzed and evaluated the merits of Plaintiffs' claims and Defendant's defenses, and all agree that bona fide disputed issues exist regarding Plaintiffs' claims;

**WHEREAS,** the Parties mutually desire to fully resolve and forever settle the claims asserted by Plaintiffs involving Brooklyn Museum in this Action for the purposes of avoiding the time, uncertainties, and significant expenses of further litigation and have, therefore, engaged in good-faith, arm's length settlement negotiations;

**NOW, THEREFORE,** the Parties enter into this Agreement to dispose of the Action with respect to Defendant, and to fully, finally, and forever discharge, settle, and compromise all claims against Brooklyn Museum under the terms and conditions set forth herein (the "Settlement"):

I. **THE SETTLEMENT PAYMENT:**

   A. **Gross Settlement Fund ("GSF"):** In consideration for the Parties' execution of and compliance with the terms of this Agreement, Defendant agrees to pay Thirty-Six Thousand, One Hundred and Nine Dollars and Forty-Five Cents ($36,109.45).

   B. **Fee & Cost Payments:** The amounts paid to Plaintiffs' Counsel for reasonable attorneys' fees shall be Twelve Thousand and Thirty-Six Dollars and Forty-Eight Cents ($12,036.48), which represents one third (1/3) of the GSF. The amount paid to Plaintiffs' Counsel as reimbursement of reasonable and actual costs and expenses incurred in furtherance of the Action shall not exceed Five Hundred Dollars

($500.00). The Fee & Cost Payments represent attorneys' fees, costs, and expenses for services rendered on Plaintiffs' behalf in connection with this Action, negotiations resulting in this Agreement, and acts performed in furtherance of this Agreement.

    a. The Fee & Cost Payments are deducted from the GSF and paid to Plaintiffs' Counsel. The Fee & Cost Payments shall be reported in an IRS Form 1099. Defendant shall not object, oppose, or otherwise comment on Plaintiffs' application for fees and costs provided they do not exceed the amounts described in this Agreement. Any portion of the Fee & Cost Payments not approved by the Court shall become part of the Net Allocation Fund as set forth in Section I(D) below. Plaintiffs reserve the right to appeal any order issued by the Court regarding an award of attorneys' fees and costs that are below that requested herein.

C. **Service Payment:** Plaintiffs' Counsel shall move the Court for the approval of Service Payments of $500 to Plaintiffs Albert Piney ("Piney") and Devon Dawkins ("Dawkins") for serving as Class representatives and/or for the time and effort they expended in furtherance of this Action and in securing the Settlement. The Service Payments are over and above any Individual Settlement Payments to which Piney and Dawkins are entitled to under the Settlement Allocation Formula, described below.

    a. The Service Payments are deducted from the GSF. Defendant shall not object, oppose, or otherwise comment on Plaintiffs' application for Service Payments provided they do not exceed the amounts described in this Agreement. Any portion of the Service Payments not approved by the Court shall become part of the Net Allocation Fund as set forth below.

D. **Net Allocation Fund ("NAF"):** After the Fee & Cost Payments and Service Payments, the remaining amount of the GSF is estimated to be Twenty-Two Thousand, Five Hundred and Seventy-Two Dollars and Ninety-Seven Cents ($22,572.97).

    a. Each Class Member's share of the NAF is calculated by dividing the total amount allegedly owed to the Class Member for services provided to Brooklyn Museum through the Paid Detail Program ("PDP") by the total amount owed to all Class Members for such work. This percentage is then multiplied by the NAF to determine the Individual Settlement Payment each Class Member is eligible to receive. The formula is based on actual compensation and payroll data for each Class Member.

    b. As described below, Class Members must become Authorized Claimants in order to receive their Individual Settlement Payments.

        i. Class Members become Authorized Claimants by either: (1) submitting a Consent to Join Form in the Action prior to the Court's Preliminary Approval Order (and not opting out of the Settlement);

       or (2) submitting a Claim Form (described in Section III(B) below) prior to the "Bar Date" deadline (*see* Section III(B)) as ordered by the Court.

    c. The Final Claimed Funds is the sum of all the Individual Settlement Payments to be paid to all Authorized Claimants from the NAF.

E. **Settlement Administrator Fee**: The Parties agree to the appointment of Analytics LLC as the Settlement Administrator to administer the Settlement. Fees paid to the Settlement Administrator shall be no more than Five Hundred Dollars ($500.00). Provided there is a sufficient amount in the GSF remaining after paying Settlement Checks to Authorized Claimants, the Service Payments, and the Fee & Cost Payments, the Settlement Administrator Fee shall be paid out of the GSF. Should the amounts remaining in the GSF be insufficient to cover the Settlement Administrator Fee, Brooklyn Museum shall pay such amounts over and above Defendant's payment of the GSF, up to a cap of $500. Provided the Settlement Administrator's Fees do not exceed $500, such fees shall not reduce the NAF. The Settlement Administrator's Fee shall be paid within twenty-one (21) days of receipt of Defendants' payment of the Final Settlement Fund, described below.

F. **Defendant's Payment of the Final Settlement Fund ("FSF"):** Within ten (10) days of the Court's Final Approval Order, Defendant shall remit, by check or wire transfer to the Settlement Administrator the following: (a) all Fee & Cost Payments approved by the Court; (b) the Service Payments approved by the Court; (c) the Settlement Administrator Fee, and (d) the Final Claimed Funds to be paid to all Authorized Claimants.

    a. Defendant is not required to pay the Individual Settlement Payments allocated to Class Members who: (1) submit Opt-Out Statements; or (2) fail to become Authorized Claimants.

G. **Mailing of Settlement Checks:** Within twenty-one (21) days of receipt of Defendant's payment of the FSF, the Settlement Administrator shall send the Fee and Cost Payments to Plaintiffs' Counsel, the Service Payments to Piney and Dawkins, as well as the Settlement Checks consisting of the Final Claimed Funds to all Authorized Claimants.

    a. Authorized Claimants shall have ninety (90) days to cash their Settlement Checks. Replacement checks must be cashed no later than within the ninety (90) day deadline or within thirty (30) days after the replacement check is issued. The dollar value of any Settlement Checks not cashed by the applicable deadline will be returned to Brooklyn Museum.

H. **Tax Characterization of Payments:** Based on the claims at issue in this Action, which primarily seek liquidated damages for failing to provide timely payment of wages, 100% of all payments distributed to Authorized Claimants shall be treated as liquidated and other damages and shall be reported (to the extent required) without any tax withholdings on an IRS Form 1099.

3

      a. Nothing in this Agreement shall be construed as Defendant or Plaintiffs' Counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of any Authorized Claimant's participation in any portion of this Agreement. Should any government authority determine that all or any part of the payment(s) made on an IRS Form 1099 to any Authorized Claimant under this Agreement is taxable, such Plaintiff shall be solely responsible for the payment of such taxes. However, should all or any part of the payment(s) made on an IRS Form 1099 to any Authorized Claimant be determined to be W-2 wages, then Defendant would be responsible for the payment of any employer share of payroll tax (if any) stemming from such payments.

**II.   RELEASES:**

    **A.**   **Released State Law Claims:** By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt out pursuant to this Agreement forever and fully releases Brooklyn Museum from: (a) all claims, obligations, demands, damages, costs, expenses and liabilities, of whatever kind and nature, whether known or unknown, and whether anticipated or unanticipated under any applicable New York state or New York City wage and hour law or wage payment law, including the NYLL and its various provisions, the New York City Administrative Code and its various provisions, and any other county or city wage and hour laws that arise from Plaintiffs' provision of services for Brooklyn Museum in New York State through the PDP, including those related to payment of minimum or overtime wages, payment for all hours worked, wage or other employee or contractor notices and/or statements, all claims under the New York City Freelance Isn't Free Act, keeping records of hours worked or compensation due, and any other claim for wages; (b) all claims for penalties, liquidated damages, punitive damages, restitution, equitable relief, violations of any other state or local statutory and/or common law related to these claims, interest, attorneys' fees, or litigation expenses under any state wage and hour or wage payment laws based on the claims listed in this paragraph; and (c) all claims arising under local or state statute, regulation, or ordinance relating to employment discrimination, or any other state claim related to or arising out of the Plaintiffs' provision of services through the PDP for Brooklyn Museum which the Plaintiffs' could have asserted for events occurring through the date of this agreement. For avoidance of any doubt, the Released State Law Claims are specifically limited to only apply to claims that relate to Plaintiffs' provision of services through the PDP for Brooklyn Museum in New York State. The Released State Law Claims are not intended to be a general release of any claim that is unrelated to Plaintiffs' provision of services through the PDP for Brooklyn Museum in New York State, including, without limitation, claims arising out of Plaintiffs' provision of services for any company, organization, or business other than Brooklyn Museum through the PDP (*e.g.*, other vendors that participate(d) in the PDP). By operation of the Court issuing Final Approval of this Agreement, each Class Member who does not submit an Opt-Out

        Statement forever and fully releases Brooklyn Museum from the Released State Law Claims.

    **B.**   **Released Federal Claims:** In addition, each Authorized Claimant will release Brooklyn Museum from: (a) all claims, obligations, demands, damages, costs, expenses and liabilities, of whatever kind and nature, whether known or unknown, and whether anticipated or unanticipated under applicable federal wage and hour law or wage payment law, including the FLSA and its various provisions, that arise from Plaintiffs' provision of services for Brooklyn Museum in New York State through the PDP, including those related to payment of minimum or overtime wages, payment for all hours worked, wage or other employee notices and/or statements, keeping records of hours worked or compensation due, and any other claim for wages; (b) all claims for penalties, liquidated damages, punitive damages, restitution, equitable relief, violations of any other federal common law related to these claims, interest, attorneys' fees, or litigation expenses under the FLSA and any federal wage and hour or wage payment laws based on the claims listed in this paragraph; and (c) all claims arising under federal statute, regulation, or ordinance relating to employment discrimination, or any other federal claim related to or arising out of the Plaintiffs' provision of services through the PDP for Brooklyn Museum which the Plaintiffs' could have asserted for events occurring through the date of this agreement. For avoidance of any doubt, the Released Federal Claims are specifically limited to only apply to claims that relate to Plaintiffs' provision of services through the PDP for Brooklyn Museum in New York State. The Released Federal Claims are not intended to be a general release of any claim that is unrelated to Plaintiffs' provision of services through the PDP for Brooklyn Museum in New York State, including, without limitation, claims arising out of Plaintiffs' provision of services for any company, organization, or business other than Brooklyn Museum through the PDP (*e.g.*, other vendors that participate(d) in the PDP). By filing a Consent to Join Form and/or submitting a Claim Form, and receiving a payment under this Agreement, each Authorized Claimant forever and fully releases Brooklyn Museum from the Released Federal Claims.

**III.**   **PROCEDURAL ISSUES:**

    **A.**   **Settlement Class:** For settlement purposes, the Parties agree to collective certification under the FLSA and to class certification under Fed. R. Civ. P. 23 and that the Class shall include all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Brooklyn Museum through the PDP at any time from January 23, 2019 through May 16, 2025, and who do not opt out of the Settlement.

    **B.**   **Notice to Class Members:** Plaintiffs will request that the Court approve a Settlement Notice and Claim Form to be sent to all Class Members. Defendant will not oppose such requests. The Court-approved Notice will inform Class Members about this Agreement and will advise them of the opportunity to object, opt out, submit a Claim Form, and/or appear at the Fairness Hearing.

      a. Class Members that send their Claim Forms by the Bar Date will be deemed Authorized Claimants. To be effective for the purposes of becoming an Authorized Claimant, a Claim Form must be post-marked, emailed, or faxed to the Settlement Administrator or Plaintiffs' Counsel by the Bar Date. The Bar Date shall be: (i) sixty (60) days from the date of the initial mailing or as otherwise set by the Court; and (ii) an additional fifteen (15) days for any Class Members who did not receive or did not timely receive the Settlement Notice, or were unable to return the Claim Form within sixty days (60) days due to such factors as military service, medical issues, or other extraordinary circumstances.

      b. Class Members who submit Consent to Join Forms prior to the Court's Preliminary Approval Order ("Opt-in Claimants") are automatically deemed Authorized Claimants unless they opt out of the Settlement.

      c. Class Members (other than Opt-In Claimants) who fail to timely submit a Claim Form shall not be entitled to recovery from this Settlement, unless otherwise agreed to by the Parties or the Court.

C. **Settlement Opt-Outs**: Class Members who choose to opt out of the Settlement must submit via First Class U.S. Mail a written, signed Opt-Out Statement to the Settlement Administrator stating that they are opting out of the Settlement, and include their name, address, telephone number, and language such as, "I opt out of the Brooklyn Museum PDP wage-and-hour settlement" or other words to that effect. To be effective, an Opt-Out Statement must be post-marked by the Bar Date. Class Members who do not opt-out shall be deemed to have accepted the Settlement and the terms of this Agreement, will be bound by the Final Approval Order, and will have their Released State Law Claims released and dismissed with prejudice.

D. **Objections**: Class Members who wish to present objections to the proposed Settlement ("Objector") must first do so in writing. To be considered, such statement must be mailed to the Settlement Administrator via First Class U.S. Mail, post-marked by the Bar Date. The statement must include all reasons for the objection and any supporting documentation. The statement must include the name, address, and telephone number for the Objector. An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state their intention to do so in writing at the time they submit such objection. An Objector may withdraw their objection at any time. The Parties may file with the Court written responses to any filed objections prior to the Fairness Hearing.

E. **Termination of Agreement**: If this Settlement is not consummated for any reason, including, without limitation, a ruling by the Court declining to enter a Preliminary or Final Approval Order, the Parties shall first endeavor to resolve the matter jointly and in good faith with the goal of effectuating settlement. This may include seeking reconsideration of the Court's ruling, renegotiating this Agreement, or taking any other actions to address any issues with the Settlement identified by the Court. To

6

the extent such efforts fail, the Parties may then continue to litigate the Action as though this Agreement had never been executed.

F. **Reasonable Compromise of Bona Fide Dispute:** The Parties agree that the terms of this Agreement represent a reasonable compromise of disputed issues, arising from a bona fide dispute over the merits of Class Members' claims and agree to represent the same to the Court. The Parties further agree that the Settlement is a fair, reasonable, and adequate resolution of Class Members' claims, and is in the best interests of the Class Members.

H. **Knowing and Voluntary Agreement:** The Parties represent and warrant that they enter into this Agreement knowingly, voluntarily, of their own free will, without any pressure or coercion from any person or entity, and with the full knowledge of its significance.

I. **Advice of Counsel:** The Parties acknowledge that they have had an opportunity to receive advice about the terms and legal effects of the Agreement from counsel of their choosing. The Parties further acknowledge that they have read this Agreement in its entirety, that they have had an opportunity to discuss it with counsel of their choosing, that they understand its terms, that they are fully competent to enter into it, and that they have had a reasonable time within which to consider this Agreement and its terms before signing it.

J. **Mutual Full Cooperation:** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms, and to effectuate the terms of this Agreement, including, without limitation, execution of all necessary documents and such other action(s) as may be necessary to implement the terms of this Agreement. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant, take all necessary steps to secure the Court's approval of the Settlement and this Agreement.

K. **Construction and Severability:** The Parties agree that the terms and conditions of this Agreement are the result of lengthy and extensive arm's length negotiations between the Parties, and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party participated in the drafting thereof. If any part of this Agreement is found to be illegal, invalid, or unenforceable, such finding shall not affect the validity of any other part of this Agreement. The Parties request that, before declaring any provision of this Agreement invalid, the Court first attempt to construe all provisions as valid to the fullest extent possible, consistent with applicable precedents and the intent expressed in this Agreement.

L. **Captions and Interpretations:** Section titles or captions in this Agreement are inserted as a matter of convenience and for reference only, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

M. **Modification:** This Agreement may not be changed, altered, or modified, except in a writing signed by counsel for both Parties. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for both Parties.

N. **Merger Clause:** This Agreement contains the entire agreement between the Parties relating to the Settlement.

O. **Binding on Assigns:** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

P. **Counterparts and Electronic or Facsimile Signatures:** This Agreement may be executed in counterparts electronically and/or via facsimile. When each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement. A photocopy or facsimile of the original documents will have the same force and effect as the originals.

Q. **Applicable Law:** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of law principles. The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Agreement.

R. **Breach of Agreement:** Litigation concerning any alleged breach of any provision(s) of this Agreement by any Party shall be pursued solely in the Southern District of New York. The Parties agree that the laws of the State of New York shall apply, without regard to conflict of laws principles.

*\*\*\* Remainder of page intentionally left blank. Signatures on following page. \*\*\**

**WHEREFORE**, the Parties hereto have knowingly and voluntarily caused this Agreement to be signed as of the day and dates indicated below.

**FOR PLAINTIFFS:**

**Albert Piney**

Signature: _Albert Piney (Jun 10, 2025 09:13 EDT)_  Date: 06/10/2025

**Devon Dawkins**

Signature: _Devon Dawkins (Jun 10, 2025 12:55 EDT)_  Date: 06/10/2025

**FOR DEFENDANT:**

**Brooklyn Institute of Arts and Sciences a/k/a Brooklyn Museum**

Signature: _Conley Rollins_ (Signed by: C1E70128139E4AD...)

Print Name: Conley Rollins   Date: 6/11/2025

9