UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALBERT PINEY, et al., on behalf of themselves and others similarly situated,<br><br>             Plaintiffs,<br><br>     v.<br><br>CITY OF NEW YORK, et al.,<br><br>             Defendants. | CIVIL ACTION NO. 25 Civ. 671 (DEH) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Albert Piney and others ("Plaintiffs"),[1] on behalf of themselves and others similarly situated, bring this putative collective and class action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), New York State and New York City law against Defendants City of New York, (the "City"), the New York City Police Department ("NYPD"), 88 corporate entities (the "Vendors"),[2] and several John Does (the City, NYPD, Vendors, and John Does, together, "Defendants").  (ECF No. 91 (the "SAC")).

---

[1] The 19 Plaintiffs are: Albert Piney; Roman Diaz; Jose Martinez; Freddy Suazo; Desmond Grant; M. Mostayen Faysal; Sophia Daly; Charlie Ruiz-Reyes; James Divino; Michael Kmiotek; Devon Dawkins; Alexis Yanez; Julio Rosa; Jaynel Pantoja; Claudio Diaz; Jorge Zorrilla; Dominique Eveillard; Sudan Osorio; and Randy Chow.  (ECF No. 91 ¶¶ 11–48).

[2] The Vendors named as Defendants are: Target Corporation; MSG Entertainment Holdings, LLC; The New York Yankees, LP; NYU Langone Hospital f/k/a NYU Lutheran Medical Center; Mount Sinai Health System, Inc.; The New York Times Company; B.J.'s Wholesale Club,Inc.; RXR Realty LLC; Tishman Speyer Associates Limited Partnership d/b/a 509 W 34, LLC; Rockefeller Group International, Inc. d/b/a Rockefeller Center; RCPI Landmark Properties LLC d/b/a Rockefeller Center; Buena Vista Theatrical Group Ltd d/b/a Disney Theatrical Group; BXP, Inc f/k/a Boston Properties Inc.; Kering Americas, Inc.; Apple Inc.; Congregation Rodeph Sholom; 34th Street Partnership; Bank of America Corporation; The TJX Companies, Inc., d/b/a Marshalls and d/b/a TJ Maxx; Genting New York LLC d/b/a Resorts World Casino; Primark US Corp.; Barclays Bank PLC; Royal Realty LLC; NewYork-Presbyterian Healthcare System IPA, LLC; 99c LLC d/b/a 180 Maiden; Aldi, Inc.; Wegmans Food Markets, Inc.; Neue Galerie New York; V&R Payroll Factors, Inc.; Wakefern Food Corp., d/b/a ShopRite Supermarkets, Inc.; The Bank of New York Mellon Corporation; The Animal Medical Center, Inc. a/k/a Schwarzman Animal Medical Center; Yeshiva Ketana of Queens; Parker

Plaintiffs have entered into settlement agreements with five of the Vendors—(1) Lepozzi Inc. d/b/a Lauren B. Jewelry ("Lauren B"); (2) Empire Force Incorporated ("Empire"); (3) Asphalt Green, Inc. ("Asphalt Green"); (4) Brooklyn Institute of Arts and Sciences a/k/a Brooklyn Museum ("Brooklyn Museum"); and (5) RBG Management Corp. a/k/a Morton Williams Supermarket ("Morton Williams," with Lauren B, Empire, Asphalt Green, and Brooklyn Museum, the "Settling Defendants")—and now move for preliminary approval of their settlements with the Settling Defendants. (ECF Nos. 464 (the "Lauren B Motion"); 476 (the "Empire Motion"); 483 (the "Asphalt Green Motion"); 488 (the "Brooklyn Museum Motion"); 501 (the "Morton Williams Motion") (together, the "Motions")). In the Motions, which are unopposed, Plaintiffs seek: (i) preliminary approval of their settlement agreements with the Settling Defendants; (ii) certification of settlement classes; (iii) appointment of Faruqi and Faruqi, LLP (the "Firm") as class counsel; (iv) approval of the respective proposed notices of settlement and claim forms;

---

Jewish Institute for Healthcare and Rehabilitation; Young Israel of Queens Valley; Yeshiva Darchei Torah; Torah Center of Hillcrest Inc.; Burlington Stores, Inc.; Disney Entertainment LLC d/b/a American Broadcasting Company; Sephardic Lebanese Congregation Inc.; Rochdale Village Association, Inc.; Vornado Realty Trust a/k/a Penn District; New York Society for the Relief of the Ruptured and Crippled, maintaining the Hospital for Special Surgery d/b/a Hospital for Special Surgery; JP Morgan Chase & Co.; UBS Financial Services, Inc.; Queens Ballpark Company LLC; Taino Towers Apartments LLC; MIR Hanson Associates, LLC; New York University; SBH Health System d/b/a St. Barnabas Hospital; Manhattan Beer Distributors LLC; Montefiore Medical Center; Northwell Health Inc.; RBG Management Corp. d/b/a Morton Williams Supermarket; GFP Real Estate LLC; Rosco Inc.; SL Green Realty Corp.; Grand Central Partnership, Inc.; Bloomingdale's LLC; Flushing-Fresh Meadows Jewish Center Inc.; The Goldman Sachs Group, Inc.; Park Avenue Synagogue; Bnos Bais Yaakov High School of Lakewood; Chelsea Piers L.P.; Congregation Beth-El Sephardic Center for Jamaica Estates; Yeshiva University; Empire Force Incorporated; FedEx Corporation; Avenues: The World School; The Museum of Modern Art; Bryant Park Corporation; Brooklyn Institute of Arts and Sciences a/k/a Brooklyn Museum; Edmond J. Safra Synagogue; Best Buy Co. Inc.; Century 21 USA, LLC; Brookdale Hospital Medical Center; Times Square Church, Inc; Ashphalt Green, Inc.; Lepozzi Inc. d/b/a/ Lauren B. Jewelry; The New York Botanical Garden; The Brooklyn Hospital Center; NBCUniversal Media, LLC; Sam Ash Music Corporation; Zara USA, Inc.; Museum of Jewish Heritage A Living Memorial to the Holocaust; Torah Umesorah, Inc. d/b/a Torah Academy High School for Girls d/b/a Torah Academy for Girls; Omni Eye Surgery of New York, P.C.; and Plaza Motors, LLC f/k/a Plaza Motors of Brooklyn, Inc. d/b/a Plaza Auto Mall d/b/a Plaza Honda. (ECF No. 91 ¶¶ 1, 49–587).

and (v) approval of the proposed schedule for final settlement approval and setting of a date for a fairness hearing. (ECF Nos. 464; 476; 483; 488; 501). Plaintiffs and the Settling Defendants consented to Magistrate Judge jurisdiction for purposes of ruling on the Motions. (ECF No. 518).

For the reasons set forth below, the Motions are GRANTED.

## II. BACKGROUND

### A. Factual Background[3]

Plaintiffs challenge the NYPD's Paid Detail Program (the "PDP"), pursuant to which the NYPD staffs police officers, detectives, sergeants, lieutenants, and captains (together, "Officers"), at private businesses in New York City, such as those the Vendors own and operate, to perform off-duty uniformed security work for hourly pay. (ECF No. 91 ¶ 1). The NYPD approves the businesses and the Officers that participate in the PDP. (Id. ¶¶ 601–615). The NYPD also directs, controls, and supervises the assignment of Officers to shifts in the PDP, directs Officers' uniforms and appearance, controls the work that Officers perform, and establishes uniform hourly rates based on Officers' rank. (Id. ¶¶ 616–63). The Vendors coordinate with the NYPD to staff Officers, direct Officers to tasks and work locations, and discipline Officers according to NYPD standards. (Id. ¶¶ 664, 669, 672). The Vendors also pay Officers the uniform hourly rate, determine meal and break policies, and require Officers to report their work in activity logs. (Id. ¶¶ 667, 670, 671).

Plaintiffs allege that "[t]he NYPD and the Vendors engage in a pattern and practice of failing to compensate Officers for the work they perform through the [PDP,]" fail "to pay Officers for all the work they perform[,]" and fail to provide the Officers with required wage notices and

---

[3] The Court accepts the allegations of the SAC as true solely for purpose of analyzing the Motions.

wage statements.  (ECF No. 91 ¶¶ 3–5).  Plaintiffs further allege that Defendants engage in unlawful patterns and practices of delaying payment of wages and denying Plaintiffs earned minimum wages.  (Id. ¶¶ 677–83).

In the SAC, Plaintiffs assert nine claims: (1) late payment of wages under the FLSA; (2) failure to pay minimum wage under the FLSA; (3) late payment of wages under the New York Labor Law ("NYLL"); (4) failure to pay minimum wage under the NYLL; (5) failure to pay all wages owed under the NYLL; (6) failure to provide wage notices under the NYLL; (7) failure to provide accurate wage statements under the NYLL; (8) late payment of wages under the Freelance Isn't Free Act, N.Y.C. Admin. Code §§ 20-927, et seq. ("FIFA"); and (9) failure to pay all wages owed under the FIFA.  (ECF No. 91 ¶¶ 1424 1505).

Plaintiffs assert their FLSA claims as a collective action on behalf of themselves and other similarly situated persons who were employed by the NYPD as part of the PDP during the statute of limitations period (the "FLSA Collective").  (ECF No. 91 ¶ 1381).  Plaintiffs allege that Defendants subjected Plaintiffs and the FLSA Collective to the common policies of failing to compensate them at the federal minimum wage for all hours worked and failing to timely pay all wages owed.  (Id. ¶ 1382).  Plaintiffs anticipate that there are approximately 4,500 members in the FLSA Collective.  (Id. ¶ 1386).

Plaintiffs also assert their claims under the NYLL and the FIFA, as a class action comprised of themselves and all other Officers who worked for the NYPD in the PDP during the statute of limitations period (the "Proposed Class").  (ECF No. 91 ¶ 1390).  Plaintiffs anticipate that there are approximately 6,750 members of the Proposed Class.  (Id. ¶ 1396).  Among the questions of law and fact that Plaintiffs contend are common to the Proposed Class are:

4

(a) Whether the Vendors failed to pay Plaintiffs and the Class all minimum wages owed; (b) Whether the Vendors failed to paly Plaintiffs and the Class all wages owed at their regular rates of pay and in accordance with their agreed terms of employment; (c) Whether the Vendors failed to timely pay Plaintiffs and the Class their wages; (d) Whether the Vendors failed to provide Plaintiffs and the Class with Notices of Pay Rate; (e) Whether the Vendors failed to furnish adequate wage statements to Plaintiffs and the Class; and (f) Whether Plaintiffs and the Class are entitled to liquidated damages and injunctive relief.

(Id. ¶ 1400).

**B. Procedural Background**

On January 23, 2025, Plaintiffs filed the Complaint, which named the City, the NYPD, 18 Vendors, and the John Does as Defendants. (ECF No. 1). On February 13, 2025, Plaintiffs filed a First Amended Complaint, which named 16 Plaintiffs and 83 Vendors as Defendants. (ECF No. 33 (the "FAC")). On February 24, 2025, Plaintiffs filed the SAC, which named 19 Plaintiffs and 88 Vendors as Defendants. (ECF No. 91).

On February 18, 2025, Plaintiffs moved for conditional certification of a collective action pursuant to section 216(b) of the FLSA. (ECF Nos. 54 (the "Collective Motion"); 55–78; 89; 336; 414). Plaintiffs also moved to consolidate this action with two related actions pending in this District, Monasar v. City of New York, No. 25 Civ. 1337 (LJL) ("Monasar"), and DeFalco v. City of New York, No. 25 Civ. 1339 (KPF) ("DeFalco"). (ECF No. 141 (the "Consolidation Motion")). While additional Plaintiffs were consenting to join this action, and additional Defendants were being named, served, and filing notices of appearance, the Court extended the time for Defendants to answer, move, or otherwise respond to the SAC, and to respond to the Collective Motion and the Consolidation Motion. (ECF Nos. 87; 127; 145; 246; 259; 438).

To conserve judicial resources, Plaintiffs agreed to dismiss without prejudice the Defendants named in Monasar and DeFalco and pursue their claims against them only in this

action, by way of a third amended complaint ("TAC"). (ECF No. 437). The Court therefore adjourned the deadlines to respond to the Consolidation Motion <u>sine</u> <u>die</u> and set deadlines for filing stipulations of dismissal in Monasar and DeFalco and for filing the TAC. (ECF No. 438). The deadline to file the TAC was later extended to October 15, 2025. (ECF No. 514). After the Monasar and DeFalco actions were dismissed without prejudice, the Court terminated the Collective Motion and Consolidation Motion. (ECF No. 459).

Plaintiffs engaged in direct settlement negotiations with certain Vendors, as to two of which the Court stayed proceedings pending those negotiations. (ECF Nos. 436 (Primark); 447 (Target)). Plaintiffs and the Settling Defendants exchanged and analyzed records concerning the Officers who worked for the Settling Defendants, for whom Plaintiffs calculated damages estimates, and the parties exchanged settlement demands and offers in further settlement discussions. (ECF Nos. 466 ¶¶ 12–16; 478 ¶¶ 12–16; 485 ¶¶ 12–16; 490 ¶¶ 12–16; 503 ¶¶ 12–16). Plaintiffs ultimately notified the Court that they had reached settlement agreements with Lauren B, Brooklyn Museum, Empire, Asphalt Green, Morton Williams, and Primark. (ECF Nos. 439; 449; 463; 469; 487; 492).

On June 9, 2025, Plaintiffs filed the Lauren B Motion. (ECF No. 464). On June 27, 2025, Plaintiffs filed the Empire Motion. (ECF No. 476). On July 7, 2025, Plaintiffs filed the Asphalt Green Motion. (ECF No. 483). On July 9, 2025, Plaintiffs filed the Brooklyn Museum Motion. (ECF No. 488). On July 25, 2025, Plaintiffs filed the Morton Williams Motion. (ECF No. 501).[4] The Honorable Dale E. Ho referred the Motions to the undersigned for report and recommendation.

---

[4] Plaintiffs have not yet filed a motion to approve the settlement with Primark. (<u>See</u> ECF Nos. 522; 524).

(ECF No. 496).  On August 6, 2025, Plaintiffs and the Settling Defendants consented to Magistrate Judge jurisdiction for purposes of ruling on the Motions.  (ECF No. 518).

### 1.  Terms of the Agreements

Plaintiffs have submitted for the Court's review the settlement agreements with each of the Settling Defendants.  (ECF Nos. 466-1 (the "Lauren B Agreement"); 478-1 (the "Empire Agreement"); 485-1 (the "Asphalt Green Agreement"); 490-1 (the "Brooklyn Museum Agreement"); 503-1 (the "Morton Williams Agreement," together the "Agreements")).[5]  The Agreements are largely similar, with exceptions noted below.

### a.  The Settlement Classes

Each of the Agreements defines a separate class for settlement purposes, as follows:

(1) The "Lauren B Settlement Class" includes "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Lauren B through the PDP at any time from January 23, 2019 through [May 8, 2025], and who do not opt out of the Settlement."  (ECF No. 466-1 § III.A).

(2) The "Empire Settlement Class" includes "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Empire Force through the PDP at any time from January 23, 2019 through [June 6, 2025], and who do not opt out of the Settlement."  (ECF No. 478-1 § III.A).

(3) The "Asphalt Green Settlement Class" includes "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Asphalt Green through the PDP at any time from January 23, 2019 through June 6, 2025, and who do not opt out of the Settlement."  (ECF No. 485-1 § III.A).

(4) The "Brooklyn Museum Settlement Class" includes "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Brooklyn Museum through the PDP at any time from January 23, 2019 through May 16, 2025, and who do not opt out of the Settlement."  (ECF No. 490-1 § III.A).

---

[5] Capitalized terms not otherwise defined in this Opinion and Order have the same meaning as in the Agreements.

(5) The "Morton Williams Settlement Class" includes "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Morton Williams through the PDP at any time from January 23, 2019 through July 8, 2025, and who do not opt out of the Settlement."  (ECF No. 503-1 § III.A).[6]

In summary, each settlement class includes the Officers who participated in the PDP for the respective Settling Defendant during the specified period.

### b.  Settlement Amounts, Settlement Administrator, and Releases

Each Agreement provides for the Settling Defendant to make a gross settlement payment (the "Gross Settlement Fund" or "GSF"), from which is to be deducted (i) Plaintiffs' counsel's attorneys' fees and costs and (ii) service award(s) for Plaintiffs who served as class representatives, to arrive at the remaining amount of the GSF (the "Net Allocation Fund" or "NAF").  (ECF Nos. 466-1 § I.A–D; 478-1 § I.A–D; 485-1 § I.A–D; 490-1 § I.A–D; 503-1 § I.A–D).  The amounts for each of the Agreements are as follows:

| Agreement | GSF | Attorneys' Fees | Costs | Service Payment | NAF |
|---|---|---|---|---|---|
| Lauren B | $26,325.00 | $8,775.00 | $600.00 | $500.00 | $16,450.00 |
| Empire | $5,350.00 | $1,783.33 | $500.00 | $500.00 | $2,566.67 |
| Asphalt Green | $30,550.00 | $10,183.33 | $500.00 | $500.00 | $19,366.67 |
| Brooklyn Museum | $36,109.45 | $12,036.48 | $500.00 | $500.00 | $22,572.97 |
| Morton Williams | $149,330.45 | $49,776.78 | $3,000.00 | $1,500.00 $1,250.00 $1,250.00 | $92,553.57 |

(Id.)  The members of the Lauren B, Asphalt Green, Brooklyn Museum, and Morton Williams Settlement Classes will each recover 65% of their potential wage damages.  (ECF Nos. 466 ¶ 19;

---

[6] We refer to the Lauren B Settlement Class, the Empire Settlement Class, the Asphalt Green Settlement Class, the Brooklyn Museum Settlement Class, and the Morton Williams Settlement Class together as the "Settlement Classes".

485 ¶ 19; 490 ¶ 19; 503 ¶ 19).  The Empire Settlement Class is recovering 70.4% of its potential

wage damages.  (ECF No. 478 ¶ 18).

The amount each Settling Defendant will ultimately pay is the sum of: "(a) all Fee & Cost

Payments approved by the Court; (b) the Service Payment approved by the Court; and (c) the

Final Claimed Funds to be paid to all Authorized Claimants."  (ECF Nos. 466-1 § I.E; 478-1 § I.E;

485-1 § I.F; 490-1 § I.F; 503-1 § I.F).

Each Class Member's share of the respective NAF is calculated using the following

formula, which is the same in each Agreement:

> Each Class Member's share of the NAF is calculated by dividing the total amount
> allegedly owed to the Class Member for services provided to [the Settling
> Defendant] through the Paid Detail Program ("PDP") by the total amount owed to
> all Class Members for such work.  This percentage is then multiplied by the NAF to
> determine the Individual Settlement Payment each Class Member is eligible to
> receive.  The formula is based on actual compensation and payroll data for each
> Class Member.

(ECF Nos. 466-1 § I.D.a; 478-1 § I.D.a; 485-1 § I.D.a; 490-1 § I.D.a; 503-1 § I.D.a).

To receive their Individual Settlement Payment, each Class Member must become an

"Authorized Claimant" by either (1) having submitted a Consent to Join Form before the date of

this Opinion and Order and not opting out of the Agreement(s), or (2) submitting a Claim Form

before the Bar Date set by the Court.  (ECF Nos. 466-1 § I.D.b.i; 478-1 § I.D.b.i; 485-1 § I.D.b.i;

490-1 § I.D.b.i; 503-1 § I.D.b.i).  The Bar Date will be:

> (i) sixty (60) days from the date of the initial mailing or as otherwise set by the
> Court; and (ii) an additional fifteen (15) days for any Class Members who did not
> receive or did not timely receive the Settlement Notice, or were unable to return
> the Claim Form within sixty (60) days due to factors such as military service,
> medical issues, or other extraordinary circumstances.

(ECF Nos. 466-1 § III.B.a; 478-1 § III.B.a; 485-1 § III.B.a; 490-1 § III.B.a; 503-1 § III.B.a).

In exchange for their Individual Settlement Payments, each Class Member who does not timely opt out releases the Settling Defendant from all wage-and-hour claims under New York State or New York City law arising from the Class Member's provision of services for the Settling Defendant in New York State through the PDP (the "Released State Law Claims").  (ECF Nos. 466-1 § II.A; 478-1 § II.A; 485-1 § II.A; 490-1 § II.A; 503-1 § II.A).    In addition, all Authorized Claimants—i.e., Class Members who timely consented to join and did not opt-out or who timely submitted Claim Forms—also release all federal (including FLSA) wage-and-hour claims that arise from the Class Member's provision of services for the Settling Defendant in New York State through the PDP (the "Released Federal Claims").  (ECF Nos. 466-1 § II.B; 478-1 § II.B; 485-1 § II.B; 490-1 § II.B; 503-1 § II.B).

Each of the Agreements provides that the parties agree to the appointment of Analytics LLC as the Settlement Administrator (the "Administrator") to administer the Agreements but differs slightly in the Administrator's fee structure.  The Lauren B and Empire Agreements provide that the Administrator's fees are included in the reimbursement of Class Counsel's costs.  (ECF Nos. 466-1 §§ I.B, III.E; 478-1 §§ I.B, III.E).  The Asphalt Green and Brooklyn Museum Agreements each provide that the Administrator's fee shall be no more than $500.00, to be paid as follows:

> Provided there is a sufficient amount in the GSF remaining after paying Settlement Checks to Authorized Claimants, the Service Payment, and the Fee & Cost Payments, the Settlement Administrator Fee shall be paid out of the GSF.  Should the amounts remaining in the GSF be insufficient to cover the Settlement Administrator Fee, [the Settling Defendant] shall pay such amounts over and above [its] payment of the GSF, up to a cap of $500.00.  Provided the Settlement Administrator's Fees do not exceed $500.00, such fees shall not reduce the NAF. . . .

(ECF Nos. 485-1 § I.E; 490-1 § I.E).  The Morton Williams Agreement includes the same language as the Asphalt Green and Brooklyn Museum Agreements with respect to the Administrator's fee but caps it at $1,500.00.  (ECF No. 503-1 § I.E).

### c.  <u>Notice and Opportunities to Opt-Out and Object</u>

Each Agreement includes a notice that informs members of each Settlement Class of their opportunity to object or opt out, appear at the Fairness Hearing, and submit a Claim Form.  (ECF Nos. 466-2; 478-2; 485-2; 490-2; 503-2 (the "Notice" or "Notices")).   The Agreements contemplate that, following this Opinion and Order, the Administrator will send the Notices and accompanying Claim Forms to members of each Settlement Class.  (ECF Nos. 466-1 § III.B; 478-1 § III.B; 485-1 § III.B; 490-1 § III.B; 503-1 § III.B).  As noted above, Class Members will then have 60 days to return a completed Claim Form to the Administrator, and only those Class Members who timely do so will be deemed Authorized Claimants.  (ECF Nos. 466-1 § III.B.a; 478-1 § III.B.a; 485-1 § III.B.a; 490-1 § III.B.a; 503-1 § III.B.a; <u>see</u> § II.B.1.b, <u>supra</u>).

Class Members who chose to opt out must mail to the Administrator by the Bar Date a written, signed statement of their intention to opt out of the Agreement(s).  (ECF Nos. 466-1 § III.C; 478-1 § III.C; 485-1 § III.C; 490-1 § III.C; 503-1 § III.C).  Any Class Member who does not timely submit an opt-out statement pursuant to that procedure will be "deemed to have accepted the Settlement and the terms of th[e] Agreement, will be bound by the Final Approval Order, and will have their Released State Law Claims released and dismissed with prejudice." (ECF Nos. 466-1 § III.C; 478-1 § III.C; 485-1 § III.C; 490-1 § III.C; 503-1 § III.C).

The Court will hold a Fairness Hearing to hear any timely and properly submitted objections to the Agreements, make a final determination as to the fairness, adequacy, and

reasonableness of the Agreements, fix the amounts of attorneys' fees and costs to Class Counsel and the Service Awards, and, if appropriate, enter final judgment. (ECF Nos. 466-1 § III.D; 466-2 at 6; 478-1 § III.D; 478-2 at 6; 485-1 § III-D; 485-2 at 6; 490-1 § III.D; 490-2 at 6; 503-1 § III.D; 503-2 at 6). Class Members who seek to object to the Agreement(s) at the Fairness Hearing must first mail to the Administrator by the Bar Date a statement including "all reasons for the objection, and any supporting documentation[;]" the Court will not consider any objections not timely submitted in writing. (ECF Nos. 466-1 § III.D; 466-2 at 5; 478-1 § III.D; 478-2 at 5; 485-1 § III.D; 485-2 at 5; 490-1 § III.D; 490-2 at 5; 503-1 § III.D; 503-2 at 5). An objector who seeks to appear and be heard at the Fairness Hearing must indicate that intention in their written objection. (ECF Nos. 466-1 § III.D; 478-1 § III.D; 485-1 § III.D; 490-1 § III.D; 503-1 § III.D). The parties may respond to any objections before the Fairness Hearing. (Id.)

### d. Other Provisions

The Agreements are governed by New York law and contemplate that the Court will retain jurisdiction over their implementation. (ECF Nos. 466-1 §§ III.Q, R; 478-1 §§ III.Q, R; 485-1 §§ III.Q, R; 490-1 §§ III.Q, R; 503-1 §§ III.Q, R).

### III. DISCUSSION

### A. Legal Standards

#### 1. Federal Rule of Civil Procedure 23

A party seeking class certification under Federal Rule of Civil Procedure 23 "must clear two hurdles." Martínek v. AmTrust Fin. Servs., No. 19 Civ. 8030 (KPF), 2022 WL 326320, at *3 (S.D.N.Y. Feb. 3, 2022).[7] First, Rule 23(a) requires the moving parties to demonstrate that: "[i] the

---

[7] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

class is so numerous that joinder of all members is impracticable; [ii] there are questions of law or fact common to the class; [iii] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [iv] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In addition to the four Rule 23(a) prerequisites, "the Second Circuit also recognizes an implicit 'ascertainability' requirement, which commands that the proposed class be defined using objective criteria that establish a membership with definite boundaries."  Martínek, 2022 WL 326320, at *3.  Second, if the proposed class meets the Rule 23(a) prerequisites, the parties seeking certification must then show that "the action can be maintained under Rule 23(b)(1), (2), or (3)."  In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 238 (2d Cir. 2012).  Plaintiffs seeking certification under Rule 23(b)(3), as is the case here (ECF No. 91 at 1420–1423), "must establish that (i) 'questions of law or fact common to class members predominate over any questions affecting only individual members' and (ii) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  Martínek, 2022 WL 326320, at *4 (quoting Fed. R. Civ. P. 23(b)(3)).

A settlement of a class action under Federal Rule of Civil Procedure 23 requires court approval.  Fed. R. Civ. P. 23(e).  Approval of a class action settlement generally involves a two-step process, the first being preliminary approval, which "simply allows notice to issue to the class and for [c]lass [m]embers to object to or opt out of the settlement."  Yuzary v. HSBC Bank USA, N.A., No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013); see also Dover v. British Airways, PLC (UK), 323 F. Supp. 3d 338, 348 (E.D.N.Y. 2018) (describing the two-step process).  "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input[,]" and determine whether final approval is appropriate.

13

Yuzary, 2013 WL 1832181, at *1 (citing Clark v. Ecolab, Inc., Nos. 07 Civ. 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)); Fed. R. Civ. P. 23(e)(2) (requiring a fairness hearing at which members of the class may be heard to determine if the proposed settlement is "fair, reasonable, and adequate").

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties.'" Chang v. Philips Bryant Park LLC, No. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019), adopted by, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020). In determining whether to grant preliminary approval, "a court need only find probable cause to submit the settlement proposal to class members and hold a full-scale hearing as to its fairness." Solis v. OrthoNet LLC, No. 19 Civ. 4678 (VSB), 2021 WL 1904984, at *2 (S.D.N.Y. May 11, 2021) (citation modified).

Under Rule 23(e), in considering a motion for preliminary approval of a class settlement, courts consider whether "giving notice is justified by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). Factors relevant to the decision to approve a proposed class action settlement include: "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)). In addition to the four Rule 23(e)(2) factors, courts within the Second Circuit also consider the nine factors established in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974):

(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. at 463.[8]  The Grinnell factors not otherwise covered by Rule 23(e)(2)(C) are factors (2), (3), (7), (8), and (9).  See Amigon v. Safeway Constr. Enters., LLC, No. 20 Civ. 5222 (PK), 2024 WL 5040436, at *6 (E.D.N.Y. Dec. 9, 2024).

Approval of a proposed class action settlement is a matter of the Court's discretion.  See Olibares v. MK Cuisine Glob. LLC, No. 21 Civ. 10694 (VSB), 2023 WL 5702595, at *2 (S.D.N.Y. Sept. 5, 2023) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995)).  In exercising its discretion, the Court may give weight to the fact that the parties have chosen to settle because "[t]he parties and their counsel are in a unique position to assess the potential risks of litigation[.]"  Id.

## 2.  **FLSA Settlement Approval**

The FLSA permits employees to pursue collective actions to recover unpaid wages where the employees are "similarly situated" and file written consents to become plaintiffs.  29 U.S.C. § 216(b).  A court may "implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).  Participation in an FLSA collective action requires an employee to "'opt-in,' meaning the employee must consent in writing to join the suit and that

---

[8] The Second Circuit abrogated Grinnell on other grounds in Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000).

consent must be filed with the court." Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). Thus, under the FLSA, an employee may bring a claim on behalf of other similarly situated employees, who do not become plaintiffs unless they provide written consent. See Douglas v. Allied Universal Sec. Servs., 371 F. Supp. 3d 78, 85-86 (E.D.N.Y. 2019).

Parties may not privately settle and dismiss with prejudice FLSA claims absent approval of the district court or the United States Department of Labor. See Samake v. Thunder Lube, Inc., 24 F.4th 804, 807 (2d Cir. 2022); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). Absent Department of Labor approval, the parties must satisfy the district court that their settlement is "fair and reasonable." Velazquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). In determining whether a FLSA settlement is fair and reasonable, district courts

> consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). This standard for approval of an FLSA settlement "is lower than for a class action under Rule 23[,]" such that "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

In addition, if the class settlement contemplates an award of attorneys' fees and costs, the district court will evaluate the reasonableness of those fees and costs, the request for which must be supported by adequate documentation. Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020). If a district court concludes that a proposed FLSA settlement is unreasonable in whole

or in part, "it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." Id. at 597.

### 3.  Interaction Between Rule 23 and FLSA Settlement Approval

As noted above, Rule 23 allows class members to opt out of a proposed class-wide settlement, while § 216(b) of the FLSA requires employees to opt in to any FLSA collective action to be bound by the judgment or benefit from it. Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103–04 (S.D.N.Y. 2003). Thus, "[t]he opt-out requirement of modern Rule 23(b)(3) directly conflicts with the express opt-in requirement of § 216(b)." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 519 (2d Cir. 2020). Because FLSA and NYLL claims often derive from the same set of facts, employees "frequently bring both types of claims together in a single action[.]" Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 244 (2d Cir. 2011). In these circumstances, plaintiffs may pursue the FLSA claims as a collective action under § 216(b) and the NYLL claims as a class action under Rule 23 in the same action, referred to as a "hybrid" action. See Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012).

## B.  Application

### 1.  Preliminary Approval & Certification of Settlement Classes

Considering the procedural and substantive factors in Rules 23(a), 23(b)(3), and 23(e)(2) as well as the Grinnell and Wolinsky factors, the Court grants both preliminary approval of the Agreements as fair, reasonable, and adequate, as well as provisional certification of the Settlement Classes.

### a. Rule 23(a)

Each of the Settlement Classes satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a).  As to numerosity, the parties estimate that the Lauren B Settlement Class consists of 92 members, the Asphalt Green Settlement Class consists of 58 members, the Brooklyn Museum Settlement Class consists of 99 members, and the Morton Williams Settlement Class consists of 248 members. (ECF Nos. 465 at 14; 484 at 14; 489 at 14; 502 at 14).  Given that each of these four Settlement Classes contains far more than 40 members, which is the number at which "numerosity is presumed" in the Second Circuit, numerosity is satisfied.  Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  While the Empire Settlement Class consists of 12 class members, below the presumption threshold, the average individual recover each Class Member is expected to receive is $213.89, which, when compared with the court filing fees and service costs, would make the filing of individual actions impracticable and not economically feasible.  (ECF Nos. 477 at 15; 478 ¶ 18).  In the interests of "judicial economy," the Court finds that joinder of individual actions by members of the Empire Settlement Class would be impracticable.  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (finding that judicial economy and geographic dispersion of class members demonstrated impracticability of joinder sufficient to satisfy numerosity).  Accordingly, each of the Settlement Classes satisfies the numerosity requirement.

As to commonality, the primary issues in this case—(i) whether the Settling Defendants employed Plaintiffs and the Class Members; (ii) whether the Settling Defendants were "hiring parties" with respect to Plaintiffs and the Class Members; (iii) whether Plaintiffs and the Class Members were "freelance workers;" and (iv) whether the Settling Defendants timely paid

Plaintiffs and the Class Members their wages—are common to the Settlement Classes.  (ECF Nos. 465 at 14–15; 477 at 16–17; 484 at 14–15; 489 at 14–15; 502 at 14–15).

As to typicality, each Class Member's claim arises from the same course of events, i.e., their work in the PDP for the Settling Defendants, who subjected the Class Members to the uniform policies and failed to pay them timely wages.  (ECF Nos. 465 at 17; 477 at 18–19; 484 at 17; 489 at 17; 502 at 17).  See Barrows v. Becerra, 24 F.4th 116, 131 (2d Cir. 2022) (finding typicality satisfied where each class member's claim arose from the same course of events and presented similar liability issues).

As to adequacy, Plaintiffs do not have any interests that conflict with other Officers and "have worked extensively on behalf of" their respective Settlement Classes to achieve the settlements memorialized in the Agreements.  (ECF Nos. 465 at 17; 466 ¶¶ 22–23; 477 at 19; 478 ¶¶ 21–22; 484 at 17–18; 485 ¶¶ 22–23; 489 at 17–18; 490 ¶¶ 22–23; 502 at 17–18; 503 ¶¶ 22–23).  In addition, the Firm has extensive experience representing employees in federal wage and hour class actions in the Second Circuit courts.  (ECF Nos. 465 at 18–19; 466 ¶¶ 3–4; 477 at 19–21; 478 ¶¶ 3–4; 484 at 18–19; 485 ¶¶ 3–4; 490 ¶¶ 3–4; 502 at 18–19; 503 ¶¶ 3–4).

Accordingly, all four elements of Rule 23(a) are met for each of the Settlement Classes.

### b.  Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met as to each of the Agreements here.  Questions common to all Class Members—including whether the Settling Defendants maintained improper compensation

practices for the Officers and failed to provide adequate wage notices and statements—are subject to generalized proof and predominate over any potential individual issues.  See In re US Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013).  In addition, a class settlement is a superior method for the fair and efficient adjudication of the claims of the Class Members, many of whom have already opted in to this action and none of whom have filed separate actions against the Settling Defendants.  (ECF Nos. 466 ¶¶ 24–25; 478 ¶ 23; 485 ¶¶ 24–25; 490 ¶¶ 24–25; 503 ¶¶ 24–25).

### c.  Ascertainability

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries."  In re Petrobras Secs., 862 F.3d 259, 264 (2d Cir. 2017).  The Settlement Classes are easily ascertainable given the parties' representations about the numbers of Class Members in each.  (See § III.B.1.a, supra).  See Amigon, 2024 WL 5040436, at *8 (finding settlement class was ascertainable where class members were identifiable from defendants' wage data records).

### d.  Rule 23(e)(2)

#### i.  Adequate representation (Rule 23(e)(2)(A))

As found above, Plaintiffs are adequate class representatives, and their interests are not antagonistic to other Class Members.  (See § III.B.1.a, supra).  The Firm's extensive experience in federal wage-and-hour class actions has been an advantage in advocating for the Class Members and successfully negotiating the Agreements.  (ECF Nos. 465 at 18–19; 466 ¶¶ 3–4; 477 at 19–21; 478 ¶¶ 3–4; 484 at 18–19; 485 ¶¶ 3–4; 490 ¶¶ 3–4; 502 at 18–19; 503 ¶¶ 3–4).  Thus, this

factor weighs in favor of preliminary approval of the Agreements and naming the Firm as Class Counsel.

### ii.    Arm's length negotiation (Rule 23(e)(2)(B))

Courts apply a "presumption of fairness" to a class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class action litigation." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 693. Plaintiffs and the Settling Defendants, who were each represented by capable counsel experienced in wage and hour litigation, entered into the Agreements after exchanging the Officers' employment records as well as numerous demands and offers during direct settlement negotiations, which were ultimately successful. (ECF Nos. 439; 449; 463; 466 ¶12–16; 478 ¶¶ 12–16; 485 ¶¶ 12–16; 487; 490 ¶¶ 12–16; 492; 503 ¶¶ 12–16). This factor therefore also weighs in favor of preliminary approval.

### iii.    Adequacy of relief (Rule 23(e)(2)(C))

In determining whether the Agreements provide adequate relief to the Settlement Classes, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Only the first three factors are pertinent here.

The first factor—the "costs, risks, and delay of trial and appeal"—"subsumes several Grinnell factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class

through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 Civ. 4349 (NGG) (RER), 2021 WL 1259559, at

*5 (E.D.N.Y. Jan. 6, 2021).  Courts favor a settlement that "results in substantial and tangible

present recovery, without the attendant risk and delay of trial." Sykes v. Harris, No. 09 Civ. 8486

(DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016).  "Given the complexity of any class action

lawsuit . . . it is reasonable to assume that absent [a s]ettlement, continued litigation would have

required extensive time and expense." Garland v. Cohen & Krassner, No. 08 Civ. 4626 (KAM)

(RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011).  "In considering the risks of establishing

liability, the court need only assess the risks of litigation against the certainty of recovery under

the proposed settlement." Mikhlin, 2021 WL 1259559, at *5.

Here, the SAC asserts claims under federal and state statutes, the Settling Defendants'

liability for which remains in dispute.  (See ECF Nos. 466-1 at 2; 478-1 at 2; 485-1 at 2; 490-1 at 2;

503-1 at 2).  Plaintiffs intended to file the TAC, the Settling Defendants' response to which was

uncertain.  (See ECF No. 514).  Plaintiffs and the Settling Defendants exchanged some information

about the Officers employment, but a case management plan setting a formal discovery had not

yet been entered.  (See ECF Nos. 439; 449; 463; 466 ¶¶ 12–16; 478 ¶¶ 12–16; 485 ¶¶ 12–16;

487; 490 ¶¶ 12–16; 492; 503 ¶¶ 12–16).  The Settling Defendants intended to oppose Plaintiffs'

attempts to certify a collective action.  (ECF Nos. 127; 145; 246; 259; 438).  Further litigation

would inevitably involve additional expense and delay, extensive fact discovery, and motion

practice.  (ECF Nos. 465 at 24–25; 477 at 26–27; 484 at 24–25; 489 at 24–25; 502 at 25).  Given

these challenges, the Settlement Classes faced substantial risks in obtaining the maximum

possible recovery.  (ECF Nos. 465 at 27–28; 477 at 28–29; 484 at 27–28; 489 at 27–28; 502 at 27–

28). Each of the Lauren B, Asphalt Green, Brooklyn Museum, and Morton Williams Agreements,

however, will provide their respective Settlement Class Members a recovery of 65% of potential damages, while the Empire Agreement will provide 70.4%. (ECF Nos. 466 ¶ 19; 478 ¶ 18; 485 ¶ 19; 490 ¶ 19; 503 ¶ 19). These recoveries are comparable to the recoveries in other wage-and-hour settlements that courts within the Second Circuit have approved. See, e.g., Bondi v. DeFalco, No. 17 Civ. 5681 (KMK), 2020 WL 2476006, at *4 (S.D.N.Y. May 13, 2020) (finding that FLSA settlement that provided plaintiffs with recovery of two-thirds of their maximum damages was reasonable); Khan v. Dunwoodie Gas Station, Inc., No. 19 Civ. 5581 (KMK), 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) (same); see also Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding that FLSA settlement that provided plaintiffs with recovery of 50% of their maximum damages was reasonable). The Agreements therefore represent favorable outcomes for the Settlement Classes, particularly when balancing the parties' claims and defenses and the risks and uncertainties of continued litigation. The first Rule 23(e)(C)(2) factor, and Grinnell factors (1), (4), (5), (6), (8), and (9) therefore weigh in favor of preliminary approval.

In evaluating the second Rule 23(e)(2)(C) factor, we must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "A plan for allocating settlement funds need not be perfect," and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." Mikhlin, 2021 WL 1259559, at *6. The Agreements provide for creation of the NAF, from which the Administrator will (i) determine each Class Member's proportionate share of the NAF using the same formula, and (ii) pay each Authorized Claimant by check. (See ECF Nos. 466-1 §§ I.D.a, F; 478-1 §§ I.D.a, F;

485-1 §§ I.D.a, G; 490-1 §§ I.D.a, G; 503-1 §§ I.D.a, G).  The Notices describe the terms of the Agreements and provide clear explanations of how to file a claim form, opt out, or object.  (See ECF Nos. 466-2; 478-2; 485-2; 490-2; 503-2).  The second Rule 23(e)(2)(C) factor thus also weighs in favor of preliminary approval.

The third Rule 23(e)(2)(C) factor contemplates that, before final approval, the Court "will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." Hart v. BHH, LLC, 334 F.R.D. 74, 79 (S.D.N.Y. 2020).  "One method for calculating attorneys' fees, which is the trend in this Circuit, is the percentage of the fund method."  Amigon, 2024 WL 5040436, at *5.  "Under this method, the Court considers whether the requested fees are reasonable as compared to the settlement amount[,]" considering "fees awarded in similar cases, the risks to [c]lass [c]ounsel, and the lodestar calculation."  Id.  Here, Plaintiffs have not yet applied for attorneys' fees and costs, but the Firm has agreed to seek a maximum of one-third of the GSF under each of the Agreements.  (ECF Nos. 466-1 § I.B; 478-1 § I.B; 485-1 § I.B; 490-1 § I.B; 503-1 § I.B).  This "is a reasonable baseline" consistent with fee awards in other wage and hour class action settlements in the Second Circuit.  Pickard v. Onsite Facility Servs., LLC, No. 5:22 Civ. 207 (AMN) (ML), 2023 WL 7019256, at *10 (N.D.N.Y Oct. 23, 2023) (collecting cases); see Medina v. NYC Harlem Foods Inc., No. 21 Civ. 1321 (VSB), 2024 WL 230745, at *6 (S.D.N.Y. Jan. 22, 2024) (noting that one-third contingency fees are "routinely approved" in the Second Circuit).  While the Court reserves judgment pending receipt of a formal application for attorneys' fees and costs, see id., the third factor does not preclude preliminary approval.

Accordingly, all three applicable Rule 23(e)(3)(C) factors, and the corresponding Grinnell factors, weigh in favor of preliminary approval.

### iv.  Equitable treatment (Rule 23(e)(2)(D))

In evaluating whether the Agreements "treat[] class members equitably relative to each other[,]" Fed. R. Civ. P. 23(e)(2)(D), the Court may consider "whether the apportionment of relief among class members takes appropriate account of the differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Id. at advisory committee's note to 2018 Amendments.  "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members."  Moses v. N.Y. Times Co., 79 F.4th 235, 245 (2d Cir. 2023).  "In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights."  Guippone v. BH S&B Holdings LLC, No. 09 Civ. 1029 (CM), 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016).

As we have found, the method of distribution in the Agreements appears equitable and reasonable.  (See § III.B.1.d.iii, supra).  Other than the service awards, the proposed method of distribution of the NAF treats all Class Members uniformly by awarding each Authorized Claimant a proportionate amount of the hours they worked in the PDP based on actual compensation and payroll data.  (See ECF Nos. 466-1 § I.D.a; 478-1 § I.D.a; 485-1 § I.D.a; 490-1 § I.D.a; 503-1 § I.D.a).  In addition, the service awards, which range between $500 to $1,500, are a reasonable amount in comparison to the efforts of the named plaintiffs, (see ECF Nos. 466 ¶ 22; 466-1 § I.C; 478 ¶ 21; 478-1 § I.C; 485 ¶ 22; 485-1 § I.C 490 ¶ 22; 490-1 § I.C; 503 ¶ 22; 503-1 § I.C), and consistent with awards that other courts in this District have approved.  See, e.g., Silverstein v. AllianceBernstein,

L.P., No. 09 Civ. 5904 (JPO), 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (approving service awards of $25,000 to named plaintiffs and $1,500 to opt-in plaintiffs); Aponte v. Comprehensive Health Mgmt., Inc., No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) (approving service awards of $10,000 to named plaintiffs and $500 to opt-in plaintiffs). This factor therefore also weighs in favor of preliminary approval.

### v. Remaining Grinnell factors

Having considered each of the Rule 23(e)(2) factors, the only three remaining Grinnell factors are "(2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, [and] (7) the ability of the defendants to withstand a greater judgment. . . ." Grinnell, 495 F.2d at 463.

As to the second Grinnell factor, although Class Members have not yet received formal notice of the Agreements, we take note of the many Officers who have joined this action as opt-in plaintiffs, "and already qualify as Authorized Claimants", who have expressed their strong support for the Agreements. (ECF No. 466 ¶ 24; 485 ¶ 24; 490 ¶ 24; 503 ¶ 24).[9]

As to the stage of the proceedings and the amount of discovery completed (Grinnell factor (3)), the purpose is to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them[.]"  Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *2–3 (S.D.N.Y. Jan. 28, 1999).  Here, Plaintiffs and the Settling Defendants entered into the Agreements after exchanging and

---

[9] Although Plaintiffs do not make this representation as to the Empire Agreement, the Court defers its analysis of this factor with respect to the Empire Agreement until after the Bar Date.  See Parker v. City of New York, No. 15 Civ. 6733 (CLP), 2018 WL 6338775, at *4 (E.D.N.Y. Dec. 4, 2018) (noting that, at preliminary approval stage, second Grinnell factor could not be evaluated).

analyzing the Officers' employment records, calculating the damages due to the Officers, "engag[ing] in substantial and arm's length settlement discussions, [and] exchanging numerous settlement proposals, damages calculations, and additional records." (ECF Nos. 466 ¶¶ 12–16; 478 ¶¶ 11–15; 485 ¶¶ 12–16; 490 ¶¶ 12–16; 503 ¶¶ 12–16). The Firm represents that the exchange of information enabled them to evaluate the "strengths and weaknesses of Plaintiffs' claims as well as the claims of all other Officers who performed PDP shifts for" the Settling Defendants. (ECF Nos. 466 ¶ 12; 478 ¶ 11; 485 ¶ 12; 490 ¶ 12; 503 ¶ 12). This record reflects that the parties engaged "in substantial investigation and prosecution of the claims, and substantial informal and formal settlement negotiations." Amigon, 2024 WL 5040436, at *6. This factor thus also weighs in favor of preliminary approval.

As to Defendants' ability to withstand a greater judgment (Grinnell factor (7)), we note that a defendant's "ability to pay is much less important than the other Grinnell factors, especially where the other factors weigh in favor of approving settlement." Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). Further, "a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Manley v. Midan Rest. Inc., No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27, 2017). Here, while the Settling Defendants are all "medium-sized compan[ies] that could likely withstand a greater judgment," (ECF Nos. 465 at 29; 477 at 30; 484 at 29; 489 at 29; 502 at 29), this factor, "does not standing alone, indicate that the settlement is unreasonable or inadequate." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997). This factor is therefore neutral as to preliminary approval. See id.; Frank v. Eastman Kodak Co., 228

F.R.D. 174, 186 (W.D.N.Y. 2005) ("The amount of the settlement . . . when considered with the other Grinnell factors, does not alone render the settlement unfair.").

Accordingly, two of the three remaining applicable Grinnell factors weigh in favor of, and one is neutral as to, preliminary approval of the Agreements.

### vi.    Cheeks Review – Wolinsky Factors

As other courts in the Second Circuit have noted, "the Wolinsky factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement under Rule 23(e)[,]" including "the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement results from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion." Caccavale v. Hewlett-Packard Co., No. 20 Civ. 974 (NJC) (ST), 2024 WL 4250337, at *22 (E.D.N.Y. Mar. 13, 2024). Some courts have therefore found that "satisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." D'Angelo v. Hunter Bus. Sch., Inc., No. 21 Civ. 3334 (JMW), 2023 WL 4838156, at *5 n.1 (E.D.N.Y. July 28, 2023). The crux of the inquiry is "whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." Mills v. Cap. One, N.A., No. 14 Civ. 1937 (HBP), 2015 WL 5730008, at *6–7 (S.D.N.Y. Sept. 30, 2015) (citing Wolinsky and noting that Cheeks review of collective action settlement is less stringent than review of Rule 23 class action settlement).

Our analysis above substantially addresses the first three Wolinsky factors—the range of possible recovery, the avoidance of burdens and expenses, and the seriousness of the litigation risks. 900 F. Supp. 2d at 335. As to the remaining two factors, the Court has no trouble concluding

that the Agreements resulted from arm's-length negotiations by experienced counsel concerning complex, disputed issues of fact and law.  Finally, "there is no evidence that even suggests any collusion."  Mills, 2015 WL 5730008, at *7.

Accordingly, the Court finds that, under the totality of the circumstances, the Agreements are fair and reasonable under Cheeks.

\*        \*        \*

For the forgoing reasons, preliminary approval of the Agreements and conditional certification of the Settlement Classes is warranted, pending the Fairness Hearing.

### 2.  Appointment of Class Counsel

When a court certifies a class under Rule 23, it must also "appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B). In appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

For the reasons set forth above, (see § III.B.1.a, supra), the Firm will fairly and adequately represent the interests of the Settlement Classes and the Court therefore appoints the Firm as Class Counsel.

### 3.  Proposed Notice and Distribution

Having determined that preliminary approval of the Agreements and conditional certification of the Settlement Classes is warranted, the Court "must direct notice in a reasonable

manner to all class members who would be bound by the" Agreements.  Fed. R. Civ. P. 23(e)(1)(B).

For Rule 23(b)(3) classes, the Court must direct to Class Members "the best notice that is

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The notice must clearly and

concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
> claims, issues, or defenses; (iv) that a class member may enter an appearance
> through an attorney if the member so desires; (v) that the court will exclude from
> the class any member who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a class judgment on members
> under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfies

constitutional or Rule 23(e) requirements . . . Notice is adequate if it may be understood by the

average class member."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005).

In addition, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process

when it describes the terms of the settlement generally, informs the class about the allocation of

attorneys' fees, and provides specific information regarding the date, time, and place of the final

approval hearing."  Mikhlin, 2021 WL 1259559, at *12.

The Notices contain a general description of the claims and defenses, the persons

included in the Settlement Classes, the calculation of Class Members' proportionate share of the

NAF, and the procedure to submit a claim form, object, and opt out of the Agreements.  (See ECF

Nos. 466-2; 478-2; 485-2; 490-2; 503-2).  The Notices also explain how Class Members can be

heard at the Fairness Hearing, that the Court will exclude from the Settlement Class(es) any

member who timely and properly requests exclusions, and the binding effect of a class judgment on Class Members who do not opt out.  (See id.)

To the extent they have not already done so, within fourteen (14) days of this Opinion and Order, the Settling Defendants shall each provide the Administrator and the Firm with a list containing contact information for Class Members for their respective Agreement (the "Class Lists").  See Marin v. 310 Bowery Group LLC, No. 24 Civ. 1340 (SLC), 2025 WL 893731, at *10 (S.D.N.Y. Mar. 24, 2025).  Within thirty (30) days of days of this Opinion and Order, the Administrator is to mail to the Class Members of each Settlement Class the respective Notice. (ECF Nos. 466-1 § III.B; 478-1 § III.B; 485-1 § III.B; 490-1 § III.B; 503-1 § III.B).  By the Bar Date, Class Members must return the claim form, provide written notice of their intention to opt out of the Agreement(s), or mail a written statement of objections to be heard at the Fairness Hearing.  (Id.)

Because the Notices and the notice procedures set forth in the Agreements provide reasonable notice to all Class Members of each Settlement Class and clearly and concisely state in plain, easily understood language the information required by Rule 23(c)(2)(B), the Court approves the Notices.

## IV. **CONCLUSION**

For the reasons set forth above, the Motions (ECF Nos. 464; 476; 483; 488; 501) are GRANTED, and it is ORDERED that:

(1) For the purposes of settlement only, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court GRANTS conditional certification of the following Settlement Classes:

a.  The Lauren B Settlement Class consists of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Lauren B through the PDP at any time from January 23, 2019 through [May 8, 2025], and who do not opt out of the Settlement." (ECF No. 466-1 § III.A).

b.  The Empire Settlement Class consists of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Empire Force through the PDP at any time from January 23, 2019 through [June 6, 2025], and who do not opt out of the Settlement." (ECF No. 478-1 § III.A).

c.  The Asphalt Green Settlement Class consists of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Asphalt Green through the PDP at any time from January 23, 2019 through June 6, 2025, and who do not opt out of the Settlement." (ECF No. 485-1 § III.A).

d.  The Brooklyn Museum Settlement Class consists of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Brooklyn Museum through the PDP at any time from January 23, 2019 through May 16, 2025, and who do not opt out of the Settlement." (ECF No. 490-1 § III.A).

e.  The Morton Williams Settlement Class consists of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors

who performed work for Morton Williams through the PDP at any time from January 23, 2019 through July 8, 2025, and who do not opt out of the Settlement." (ECF No. 503-1 § III.A).

    f.   Excluded from the Settlement Classes are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the respective Notice and this Opinion and Order.

(2)  For settlement purposes only, the Court grants final certification of the following FLSA collective actions:

    a.   The Lauren B Collective consisting of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who provided services for Lauren B in New York State, through the PDP, at any time from January 23, 2019 through May 8, 2025." (ECF No. 466-3 at 2).

    b.   The Empire Collective consisting of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who provided Services for Empire Force in New York State, through the PDP, at any time from January 23, 2019 through June 6, 2025." (ECF No. 478-3 at 2).

    c.   The Asphalt Green Collective consisting of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who provided services for Asphalt Green in New York State, through the PDP, at any time from January 23, 2022 through June 6, 2025." (ECF No. 485-3 at 2).

    d.   The Brooklyn Museum Collective consisting of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who

provided services for Brooklyn Museum in New York State, through the PDP, at any time from January 23, 2022 through May 16, 2025." (ECF No. 490-3 at 2).

    e. The Morton Williams Collective consisting of "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who provided services for Morton Williams in New York State, through the PDP, at any time from January 23, 2022 through July 8, 2025." (ECF No. 503-2).

(3) For purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23, the Court appoints the following class representatives or Lead Plaintiffs on behalf of the respective Settlement Class:

    a. Plaintiff Devon Dawkins as the Lead Plaintiff for the Lauren B Settlement Class;

    b. Plaintiff Devon Dawkins as the Lead Plaintiff for the Empire Settlement Class;

    c. Plaintiff Devon Dawkins as the Lead Plaintiff for the Asphalt Green Settlement Class;

    d. Plaintiff Albert Piney and Devon Dawkins as the Lead Plaintiffs for the Brooklyn Museum Settlement Class; and

    e. Plaintiffs Michael Kmiotek, Randy Chow, and Charlie Ruiz-Reyes as Lead Plaintiffs for the Morton Williams Settlement Class. [10]

(4) For settlement purposes only, pursuant to Rule 23(g), Faruqi & Faruqi, LLP is certified as Class Counsel for the Settlement Classes and is authorized to act on behalf of the Lead Plaintiffs, the Settlement Classes, and the Class Members with respect to all acts

---

[10] Plaintiffs Dawkins, Piney, Kmiotek, Chow, and Ruiz-Reyes are together referred to as "Lead Plaintiffs."

or consent required or that may be given pursuant to the Agreements, including all acts that are reasonably necessary to consummate the Agreements.

(5) For settlement purposes only, the prerequisites of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied as to each of the Settlement Classes, in that, with respect to each Settlement Class: (i) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (ii) there are questions or law or fact common to each Settlement Class; (iii) the claims of each Lead Plaintiff are typical of the claims of the Class Members of the respective Settlement Class; (iv) Lead Plaintiffs will fairly and adequately represent the interests of the respective Settlement Class; (v) questions of law and fact common to each Settlement Class predominate over any questions affecting only individual Class Members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of this action.

(6) The Court GRANTS preliminary approval of the Agreements, in that, with respect to each Agreement: (i) the Agreement results from good faith, arm's length negotiations; (ii) the relief provided to each Settlement Class is adequate; (iii) each Agreement treats Class Members equitably relative to each other; and (iv) Class Counsel and Settling Defendants' counsel are experienced in class-action wage-and-hour litigation and had sufficient information to evaluate the Agreements.

(7) The Court substantially approves the form, substance, and requirements of the Class Notices and Claim Forms.  (ECF Nos. 466-2; 478-2; 485-2; 490-2; 503-2).  The parties

shall update any dates and deadlines prescribed in the Class Notices and Claim Forms to conform with this Opinion and Order.

(8)  Analytics LLC is appointed as Administrator and is authorized to mail the Notices and Claim Forms, once updated, consistent with the Agreements and this Opinion and Order, to the respective Class Members as provided in each Agreement.

(9)  Within three (3) days after the end of the Opt-Out Period(s), the Settlement Administrator shall file any written objections to the Agreement(s) submitted by a Class Member who has not opted-out and that is postmarked on or before the Bar Date(s).

(10)  The Fairness Hearing is scheduled for **Tuesday February 10, 2026 at 10:00 a.m.** in Courtroom 18A, 500 Pearl Street, New York, NY 10007.

The parties submitted proposed orders setting forth the settlement procedures and schedule (ECF Nos. 466-3; 478-3; 485-3; 490-3; 503-3), which we will approve in separate orders to be filed following this Opinion and Order. The Clerk of the Court is respectfully directed to terminate ECF Nos. 464, 476, 483, 488, and 501.

Dated:    New York, New York
          August 26, 2025

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge