UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT PINEY, et al., on behalf of themselves and others similarly situated,

                                            Plaintiffs,

v.

CITY OF NEW YORK, et al.,

                                            Defendants.

CIVIL ACTION NO. 25 Civ. 671 (DEH) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Albert Piney and others ("Plaintiffs"),[1] on behalf of themselves and others similarly situated, bring this putative collective and class action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York State and City law against Defendants City of New York, (the "City"), the New York City Police Department ("NYPD"), 178 corporate entities (the "Vendors"),[2] and several John Does (the City, NYPD, Vendors, and John Does, together, "Defendants"). (Dkt. No. 631 (the "TAC")).

---

[1] The 31 Plaintiffs are: Albert Piney; Roman Diaz; Jose Martinez; Freddy Suazo; Desmond Grant; M. Mostayen Faysal; Sophia Daly; Charlie Ruiz-Reyes; James Divino; Michael Kmiotek; Devon Dawkins; Alexis Yanez; Julio Rosa; Jaynel Pantoja; Claudio Diaz; Jorge Zorrilla; Dominique Eveillard; Sudan Osorio; Randy Chow; Wang Ting; Justin Senese; Tuhin Khan; Tamara Lauzier; John Rondon; Brayan Antonio; Anna Garlinska; Jason Mansour; Arturo Delgado; John Cannon; Michael Miron; and Wadih Abouabdallah. (Dkt. No. 631 ¶¶ 11–72).

[2] The Vendors named as Defendants are: Target Corporation; MSG Entertainment Holdings, LLC; Yankee Global Enterprises LLC; NYU Langone Hospitals; Mount Sinai Health System, Inc.; The New York Times Company; B.J.'s Wholesale Club, Inc.; RXR Realty LLC; 509 W 34, LLC d/b/a The Spiral; LIC Site B-1 Owner LLC d/b/a LIC Site B-1; RCPI Landmark Properties LLC d/b/a Rockefeller Center; Tishman Speyer Associates Limited Partnership d/b/a LIC Site B-1 d/b/a The Spiral d/b/a Rockefeller Center; Buena Vista Theatrical Group Ltd d/b/a Disney Theatrical Group; BXP, Inc f/k/a Boston Properties Inc.; Kering Americas, Inc.; Apple Inc.; Congregation Rodeph Sholom; 34th Street Partnership; Bank of America Corporation; The TJX Companies, Inc., d/b/a Marshalls and d/b/a TJ Maxx; Genting New York LLC d/b/a Resorts World Casino; Primark US Corp.; Barclays Bank PLC; Royal Realty Corp.; The NewYork and Presbyterian Hospital; 99c LLC d/b/a 180 Maiden Lane LLC; Aldi, Inc.; Wegmans Food Markets, Inc.; Neue Galerie New York; V&R Payroll

1

Factors, Inc.; Wakefern Food Corp.; Glass Gardens, Inc. d/b/a ShopRite; Gateway ShopRite Associates, LLC d/b/a ShopRite; Queens ShopRite Associates LLC d/b/a ShopRite; NYC ShopRite Associates, Inc. d/b/a ShopRite; Village Super Market, Inc. d/b/a ShopRite and d/b/a Fairway Markets; Village Super Market of NJ, LP d/b/a ShopRite; The Bank of New York Mellon Corporation; The Animal Medical Center, Inc. a/k/a Schwarzman Animal Medical Center; Queens Yeshiva Ketana Inc.; Parker Jewish Institute for Healthcare and Rehabilitation; Young Israel of Queens Valley; Yeshiva Darchei Torah; Torah Center of Hillcrest Inc.; Burlington Coat Factory Warehouse Corporation; American Broadcasting Companies, Inc.; Sephardic Lebanese Congregation Inc.; Rochdale Village Association, Inc.; Vornado Office Management LLC d/b/a Penn District; New York Society for the Relief of the Ruptured and Crippled, maintaining the Hospital for Special Surgery d/b/a Hospital for Special Surgery; JP Morgan Chase & Co.; UBS Financial Services Inc.; Queens Ballpark Company LLC; Taino Towers Apartments LLC; MIR Hanson Associates, LLC; New York University; St. Barnabas Hospital, Inc.; Manhattan Beer Distributors LLC; Montefiore Medical Center; Northwell Health Inc.; RBG Management Corp. d/b/a Morton Williams Supermarket; GFP Real Estate LLC; Rosco Inc.; SL Green Realty Corp.; Grand Central Partnership, Inc.; Bloomingdale's LLC; Flushing-Fresh Meadows Jewish Center Inc.; The Goldman Sachs Group, Inc.; Park Avenue Synagogue; Bnos Bais Yaakov of Far Rockaway; Bais Yaakov Academy for Girls; Chelsea Piers L.P.; Congregation Beth-El Sephardic Center of Jamaica Estates; Yeshiva University; Empire Force Incorporated; Federal Express Corporation; Avenue New York LLC d/b/a Avenues: The World School; Museum of Modern Art; Bryant Park Corporation; Brooklyn Institute of Arts and Sciences a/k/a Brooklyn Museum; The Edmond J. Safra Synagogue; Best Buy Co. Inc.; Century 21 USA, LLC; The Brookdale Hospital Medical Center; Times Square Church, Inc; Ashphalt Green, Inc.; Lepozzi Inc. d/b/a/ Lauren B. Jewelry; The New York Botanical Garden; The Brooklyn Hospital Center; NBCUniversal Media, LLC; Sam Ash Music Corporation; Zara USA, Inc.; Museum of Jewish Heritage A Living Memorial to the Holocaust; Torah Academy for Girls; Omni Eye Surgery of New York, P.C.;  Plaza Motors, LLC f/k/a Plaza Motors of Brooklyn, Inc. d/b/a Plaza Auto Mall d/b/a Plaza Honda; 47th Street Business Improvement District, Inc.; Breezy Point Cooperative, Inc.; Defendant Citigroup Inc.; Astoria Queens Enterprises, LLC d/b/a DII Deals & Discounts; Fifth Avenue Association Business Improvement District, Inc.; FSP 787 Seventh, LLC; Macy's Retail Holdings, LLC; The Ramaz School; Manhattan High School For Girls; Congregation Bnai Jeshurun Starafroler Hebria; Central Synagogue; Congregation Sheiris Israel of Bay Ridge; St. Thomas Church Fifth Avenue; Blackrock, Inc.; Morgan Stanley; Richmond Medical Center; RAL Hospitality Group, Inc. d/b/a Pastavino; Color Image Apparel, Inc. d/b/a Alo Yoga; Newsmax Media, Inc.; Church of the City New York; Brookfield Corporation; Yavneh Minyan of Flatbush; BronxCare Health System; PEI Media Inc.; Rudin Management Co. Inc.; CVS Health Corporation; Brooklyn Botanic Garden Corporation; Brooklyn Heights Synagogue; Levy Premium Foodservice Limited Partnership; Tashkent Supermarket LLC; Mesivta Yeshiva Rabbi Chaim Berlin; The Brooklyn Tabernacle; Fancy Farms NY, LLC d/b/a Okka Foods Market; Temple Shaaray Tefila; Paramount Group, Inc.; Congregation Ohav Sholom; Congregation Emanu-El of the City of New York d/b/a Temple Emanu-El; Trustees of Columbia University in the City of New York; The Jewish Museum; Monroe University, Ltd. f/k/a Monroe College; New Water Street Corp.; New York Historical Society; Rego Park Jewish Center; Salanter Akiba Riverdale Academy d/b/a SAR Academy; Israel Center of Conservative Judaism, Inc.; The Young Men's and Young Women's Hebrew Association d/b/a 92nd St. Y; Yeshiva Har Torah; Hines Interests Limited Partnership; Yeshiva Sholom Schachna; Kehila Kedosha Janina Preservation and Cultural Fund Inc. d/b/a Kehila Kedosha Janina Synagogue; Civic Center Synagogue Inc.; MetLife Group, Inc.; Khal Bnei Avrohom Yaakov, Inc.; Trinity Tabernacle d/b/a Trinity Tabernacle of Gravesend; Young Israel of Forest Hills; Benjamin Partners LLC; EO Staten Island Property Owner LLC d/b/a Empire Outlets; Congregation Etz Chaim of Flatbush; Congregation Ner Mitzvah, Inc.; Treeco/Hylan Limited Partnership d/b/a Hylan Commons; Plaza College Ltd.; Congregation Machane Chodosh, Inc.; Queens Jewish Center and Talmud Torah; Sholom Sholom, Inc.; Stephen Wise Free Synagogue; Rainbow Hill Homeowners Association d/b/a Celebration at Rainbow

2

Plaintiffs and six of the Vendors previously entered into settlement agreements, which the Court preliminarily approved.  See Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2025 WL 3089871 (S.D.N.Y. Nov. 5, 2025) ("Piney II"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2025 WL 2451011 (S.D.N.Y. Aug. 26, 2025) ("Piney I").  Plaintiffs and another Vendor, Kering Americas, Inc. ("Kering") have now entered into a substantially similar settlement, for which Plaintiffs, without any opposition, seek: (i) preliminary approval of their settlement agreement with Kering; (ii) certification of a settlement class; (iii) appointment of Faruqi and Faruqi, LLP (the "Firm") as class counsel; (iv) approval of the proposed notice of settlement and claim form; and (v) approval of the proposed schedule for final settlement approval and setting of a date for a fairness hearing.  (Dkt. Nos. 624–27 (the "Motion")).  Plaintiffs and Kering consented to Magistrate Judge jurisdiction with respect to the Motion.  (Dkt. No. 643).

For substantially the same reasons as in Piney I and Piney II, and as explained further below, the Motion is GRANTED.

## II. BACKGROUND

We presume the reader's familiarity with the factual and procedural background, which we set forth in Piney I and incorporate by reference.  See 2025 WL 2451011, at *1–3.  We set forth only those facts necessary to analyze the Motion.

---

Hill; Time Out For Values, Inc.; Congregation Etz Chaim of Kew Gardens Hill; Rabbinical Seminary of America; Temple Gates of Prayer; The Hebrew Home For The Aged at Riverdale Foundation, Inc.; United Nations International School; Congregation Baith Israel Anshei Emes d/b/a Kane Street Synagogue; Wagner College; Salesforce, Inc.; Greater Jamaica Development Corporation; Manhattan Beach Jewish Center; SVA Alumni Society Inc.; Hillcrest Jewish Center Inc.; Chabad Lubavitch of West Brighton d/b/a Sea Breeze Jewish Center; Ross Dress For Less, Inc.; and American Express Travel Related Services Company, Inc.  (Dkt. No. 631 ¶¶ 84–1177).

A. **Settlement Terms**

Plaintiffs have submitted for the Court's review the settlement agreement with Kering. (Dkt. No. 626-1 (the "Kering Agreement")).[3]  The Kering Agreement is substantially similar to the settlement agreements approved in Piney I and Piney II, with material differences noted below.

1. **The Settlement Class**

The Kering Agreement defines a class for settlement purposes as follows:

> all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who provided services through the PDP at any Kering Releasee location in New York State . . . and who do not opt out[.]

(Dkt. No. 626-1 § III.A (the "Kering Settlement Class")).  The Class Period is January 23, 2019 to November 25, 2025.  (Id.)[4]

The Kering Agreement defines the collective under FLSA § 216(b) as including:

> all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, and Inspectors who provided services through the PDP at any Kering Releasee location in New York State at any time from January 23, 2019 through November 25, 2025 and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[.]

(Dkt. No. 626-1 § III.A (the "Kering Collective")).[5]

2. **Settlement Amounts, Settlement Administrator, and Releases**

Kering is to make a gross settlement payment of $367,455.78 (the "Gross Settlement Fund" or "GSF"), from which is to be deducted (i) Plaintiffs' counsel's attorneys' fees and costs

---

[3] Capitalized terms not otherwise defined in this Opinion and Order have the same meaning as in the Kering Agreement.  (Dkt. No. 626-1).

[4] This Class Period differs from the class periods for the Settlement Classes approved in Piney I and Piney II. See Piney II, 2025 WL 3089871, at *1; Piney I, 2025 WL 2451011, at *16.

[5] We note that the period for the Kering Collective differs from the periods for the FLSA collectives certified in Piney I and Piney II.  See 2025 WL 3089871, at *1; 2025 WL 2451011, at *16-17.

and (ii) service payments to five Plaintiffs who served as representatives of the Kering Settlement Class,[6] to arrive at the "Net Allocation Fund" ("NAF"), which is estimated to be $227,470.52. (Dkt. No. 626-1 § I.D; see Dkt. No. 626-2 at 5). The members of the Kering Settlement Class will each recover approximately 65% of their potential wage damages. (Dkt. Nos. 625 at 8; 626 ¶ 19).

> Each Class Member's share of the NAF is calculated:
>
> by dividing the total amount allegedly owed to the Class Member for services provided to Kering through the PDP at any Kering Releasee location in New York State by the total amount owed to all Class Members for such services. This percentage is then multiplied by the NAF to determine the Individual Settlement Payment each Class Member is eligible to receive. The formula is based on actual compensation and payroll data for each Class Member.

(Dkt. No. 626-1 § I.D.a).

To receive their Individual Settlement Payment, each Class Member must become an "Authorized Claimant" by either (i) submitting a Consent to Join Form before the entry of a preliminary approval order and not opting out, or (ii) submitting a Claim Form before the "Bar Date." (Dkt. No. 626-1 §§ I.D.b, III.B.b). The Bar Date will be:

> (i) sixty (60) days from the date of the initial mailing [of the Settlement Notice and Claim Form] or as otherwise set by the Court; and (ii) an additional fifteen (15) days for any Class Members who did not receive or did not timely receive the Settlement Notice or who were unable to return the Claim Form within sixty (60) days due to factors such as military service, medical issues, or other extraordinary circumstances.

(Id. § III.B.a).

In exchange for their Individual Settlement Payments, each Class Member who does not timely opt out releases Kering from all wage-and-hour claims under New York State or New York

---

[6] Jose Martinez, Alexis Yanez, Jorge Zorrilla, Sophia Daly, and Sudan Osorio are to each receive $2,500.00 (the "Service Payment Recipients"). (Dkt. No. 626-1 § I.C).

City law arising from the Class Member's provision of services for the Kering Releasees in New York State through the PDP from the beginning of time through March 13, 2025 (the "Released State Law Claims"). (Dkt. No. 626-1 § II.A). In addition, all Authorized Claimants—i.e., Class Members who timely submitted Claim Forms and did not otherwise opt-out—also release all federal (including FLSA) wage-and-hour claims against the Kering Releasees that arise from the Class Member's provision of services at any Kering Releasee location in New York State through the PDP from the beginning of time to March 13, 2025 (the "Released Federal Claims"). (Id. §§ II.B). In addition, the Service Payment Recipients will also release the Kering Releasees from "any and all claims of any kind that arise from, are based on, or are in any way related or incidental to Plaintiffs' provision of services through the PDP at any Kering Releasee location in New York State under federal, state, or local law or common law . . . ." (Id. § II.C).[7]

The Kering Agreement contemplates the appointment of Analytics LLC as the Settlement Administrator (the "Administrator") to administer the Kering Agreement. (Dkt. No. 626-1 §§ I.E, I.G). The Administrator's fee is not to exceed $4,000.00 and will be paid out of the GSF. (Id. § I.F).

### 3. Notice and Opportunities to Opt-Out and Object

The Kering Agreement includes a notice that informs members of the Kering Settlement Class of their opportunity to object or opt out, appear at the Fairness Hearing, and submit a Claim Form. (Dkt. No. 626-2 (the "Notice")). The Kering Agreement contemplates that, following this Opinion and Order, the Administrator will send the Notice and accompanying Claim Forms to

---

[7] This provision notes, however, that the Service Payment Recipients have "not made any claims or allegations against any Kering Releasee related to discrimination, or harassment, including sexual harassment, or sexual abuse, or retaliation for opposing or reporting discrimination or harassment and none of the payments set forth as Consideration in the General Release of Claims are related to such" matters. (Dkt. No. 626-1 § II.C).

members of the Kering Settlement Class.  (Dkt. No. 626-1 § III.B).  As noted above, Class Members will then have 60 days to return a completed Claim Form to the Administrator, and only those Class Members who timely do so and do not otherwise opt out will be deemed Authorized Claimants.  (Id. §§ I.D.b, III.C).  Class Members who chose to opt out must mail to the Administrator by the Bar Date a written, signed statement of their intention to opt out of the Kering Agreement.  (Id. § III.C).

The Court will hold a Fairness Hearing to hear any timely and properly submitted objections to the Kering Agreement, make a final determination as to the fairness, adequacy, and reasonableness of the Kering Agreement, fix the amounts of attorneys' fees and costs to Class Counsel and the Service Awards, and, if appropriate, enter final judgment.  (Dkt. Nos. 626-1 § III.D; 626-2 at 7).  Class Members who seek to object to the Kering Agreement at the Fairness Hearing must first mail to the Administrator by the Bar Date a statement including "all reasons for the objection, and any supporting documentation[;]" the Court will not consider any objections not timely submitted in writing.  (Dkt. No. 626-1 § III.D).  An objector who seeks to appear and be heard at the Fairness Hearing must indicate that intention in their written objection.  (Id.)  The parties may respond to any objections before the Fairness Hearing.  (Id.)

### 4.  **Other Provisions**

The Kering Agreement is governed by New York law and contemplates that the Court will retain jurisdiction over its implementation.  (Dkt. No. 626-1 § IV.N).

### III. DISCUSSION

#### A. Legal Standards

##### 1. Federal Rule of Civil Procedure 23

A party seeking class certification under Federal Rule of Civil Procedure 23 "must clear two hurdles." Martínek v. AmTrust Fin. Servs., Inc., No. 19 Civ. 8030 (KPF), 2022 WL 326320, at *3 (S.D.N.Y. Feb. 3, 2022).[8] First, Rule 23(a) requires the moving parties to demonstrate that: "[i] the class is so numerous that joinder of all members is impracticable; [ii] there are questions of law or fact common to the class; [iii] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [iv] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the four Rule 23(a) prerequisites, "the Second Circuit also recognizes an implicit 'ascertainability' requirement, which commands that the proposed class be defined using objective criteria that establish a membership with definite boundaries." Martínek, 2022 WL 326320, at *3. Second, if the proposed class meets the Rule 23(a) prerequisites, the parties seeking certification must then show that "the action can be maintained under Rule 23(b)(1), (2), or (3)." In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 238 (2d Cir. 2012). Plaintiffs seeking certification under Rule 23(b)(3), as is the case here (Dkt. No. 631 ¶¶ 2771–2774), "must establish that (i) 'questions of law or fact common to class members predominate over any questions affecting only individual members' and (ii) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Martínek, 2022 WL 326320, at *4 (quoting Fed. R. Civ. P. 23(b)(3)).

---

[8] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

A settlement of a class action under Federal Rule of Civil Procedure 23 requires court approval.  Fed. R. Civ. P. 23(e).  Approval of a class action settlement generally involves a two-step process, the first being preliminary approval, which "simply allows notice to issue to the class and for [c]lass [m]embers to object to or opt out of the settlement."  Yuzary v. HSBC Bank USA, N.A., No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013); see also Dover v. British Airways, PLC (UK), 323 F. Supp. 3d 338, 348 (E.D.N.Y. 2018) (describing the two-step process).  "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input[,]" and determine whether final approval is appropriate. Yuzary, 2013 WL 1832181, at *1; Fed. R. Civ. P. 23(e)(2) (requiring a fairness hearing at which members of the class may be heard to determine if the proposed settlement is "fair, reasonable, and adequate").

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties.'"  Chang v. Philips Bryant Park LLC, No. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019), adopted by, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020).  In determining whether to grant preliminary approval, "a court need only find probable cause to submit the settlement proposal to class members and hold a full-scale hearing as to its fairness."  Solis v. OrthoNet LLC, No. 19 Civ. 4678 (VSB), 2021 WL 1904984, at *2 (S.D.N.Y. May 11, 2021) (citation modified).

Under Rule 23(e), in considering a motion for preliminary approval of a class settlement, courts consider whether "giving notice is justified by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). Factors relevant to the decision to approve a proposed class action settlement include: "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)). In addition to the four Rule 23(e)(2) factors, courts within the Second Circuit also consider the nine factors established in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. at 463.[9] The Grinnell factors not otherwise covered by Rule 23(e)(2)(C) are factors (2), (3), (7), (8), and (9). See Amigon v. Safeway Constr. Enters., LLC, No. 20 Civ. 5222 (PK), 2024 WL 5040436, at *6 (E.D.N.Y. Dec. 9, 2024).

Approval of a proposed class action settlement is a matter of the Court's discretion. See Olibares v. MK Cuisine Glob. LLC, No. 21 Civ. 10694 (VSB), 2023 WL 5702595, at *2 (S.D.N.Y. Sept. 5, 2023) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995)). In exercising its discretion, the Court may give weight to the fact that the parties have chosen to settle because "[t]he parties and their counsel are in a unique position to assess the potential risks of litigation[.]" Olibares, 2023 WL 5702595, at *2.

---

[9] The Second Circuit abrogated Grinnell on other grounds in Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000).

2. **FLSA Settlement Approval**

The FLSA permits employees to pursue collective actions to recover unpaid wages where the employees are "similarly situated" and file written consents to become plaintiffs. 29 U.S.C. § 216(b). A court may "implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (citation modified). Participation in an FLSA collective action requires an employee to "'opt-in,' meaning the employee must consent in writing to join the suit and that consent must be filed with the court." Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). Thus, under the FLSA, an employee may bring a claim on behalf of other similarly situated employees, who do not become plaintiffs unless they provide written consent. See Douglas v. Allied Universal Sec. Servs., 371 F. Supp. 3d 78, 85–86 (E.D.N.Y. 2019).

Parties may not privately settle and dismiss with prejudice FLSA claims absent approval of the district court or the United States Department of Labor. See Samake v. Thunder Lube, Inc., 24 F.4th 804, 807 (2d Cir. 2022); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). Absent Department of Labor approval, the parties must satisfy the district court that their settlement is "fair and reasonable." Velazquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). In determining whether a FLSA settlement is fair and reasonable, district courts

> consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  This standard for approval of an FLSA settlement "is lower than for a class action under Rule 23[,]" such that "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved."  Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

In addition, if the class settlement contemplates an award of attorneys' fees and costs, the district court will evaluate the reasonableness of those fees and costs, the request for which must be supported by adequate documentation.  Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020).  If a district court concludes that a proposed FLSA settlement is unreasonable in whole or in part, "it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it."  Id. at 597.

### 3. Interaction Between Rule 23 and FLSA Settlement Approval

As noted above, Rule 23 allows class members to opt out of a proposed class-wide settlement, while § 216(b) of the FLSA requires employees to opt in to any FLSA collective action to be bound by the judgment or benefit from it.  Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103–04 (S.D.N.Y. 2003).  Thus, "[t]he opt-out requirement of modern Rule 23(b)(3) directly conflicts with the express opt-in requirement of § 216(b)."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 519 (2d Cir. 2020).  Because FLSA and NYLL claims often derive from the same set of facts, employees "frequently bring both types of claims together in a single action[.]"  Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 244 (2d Cir. 2011).  In these circumstances, plaintiffs may pursue the FLSA claims as a collective action under § 216(b) and the NYLL claims as a class action under Rule 23 in the same action, referred to as a "hybrid" action.  See Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012).

12

Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," Henry v. Little Mint, Inc., No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *7 (S.D.N.Y. May 23, 2014), satisfaction of the Grinnell factors "will, necessarily, satisfy the standards of approval of the FLSA settlement." Bryant v. Potbelly Sandwich Works, LLC, No. 17 Civ. 7638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020).

## B.  Application

### 1.  Preliminary Approval & Certification of Settlement Classes

Considering the procedural and substantive factors in Rules 23(a), 23(b)(3), and 23(e)(2) as well as the Grinnell and Wolinsky factors, the Court grants both preliminary approval of the Kering Agreement as fair, reasonable, and adequate, as well as provisional certification of the Kering Settlement Class and final certification of the Kering Collective.

#### a.  Rule 23(a)

The Kering Settlement Class satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a).  As to numerosity, the parties estimate that the Kering Settlement Class consists of 575 members. (Dkt. Nos. 625 at 13; 626 ¶ 20).  This number far exceeds 40 members, which is the number at which "numerosity is presumed" in the Second Circuit, so numerosity is satisfied.  Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

As to commonality, the primary issues in this case — (i) whether Kering employed Plaintiffs and the Class Members; (ii) whether Kering was a "hiring party" with respect to Plaintiffs and the Class Members; (iii) whether Plaintiffs and the Class Members were "freelance workers;"

and (iv) whether Kering timely paid Plaintiffs and the Class Members their wages — are common to the Kering Settlement Class.  (Dkt. No. 625 at 14).

As to typicality, each Class Member's claim arises from the same course of events, i.e., their work in the PDP for Kering, who subjected the Class Members to uniform policies and failed to pay them timely wages.  (Dkt. No. 625 at 16).  See Barrows v. Becerra, 24 F.4th 116, 131 (2d Cir. 2022) (finding typicality satisfied where each class member's claim arose from the same course of events and presented similar liability issues).

As to adequacy, Plaintiffs do not have any interests that conflict with other Officers and the Service Payment Recipients in particular "have worked extensively on behalf of" the Kering Settlement Class to achieve the settlement memorialized in the Kering Agreement.  (Dkt. Nos. 625 at 16–17; 626 ¶ 23).  In addition, the Firm has extensive experience representing employees in federal wage and hour class actions in the Second Circuit courts.  (Dkt. Nos. 625 at 17; 626 ¶¶ 3–4).  See Piney I, 2025 WL 2451011, at *10 (finding the Firm adequate).

Accordingly, all four elements of Rule 23(a) are met for the Kering Settlement Class.

### b.  Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met as to the Kering Agreement.  Questions common to all Class Members— including whether Kering maintained improper compensation practices and failed to provide adequate wage notices and statements—are subject to generalized proof and predominate over any potential individual issues.  See In re US Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d

14

Cir. 2013).  In addition, a class settlement is a superior method for the fair and efficient adjudication of the claims of the Class Members, many of whom have already opted in to this action and none of whom have filed separate actions against Kering.  (Dkt. Nos. 625 at 19–20; 626 ¶¶ 11, 24, 25).

### c.  Ascertainability

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries."  In re Petrobras Secs., 862 F.3d 259, 264 (2d Cir. 2017).  The Kering Settlement Class is easily ascertainable given the parties' representations about the number of Class Members, which is based on "comprehensive and detailed time records and payroll data[.]"  (Dkt. No. 626 ¶ 14; see § III.B.1.a, supra).  See Amigon, 2024 WL 5040436, at *8 (finding settlement class was ascertainable where class members were identifiable from defendants' wage data records).

### d.  Rule 23(e)(2)

#### i.  Adequate representation (Rule 23(e)(2)(A))

As found above, Plaintiffs are adequate class representatives, and their interests are not antagonistic to other Class Members.  (See § III.B.1.a, supra).  The Firm's extensive experience in federal wage-and-hour class actions has been an advantage in advocating for the Class Members and successfully negotiating the Kering Agreement.  (Dkt. No. 626 ¶¶ 3–6).  See Piney I, 2025 WL 2451011, at *10.  Thus, this factor weighs in favor of preliminary approval of the Kering Agreement and naming the Firm as Class Counsel.

### ii.  Arm's length negotiation (Rule 23(e)(2)(B))

Courts apply a "presumption of fairness" to a class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class action litigation." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 693.  Plaintiffs and Kering, who were each represented by capable counsel experienced in wage and hour litigation, entered into the Kering Agreement after exchanging the Officers' employment records as well as numerous demands and offers during direct settlement negotiations, which were ultimately successful.  (Dkt. No. 626 ¶¶ 5–6, 9, 12–17).  This factor therefore also weighs in favor of preliminary approval.

### iii.  Adequacy of relief (Rule 23(e)(2)(C))

In determining whether the Kering Agreement provides adequate relief to the Kering Settlement Class, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  Only the first three factors are pertinent here.

The first factor — the "costs, risks, and delay of trial and appeal" — "subsumes several Grinnell factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 Civ. 4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021).  Courts favor a settlement that "results in substantial and tangible present recovery, without the attendant risk and delay of trial." Sykes v. Harris, No. 09 Civ. 8486

(DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016). "Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent [a s]ettlement, continued litigation would have required extensive time and expense." Garland v. Cohen & Krassner, No. 08 Civ. 4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011). "In considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." Mikhlin, 2021 WL 1259559, at *5.

Here, the TAC asserts claims under federal and state statutes, Kering's liability for which remains in dispute. (See Dkt. Nos. 626-1 at 2; 631). Plaintiffs and Kering exchanged some information about the Officers' employment, but a case management plan setting a formal discovery schedule has not yet been entered. (See Dkt. Nos. 613; 626 ¶¶ 9, 12–16). Plaintiffs' attempt to certify a collective action was unresolved. (See Dkt. Nos. 54-78; 127; 196 626 ¶ 10). Further litigation would inevitably involve additional expense and delay, extensive fact discovery, and motion practice. (Dkt. No. 625 at 24–25). Given these challenges, the Kering Settlement Class faced substantial risks in obtaining the maximum possible recovery. (Id. at 26–28). The Kering Agreement, however, will provide Class Members with a recovery of 65% of potential damages. (Dkt. Nos. 625 at 23; 626 ¶ 19). This recovery is comparable to the recoveries in other wage-and-hour settlements that courts within the Second Circuit have approved. See, e.g., Bondi v. DeFalco, No. 17 Civ. 5681 (KMK), 2020 WL 2476006, at *4 (S.D.N.Y. May 13, 2020) (finding that FLSA settlement that provided plaintiffs with recovery of two-thirds of their maximum damages was reasonable); Khan v. Dunwoodie Gas Station, Inc., No. 19 Civ. 5581 (KMK), 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) (same); see also Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding that FLSA settlement that

17

provided plaintiffs with recovery of 50% of their maximum damages was reasonable).  The Kering Agreement therefore represents a favorable outcome for the Kering Settlement Class, particularly when balancing the parties' claims and defenses and the risks and uncertainties of continued litigation.  The first Rule 23(e)(C)(2) factor, and Grinnell factors (1), (4), (5), and (6) therefore weigh in favor of preliminary approval.

In evaluating the second Rule 23(e)(2)(C) factor, we must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims[.]"  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A plan for allocating settlement funds need not be perfect," and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  Mikhlin, 2021 WL 1259559, at *6.  The Kering Agreement provides for creation of the NAF, from which the Administrator will (i) determine each Class Member's proportionate share of the NAF using the same formula, and (ii) pay each Authorized Claimant by check.  (See Dkt. No. 626-1 §§ I.D, I.G). The Notice describes the terms of the Kering Agreements and provides clear explanations of how to file a claim form, opt out, or object.  (See Dkt. No. 626-2).  The second Rule 23(e)(2)(C) factor thus also weighs in favor of preliminary approval.

The third Rule 23(e)(2)(C) factor contemplates that, before final approval, the Court "will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." Hart v. BHH, LLC, 334 F.R.D. 74, 79 (S.D.N.Y. 2020).  "One method for calculating attorneys' fees, which is the trend in this Circuit, is the percentage of the fund method."  Amigon, 2024 WL 5040436, at *5.  "Under this method, the Court considers whether the requested fees are reasonable as compared to the settlement amount[,]" considering "fees awarded in similar cases,

the risks to [c]lass [c]ounsel, and the lodestar calculation." Id. Here, Plaintiffs have not yet applied for attorneys' fees and costs, but the Firm has agreed to seek a maximum of one-third of the GSF, or up to $122,485.26 under the Kering Agreement. (Dkt. No. 626-1 § I.B). This "is a reasonable baseline" consistent with fee awards in other wage and hour class action settlements in the Second Circuit. Pickard v. Onsite Facility Servs., LLC, No. 5:22 Civ. 207 (AMN) (ML), 2023 WL 7019256, at *10 (N.D.N.Y Oct. 23, 2023) (collecting cases); see Medina v. NYC Harlem Foods Inc., No. 21 Civ. 1321 (VSB), 2024 WL 230745, at *6 (S.D.N.Y. Jan. 22, 2024) (noting that one-third contingency fees are "routinely approved" in the Second Circuit). While the Court reserves judgment pending receipt of a formal application for attorneys' fees and costs, see id., the third factor does not preclude preliminary approval.

Accordingly, all three applicable Rule 23(e)(3)(C) factors, and the corresponding Grinnell factors, weigh in favor of preliminary approval.

### iv. Equitable treatment (Rule 23(e)(2)(D))

In evaluating whether the Kering Agreement "treats class members equitably relative to each other[,]" Fed. R. Civ. P. 23(e)(2)(D), the Court may consider "whether the apportionment of relief among class members takes appropriate account of the differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Id. at advisory committee's note to 2018 Amendments. "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." Moses v. N.Y. Times Co., 79 F.4th 235, 245 (2d Cir. 2023). "In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time

19

and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." Guippone v. BH S&B Holdings LLC, No. 09 Civ. 1029 (CM), 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016).

As we have found, the method of distribution in the Kering Agreement appears equitable and reasonable. (See § III.B.1.d.iii, supra). Other than the service awards, the proposed method of distribution of the NAF treats all Class Members uniformly by awarding each Authorized Claimant a proportionate amount of the hours they worked in the PDP based on actual compensation and payroll data. (Dkt. No. 626-1 § I.D.a). In addition, the service awards, which are $2,500, are a reasonable amount in comparison to the efforts of the Service Payment Recipients, (see id. § I.C), and consistent with awards that other courts in this District have approved. See, e.g., Silverstein v. AllianceBernstein, L.P., No. 09 Civ. 5904 (JPO), 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (approving service awards of $25,000 to named plaintiffs and $1,500 to opt-in plaintiffs); Aponte v. Comprehensive Health Mgmt., Inc., No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) (approving service awards of $10,000 to named plaintiffs and $500 to opt-in plaintiffs); see also Piney I, 2025 WL 2451011, at *12. This factor therefore also weighs in favor of preliminary approval.

### v. **Remaining Grinnell factors**

Having considered each of the Rule 23(e)(2) factors, the remaining Grinnell factors are "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9)

the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Grinnell, 495 F.2d at 463.

As to the second Grinnell factor, although Class Members have not yet received formal notice of the Kering Agreement, we note that at least 140 Officers have joined this action as opt-in plaintiffs and have expressed their strong support for the Kering Agreement. (Dkt. No. 626 ¶¶ 11, 24).

As to the stage of the proceedings and the amount of discovery completed (Grinnell factor (3)), the purpose is to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them[.]" Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999). Here, Plaintiffs and Kering entered into the Kering Agreement after exchanging and analyzing the Officers' employment records, calculating the damages due to the Officers, "engag[ing] in substantial and arm's length settlement discussions, [and] exchanging numerous settlement proposals, damages calculations, and additional data." (Dkt. No. 626 ¶¶ 12–16). The Firm represents that the exchange of information enabled them to evaluate the "strengths and weaknesses of Plaintiffs' claims as well as the claims of all other Officers who performed PDP shifts for Kering, as well as [Kering's] defenses[.]" (Id. ¶ 12). This record reflects that the parties engaged "in substantial investigation and prosecution of the claims, and substantial informal and formal settlement negotiations." Amigon, 2024 WL 5040436, at *6. This factor thus also weighs in favor of preliminary approval.

As to Kering's ability to withstand a greater judgment (Grinnell factor (7)), we note that a defendant's "ability to pay is much less important than the other Grinnell factors, especially

where the other factors weigh in favor of approving settlement." Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). Further, "a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Manley v. Midan Rest. Inc., No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27, 2017). Here, while Kering "could likely withstand a greater judgment[,]" (Dkt. No. 625 at 28), this factor, "does not standing alone, indicate that the settlement is unreasonable or inadequate." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997). This factor is therefore neutral as to preliminary approval. See id.; Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("The amount of the settlement . . . when considered with the other Grinnell factors, does not alone render the settlement unfair.").

As to the range of reasonableness of the NAF in light of the best possible recovery (Grinnell factor (8)) and the range of reasonableness of the NAF to a possible recovery in light of all the attendance risks of litigation (Grinnell factor (9)), the NAF consists of $227,470.52, which represents 65% of potential damages. This percentage exceeds the range of reasonableness approved by other courts in this Circuit. See Amigon, 2024 WL 5040436, at *6 (approving 12.32% of the best possible recovery); Mikhlin, 2021 WL 1259559, at *9 (approving 52% recovery of total possible damages and stating that "[c]ourts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness"). The last two Grinnell factors, therefore, also weigh in favor of preliminary approval.

Accordingly, four of the five remaining applicable Grinnell factors weigh in favor of, and one is neutral as to, preliminary approval of the Kering Agreement.

### vi.  Cheeks review – Wolinsky factors

As other courts in the Second Circuit have noted, "the Wolinsky factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement under Rule 23(e)[,]" including "the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement results from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion." Caccavale v. Hewlett-Packard Co., No. 20 Civ. 974 (NJC) (ST), 2024 WL 4250337, at *22 (E.D.N.Y. Mar. 13, 2024).  Some courts have therefore found that "satisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." D'Angelo v. Hunter Bus. Sch., Inc., No. 21 Civ. 3334 (JMW), 2023 WL 4838156, at *5 n.1 (E.D.N.Y. July 28, 2023).  The crux of the inquiry is "whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." Mills v. Cap. One, N.A., No. 14 Civ. 1937 (HBP), 2015 WL 5730008, at *6–7 (S.D.N.Y. Sept. 30, 2015) (citing Wolinsky and noting that Cheeks review of collective action settlement is less stringent than review of Rule 23 class action settlement).

Our analysis above substantially addresses the first three Wolinsky factors—the range of possible recovery, the avoidance of burdens and expenses, and the seriousness of the litigation risks.  900 F. Supp. 2d at 335.  As to the remaining two factors, the Court has no trouble concluding that the Kering Agreement resulted from arm's-length negotiations by experienced counsel concerning complex, disputed issues of fact and law.  Finally, "there is no evidence that even suggests any collusion." Mills, 2015 WL 5730008, at *7.

Accordingly, the Court finds that, under the totality of the circumstances, the Kering Agreement is fair and reasonable under Cheeks.

*    *    *

For the forgoing reasons, preliminary approval of the Kering Agreement, conditional certification of the Kering Settlement Class, and final certification of the Kering Collective is warranted, pending the Fairness Hearing.

## 2. Appointment of Class Counsel

When a court certifies a class under Rule 23, it must also "appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B). In appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

For the reasons set forth above, (see § III.B.1.a, supra), the Firm will fairly and adequately represent the interests of the Kering Settlement Class and the Court therefore appoints the Firm as Class Counsel.

## 3. Proposed Notice and Distribution

Having determined that preliminary approval of the Kering Agreement and conditional certification of the Kering Settlement Class is warranted, the Court "must direct notice in a reasonable manner to all class members who would be bound by the" Kering Agreement.  Fed. R. Civ. P. 23(e)(1)(B).  For Rule 23(b)(3) classes, the Court must direct to Class Members "the best

24

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements . . . Notice is adequate if it may be understood by the average class member." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005). In addition, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." Mikhlin, 2021 WL 1259559, at *12.

The Notice contains a general description of the claims and defenses, the persons included in the Kering Settlement Class, the calculation of Class Members' proportionate share of the NAF, and the procedure to submit a claim form, object, and opt out. (Dkt. No. 626-2). The Notice also explains how Class Members can be heard at the Fairness Hearing, that the Court will exclude from the Kering Settlement Class any member who timely and properly requests exclusions, and the binding effect of a class judgment on Class Members who do not opt out. (See id.)

To the extent they have not already done so, within fourteen (14) days of this Opinion and Order, Kering shall provide the Administrator and the Firm with a list containing contact information for Class Members (the "Class List").  See Marin v. 310 Bowery Group LLC, No. 24 Civ. 1340 (SLC), 2025 WL 893731, at *10 (S.D.N.Y. Mar. 24, 2025).  Within thirty (30) days of days of this Opinion and Order, the Administrator is to mail the Notice to the Class Members.  (See Dkt. Nos. 626-1 ¶ 16; 626-2).  By the Bar Date, Class Members must return the claim form, provide written notice of their intention to opt out of the Kering Agreement, or mail a written statement of objections to be heard at the Fairness Hearing.  (Dkt. No. 626-1 §§ III.B.–D).

Because the Notice and the notice procedures set forth in the Kering Agreement provide reasonable notice to all Class Members and clearly and concisely state in plain, easily understood language the information required by Rule 23(c)(2)(B), the Court approves the Notice.

### IV.CONCLUSION

For the reasons set forth above, the Motion is GRANTED, and it is ORDERED that:

(1)  For the purposes of settlement only, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court GRANTS conditional certification of the Kering Settlement Class:

> all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who provided services through the PDP at any Kering Releasee location in New York State at any time from January 23, 2019 to November 25, 2025.

> Excluded from the Kering Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the Notice and this Opinion and Order.

(2)  For settlement purposes only, the Court grants final certification of the following FLSA collective action (the "Kering Collective"):

26

all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, and Inspectors who provided services through the PDP at any Kering Releasee location in New York State at any time from January 23, 2019 through November 25, 2025 and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

(3) For purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23, the Court appoints the following class representatives or Lead Plaintiffs on behalf of the Kering Settlement Class: Jose Martinez, Alexis Yanez, Jorge Zorrilla, Sophia Daly, and Sudan Osorio.[10]

(4) For settlement purposes only, pursuant to Rule 23(g), Faruqi & Faruqi, LLP is certified as Class Counsel for the Kering Settlement Class and is authorized to act on behalf of the Kering Lead Plaintiffs, the Kering Settlement Class, and the Class Members with respect to all acts or consent required or that may be given pursuant to the Kering Agreement, including all acts that are reasonably necessary to consummate the Kering Agreement.

(5) For settlement purposes only, the prerequisites of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied as to the Kering Settlement Class, in that: (i) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (ii) there are questions or law or fact common to the Kering Settlement Class; (iii) the claims of the Kering Lead Plaintiffs are typical of the claims of the Class Members of the Kering Settlement Class; (iv) the Kering Lead Plaintiffs will fairly and adequately represent the interests of the Kering Settlement Class; (v) questions of law and fact common to the Kering Settlement Class predominate over

---

[10] Together the "Kering Lead Plaintiffs."

any questions affecting only individual Class Members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of this action.

(6) The Court GRANTS preliminary approval of the Kering Agreement, in that: (i) the Kering Agreement results from good faith, arm's-length negotiations; (ii) the relief provided to the Kering Settlement Class is adequate; (iii) the Kering Agreement treats Class Members equitably relative to each other; and (iv) Class Counsel and Kering's counsel are experienced in class-action wage-and-hour litigation and had sufficient information to evaluate the Kering Agreement.

(7) The Court substantially approves the form, substance, and requirements of the Class Notice and Claim Form.  (Dkt. No. 626-2).  The parties shall update any dates and deadlines prescribed in the Class Notice and Claim Form to conform with this Opinion and Order.

(8) Analytics LLC is appointed as Administrator and is authorized to mail the Notice and Claim Form, once updated, consistent with the Kering Agreement and this Opinion and Order, to the Class Members as provided in the Kering Agreement.

(9) Within three (3) days after the end of the Opt-Out Period, the Administrator shall file any written objections to the Kering Agreement submitted by a Class Member who has not opted-out and that is postmarked on or before the Bar Date.

(10)    The Fairness Hearing is scheduled for **Tuesday, September 15, 2026 at 10:00 a.m.** in Courtroom 18A, 500 Pearl Street, New York, NY 10007.

The parties submitted a proposed order setting forth the settlement procedures and schedule (Dkt. No. 627), which we will approve in a separate order to be filed following this Opinion and Order.  The Clerk of the Court is respectfully directed to terminate Dkt. No. 624.

Dated:     New York, New York
           April 7, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge