UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT PINEY, et al., on behalf of themselves and others similarly situated,

Plaintiffs,

v.

CITY OF NEW YORK, et al.,

Defendants.

CIVIL ACTION NO. 25 Civ. 671 (JMF) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Albert Piney and others ("Plaintiffs"),[1] on behalf of themselves and others similarly situated, bring this putative collective and class action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York State and City law against Defendants City of New York, (the "City"), the New York City Police Department ("NYPD"), 178 corporate entities (the "Vendors"),[2] and several John Does (the City, NYPD, Vendors, and John Does, together, "Defendants"). (Dkt. No. 631 (the "TAC")).

Plaintiffs and sixteen of the Vendors previously entered into settlement agreements, which the Court preliminarily approved. See Piney v. City of New York, No. 25 Civ. 671 (JMF) (SLC), 2026 WL 2110844 (S.D.N.Y. July 22, 2026) ("Piney VI"); Piney v. City of New York, No. 25 Civ. 671 (JMF) (SLC), 2026 WL 1894332 (S.D.N.Y. July 1, 2026) ("Piney V"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2026 WL 1345920 (S.D.N.Y. May 14, 2026) ("Piney IV"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2026 WL 937059 (S.D.N.Y. Apr. 7, 2026)

[1] See Dkt. No. 631 ¶¶ 11–72 (listing 31 Plaintiffs).
[2] See Dkt. No. 631 ¶¶ 84–1177 (listing 178 Vendors named as Defendants).

("Piney III"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2025 WL 3089894 (S.D.N.Y. Nov. 5, 2025) ("Piney II"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2025 WL 2451011 (S.D.N.Y. Aug. 26, 2025) ("Piney I").[3] The Court has also entered final approval as to six of the settlements. (Dkt. Nos. 826–30, 1238).

Plaintiffs and six additional Vendors, MetLife Group Inc. ("MetLife"), Best Buy Co. Inc. ("Best Buy"), Queens Jewish Center and Talmud Torah ("QJC"), Rego Park Jewish Center ("RPJC"), East Harlem Pilot Block Housing Development Fund Company Inc., named as Taino Towers Apartments, LLC ("TTA"), and Color Image Apparel, Inc. d/b/a Alo Yoga ("Alo," with MetLife, Best Buy, QJC, RPJC, and TTA, the "Settling Defendants"), have now entered into substantially similar settlements, for which Plaintiffs, without opposition, seek: (i) preliminary approval of their settlement agreements; (ii) certification of settlement classes and collectives; (iii) appointment of Faruqi and Faruqi, LLP (the "Firm") as class counsel; (iv) approval of the proposed notice of settlement and claim forms; and (v) approval of the proposed schedule for final settlement approval and setting of a date for a fairness hearing. (Dkt. Nos. 1180; 1187; 1187-1–1187-24 (the "Motion")). Plaintiffs and the Settling Defendants consented to Magistrate Judge jurisdiction with respect to the Motion. (Dkt. Nos. 1213–15; 1217–19).

For substantially the same reasons as in Piney I, Piney II, Piney III, Piney IV, Piney V, and Piney VI, and as explained further below, the Motion is **GRANTED**.

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

## II. BACKGROUND

We presume the reader's familiarity with the factual and procedural background, which we set forth in Piney I and incorporate by reference. See 2025 WL 2451011, at *1–3. We set forth only those facts necessary to analyze the Motion.

### A. Settlement Terms

Plaintiffs have submitted for the Court's review the settlement agreements with the Settling Defendants. (Dkt. Nos. 1187-1 (the "MetLife Agreement"); 1187-5 (the "Best Buy Agreement"); 1187-9 (the "QJC Agreement"); 1187-13 (the "RPJC Agreement"); 1187-17 (the "TTA Agreement"); 1187-21 (the "Alo Agreement," and together, the "Agreements").[4] The Agreements are substantially similar to the settlement agreements approved in Piney I, Piney II, Piney III, Piney IV, Piney V, and Piney VI with material differences noted below.

#### 1. The Settlement Classes and Collectives

The Agreements define the settlement classes, class periods, and collectives as follows:

[4] Capitalized terms not otherwise defined in this Opinion and Order have the same meaning as in the Agreements.

| Agreement | Settlement Class & Class Period[5] | Collective[6] |
|---|---|---|
| MetLife | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work at MetLife sites through the PDP at any time from March 11, 2020 through May 31, 2025[, and] who do not opt out of the Settlement"[7] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for MetLife through the PDP at any time from March 11, 2020 through May 31, 2025" and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[8] |
| Best Buy | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work at Best Buy Locations through the PDP at any time from January 23, 2019 through May 4, 2025, and who do not opt out of the Settlement"[9] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work at Best Buy Locations through the PDP at any time from January 23, 2019 through May 4, 2025" and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[10] |
| QJC | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for [QJC] through the PDP at any | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for [QJC] through the PDP at any |

[5] These Class Periods differ from the previously approved class periods. See Piney VI, 2026 WL 2110844, at *2; Piney V, 2026 WL 1894332, at *2; Piney IV, 2026 WL 1345920, at *1; Piney III, 2026 WL 937059, at *13; Piney II, 2025 WL 3089894, at *12–13; Piney I, 2025 WL 2451011, at *16.

[6] The periods for these Collectives differ from the periods for the FLSA collectives certified in Piney I, Piney II, Piney III, Piney IV, Piney V, and Piney VI. See Piney VI, 2026 WL 2110844, at *2; Piney V, 2026 WL 1894332, at *2; Piney IV, 2026 WL 1345920, at *1; Piney III, 2026 WL 937059, at *13; Piney II, 2025 WL 3089894, at *13; Piney I, 2025 WL 2451011, at *16–17. In addition, although each of the Agreements defines the respective Settlement Class and Collective with the same language, consistent with the FLSA, we presume the parties intended to define each Collective to include not those "who do not opt out of the Settlement" (Dkt. Nos. 1187-1 § III.A; 1187-5 § III.A; 1187-9 § III.A; 1187-13 § III.A; 1187-17 § III.A; 1187-21 § III.A), but rather those who opted in by filing a Consent to Join Form in the Action or submitting a Claim Form. (Dkt. Nos. 1187-1 §§ I.D.b.i (defining Authorized Claimant), II.B (explaining how Authorized Claimants have Released Federal Claims); 1187-5 §§ I.D.b.i, II.B (same); 1187-9 §§ I.D.b.i, II.B (same); 1187-13 §§ I.D.b.i, II.B (same); 1187-17 §§ I.D.b.i, II.B (same); 1187-21 §§ I.D.b.i, II.B (same)). We have conformed the definition of the Collectives accordingly. (See § IV(2), infra). See Piney VI, 2026 WL 2110844, at *2 n.6 (same).

[7] Dkt. No. 1187-1 § III.A.

[8] Dkt. No. 1187-1 § III.A.

[9] Dkt. No. 1187-5 § III.A.

[10] Dkt. No. 1187-5 § III.A.

| | | |
|---|---|---|
| | time from January 23, 2019 through December 25, 2023, and who do not opt out of the Settlement"[11] | time from January 23, 2019 through December 25, 2023" and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[12] |
| RPJC | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for [RPJC] through the PDP at any time from January 23, 2019 through October 2, 2025, and who do not opt out of the Settlement"[13] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for [RPJC] through the PDP at any time from January 23, 2019 through October 2, 2025" and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form [14] |
| TTA | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed paid detail shifts at [TTA] through the PDP at any time from January 23, 2019 through October 29, 2023, and who do not opt out of the Settlement"[15] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed paid detail shifts for [TTA] through the PDP at any time from January 23, 2019 through October 29, 2023" and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[16] |
| Alo | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Alo [] through the PDP at any time from January 23, 2019 through April 17, 2026, and who do not opt out of the Settlement"[17] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Alo [] through the PDP at any time from January 23, 2019 through April 17, 2026" and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.[18] |

[11] Dkt. No. 1187-9 § III.A.
[12] Dkt. No. 1187-9 § III.A.
[13] Dkt. No. 1187-13 § III.A.
[14] Dkt. No. 1187-13 § III.A.
[15] Dkt. No. 1187-17 § III.A.
[16] Dkt. No. 1187-17 § III.A.
[17] Dkt. No. 1187-21 § III.A.
[18] Dkt. No. 1187-21 § III.A.

### 2. Settlement Amounts, Settlement Administrator, and Releases

The Settling Defendants are to make gross settlement payments in the amounts below (the "Gross Settlement Fund" or "GSF"), from which is to be deducted (i) Plaintiffs' counsel's attorneys' fees and costs, and (ii) service payments to the Plaintiffs who served as representatives of each Settlement Class, to arrive at each "Net Allocation Fund" ("NAF"):

| Agreement | GSF | NAF | Service Payments |
|---|---|---|---|
| MetLife | $5,021.95[19] | $2,497.97[20] | $500.00[21] |
| BestBuy | $352,418.92[22] | $224,945.95[23] | $5,000.00[24] |
| QJC | $12,250.00[25] | $6,666.67[26] | $1,000.00[27] |
| RPJC | $6,755.40[28] | $3,153.60[29] | $500.00 x 2[30] |
| TTA | $150,000.00[31] | $89,000.00[32] | $2,000.00 x 3[33] |
| Alo | $150,000.00[34] | $89,000.00[35] | $3,000.00 x 2[36] |

The members of the Settlement Classes will each recover approximately 65% of their potential wage damages. (Dkt. Nos. 1180 at 1; 1187 ¶¶ 18–23). Under the Agreements, each Class Member's share of the NAF is calculated:

[19] Dkt. No. 1187-1 § I.A.
[20] Dkt. No. 1187-1 § I.D.
[21] The MetLife Service Payment Recipient is M. Mostayen Faysal. (Dkt. No. 1187-1 § I.C).
[22] Dkt. No. 1187-5 § I.A.
[23] Dkt. No. 1187-5 § I.D
[24] The BestBuy Service Payment Recipient is Devon Dawkins. (Dkt. No. 1187-5 § I.C).
[25] Dkt. No. 1187-9 § I.A.
[26] Dkt. No. 1187-9 § I.D.
[27] The QJC Service Payment Recipient is Arturo Delgado. (Dkt. No. 1187-9 § I.C).
[28] Dkt. No. 1187-13 § I.A.
[29] Dkt. No. 1187-13 § I.D.
[30] The RPJC Service Payment Recipients are M. Mostayen Faysal and Brayan Antonio. (Dkt. No. 1187-13 § I.C).
[31] Dkt. No. 1187-17 § I.A.
[32] Dkt. No. 1187-17 § I.D.
[33] The TTA Service Payment Recipients are Devon Dawkins, Jaynel Pantoja, and Alexis Yanez. (Dkt. No. 1187-17 § I.C).
[34] Dkt. No. 1187-21 § I.A.
[35] Dkt. No. 1187-21 § I.D.
[36] The Alo Service Payment Recipients are Devon Dawkins and Alexis Yanez. (Dkt. No. 1187-21 § I.C).

> by dividing the total amount allegedly owed to the Class Member for work performed for [the Settling Defendants] through the [PDP] by the total amount owed to all Class Members for such work. This percentage is then multiplied by the NAF to determine the Individual Settlement Payment each Class Member is eligible to receive. The formula is based on actual time and payroll data for each Class Member.

(Dkt. Nos. 1187-1 § I.D.a; 1187-5 § I.D.a; 1187-9 § I.D.a; 1187-13 § I.D.a; 1187-17 § I.D.a; 1187-21 § I.D.a).

To receive their Individual Settlement Payment, each Class Member must become an "Authorized Claimant" by either (i) submitting a Consent to Join Form before the entry of this Order and not opting out, or (ii) submitting a Claim Form before the "Bar Date." (Dkt. Nos. 1187-1 § I.D.b.i; 1187-5 § I.D.b.i; 1187-9 § I.D.b.i; 1187-13 § I.D.b.i; 1187-17 § I.D.b.i; 1187-21 § I.D.b.i). The Bar Date will be:

> (i) sixty (60) days from the date of the initial mailing [of the Settlement Notice and Claim Form] or as otherwise set by the Court; and (ii) an additional fifteen (15) days for any Class Members who did not receive or did not timely receive the Settlement Notice, or were unable to return the Claim Form within sixty (60) days due to such factors as military service, medical issues, or other extraordinary circumstances.

(Dkt. Nos. 1187-1 § III.B.a[37]; 1187-5 § III.C.a; 1187-9 § III.B.a; 1187-13 § III.B.a; 1187-17 § III.C.a; 1187-21 § III.B.a).

Under the Agreements, in exchange for their Individual Settlement Payments, each Class Member who does not timely opt out releases the respective Settling Defendant from all wage-and-hour claims under New York State or New York City law arising from the Class Member's provision of services for the Settling Defendant in New York State through the PDP (collectively,

---

[37] The MetLife Agreement contains the following additional language at the end of this provision: "as agreed upon by the Parties or as ordered by the Court." (Dkt. No. 1187-1 § III.B.a).

the "Released State Law Claims") for the following time periods: (i) for MetLife, through May 31, 2025 (Dkt. No. 1187-1 § II.A); (ii) for Best Buy, from January 23, 2019 through May 4, 2025 (Dkt. No. 1187-5 § II.A); (iii) for QJC, from January 23, 2019 through December 25, 2023 (Dkt. No. 1187-9 § II.A); (iv) for RPJC, from January 23, 2019 through October 2, 2025 (Dkt. No. 1187-13 § II.A); (v) for TTA, from January 23, 2019 through October 29, 2023 (Dkt. No. 1187-17 § II.A); and for Alo, from January 23, 2019 through April 17, 2026 (Dkt. No. 1187-21 § II.A). In addition, all Authorized Claimants — i.e., Class Members who submitted a Consent to Join Form before the entry of this Order and did not opt out, or who timely submitted Claim Forms — also release all federal (including FLSA) wage-and-hour claims against the respective Settling Defendants that arise from the Class Member's provision of services in New York State through the PDP as follows: (i) for MetLife, through May 31, 2025 (Dkt. No. 1187-1 § II.B); (ii) for Best Buy, from January 23, 2022 through May 4, 2025 (Dkt. No. 1187-5 § II.B); (iii) for QJC, from January 23, 2022 through December 25, 2023 (Dkt. No. 1187-9 § II.B); (iv) for RPJC, from January 23, 2022 through October 2, 2025 (Dkt. No. 1187-13 § II.B); (v) for TTA, from January 23, 2022 through October 29, 2023 (Dkt. No. 1187-17 § II.B); and (vi) for Alo, from January 23, 2022 through April 17, 2026 (Dkt. No. 1187-21 § II.B).

The Agreements contemplate the appointment of Analytics Consulting LLC as the Settlement Administrator (the "Administrator") to administer the Agreements.[38]

[38] We note that the MetLife Agreement contemplates the appointment of Analytics LLC, not Analytics Consulting LLC, as the Administrator (Dkt. No. 1187-1 § I.E), as do many of the prior settlement agreements the Court has approved. See Piney VI, 2026 WL 2110844, at *4 n.34; Piney V, 2026 WL 1894332, at *4, 12; Piney IV, 2026 WL 1345920, at *4, 13; Piney III, 2026 WL 937059, at *3, 14; Piney II, 2025 WL 3089894, at *4, 13; Piney I, 2025 WL 2451011, at *5, 17. We presume that Analytics LLC and Analytics Consulting LLC are related entities and are interchangeable for purposes of the role of Administrator in this action.

(Dkt. Nos. 1187-1 § I.E; 1187-5 § I.E; 1187-9 § I.E; 1187-13 § I.E; 1187-17 § I.E; 1187-21 § I.E).[39] The Administrator's fee is not to exceed $200.00 under the MetLife Agreement, $2,000.00 under the Best Buy Agreement, $280.00 under the QJC Agreement, $225.00 under the RPJC Agreement, $3,000.00 under the TTA Agreement, and $1,500.00 under the Alo Agreement, and under each of the Agreements will be paid out of the GSF, unless the GSF is insufficient, in which case the Settling Defendant will pay the Administrator fee up to the caps stated above. (Dkt. Nos. 1187-1 § I.E; 1187-5 § I.E; 1187-9 § I.E; 1187-13 § I.E; 1187-17 § I.E; 1187-21 § I.E).

### 3. Notice and Opportunities to Opt-Out and Object

The Agreements include notices that inform members of the Settlement Classes of their opportunity to object or opt out, appear at the Fairness Hearing, and submit a Claim Form. (Dkt. Nos. 1187-2 (the "MetLife Notice"); 1187-6 (the "Best Buy Notice"); 1187-10 (the "QJC Notice"); 1187-14 (the "RPJC Notice"); 1187-18 (the "TTA Notice"); 1187-22 (the "Alo Notice," and together, the "Notices")). The Agreements contemplate that, following this Opinion and Order, the Administrator will send the Notices and accompanying Claim Forms to members of the Settlement Classes. (Dkt. Nos. 1187-1 § III.B; 1187-5 § III.C; 1187-9 § III.B; 1187-13 § III.B; 1187-17 § III.C; 1187-21 § III.B). As noted above, Class Members will then have 60 days to return a completed Claim Form to the Administrator, and only those Class Members who timely do so, or who submit a Consent to Join Form and do not otherwise opt out, will be deemed Authorized Claimants. (Dkt. Nos. 1187-1 §§ III.B.a–b; 1187-5 §§ III.C.a–b; 1187-9 §§ III.B.a–b; 1187-13

[39] We note that the Best Buy and TTA Agreements contain a provision detailing the Administrator's responsibilities (Dkt. No. 1187-5 § III.B; 1187-17 § III.B), while the MetLife, QJC, RPJC, and Alo Agreements do not. (Dkt. Nos. 1187-1 § III; 1187-9 § III; 1187-13 § III; 1187-21 § III). We nevertheless presume the Administrator's responsibilities are the same under all the Agreements.

§§ III.B.a–b; 1187-17 §§ III.C.a–b; 1187-21 §§ III.B.a–b). Class Members who chose to opt out must mail to the Administrator by the Bar Date a written, signed statement of their intention to opt out. (Dkt. Nos. 1187-1 § III.C; 1187-5 § III.D; 1187-9 § III.C; 1187-13 § III.C; 1187-17 § III.D; 1187-21 § III.C).

The Court will hold a Fairness Hearing to hear any timely and properly submitted objections to the Agreements, make a final determination as to the fairness, adequacy, and reasonableness of the Agreements, fix the amounts of attorneys' fees and costs to Class Counsel and the Service Payments, and, if appropriate, enter final judgment. (Dkt. Nos. 1187-1 §§ III.B, D; 1187-2 at 6; 1187-5 §§ III.C, E; 1187-6 at 6; 1187-9 §§ III.B, D; 1187-10 at 6; 1187-13 §§ III.B, D; 1187-14 at 6; 1187-17 §§ III.C, E; 1187-18 at 6; 1187-21 §§ III.B, D; 1187-22 at 6). Class Members who seek to appear and object to the Agreements at the Fairness Hearing must first mail to the Administrator by the Bar Date a statement including "all reasons for the objection and any supporting documentation[;]" the Court will not consider any objections not timely submitted in writing. (Dkt. Nos. 1187-1 § III.D; 1187-5 § III.E; 1187-9 § III.D; 1187-13 § III.D; 1187-17 § III.E; 1187-21 § III.D). The parties may respond to any objections before the Fairness Hearing. (Dkt. Nos. 1187-1 § III.D; 1187-5 § III.E; 1187-9 § III.D; 1187-13 § III.D; 1187-17 § III.E; 1187-21 § III.D).

#### 4. **<u>Other Provisions</u>**

The Agreements are governed by New York law and contemplate that the Court will retain jurisdiction over their implementation. (Dkt. Nos. 1187-1 §§ III.Q, R; 1187-5 §§ III.R, S; 1187-9 §§ III.Q, R; 1187-13 §§ III.Q, R; 1187-17 §§ S, T; 1187-21 §§ P, Q).

## III. DISCUSSION

### A. Legal Standards

We incorporate by reference the legal standards set forth in Piney III. See 2026 WL 937059, at *4–6.

### B. Application

#### 1. Preliminary Approval & Certification of Settlement Classes

Considering the procedural and substantive factors in Rules 23(a), 23(b)(3), and 23(e)(2) as well as the Grinnell and Wolinsky factors, the Court grants both preliminary approval of the Agreements as fair, reasonable, and adequate, as well as provisional certification of the Settlement Classes and final certification of the Collectives. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

##### a. Rule 23(a)

The Settlement Classes satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a). As to numerosity, the parties estimate that the Best Buy Settlement Class consists of 270 members, the QJC Settlement Class consists of 49 members, the TTA Settlement Class consists of 409 members, and the Alo Settlement Class consists of 234 members. (Dkt. Nos. 1180 at 1–2; 1187 ¶ 8). These numbers exceed 40 members, which is the number at which "numerosity is presumed" in the Second Circuit, so numerosity is satisfied. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). As to the MetLife Settlement Class, which consists of 22 members, and the RPJC Settlement Class, which consists of 29 members (Dkt. Nos. 1180 at 1–2; 1187 ¶ 8), while these

numbers are below the presumptive numerosity threshold, we note that MetLife and RPJC have not disputed numerosity. In addition, "consider[ing] factors other than class size," such as "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits," we conclude that it would be inefficient to require the members of the MetLife and RPJC Settlement Classes to bring separate lawsuits, especially given that the damages per person under the MetLife and RPJC Agreements are relatively low and members are unlikely to bring their own lawsuits. Grant v. N.Y. Times Co., 329 F.R.D. 27, 31 (S.D.N.Y. 2018); see Wood v. Mike Bloomberg 2020, Inc., 746 F. Supp. 3d 185, 194–95 n.3 (S.D.N.Y. 2024) (finding numerosity requirement met as to subclass of 31 individuals); In re IndyMac Mortgage-Backed Sec. Litig., 286 F.R.D. 226, 232–33 (S.D.N.Y. 2012) (finding numerosity requirement met despite two of the securities offerings at issue having only 22 and 39 members). We therefore find that the MetLife and RPJC Settlement Classes also meet the numerosity requirement.

As to commonality, the primary issues in this case — (i) whether the Settling Defendants employed Plaintiffs and the Class Members; (ii) whether the Settling Defendants were "hiring parties" with respect to Plaintiffs and the Class Members; (iii) whether Plaintiffs and the Class Members were "freelance workers;" and (iv) whether the Settling Defendants timely paid Plaintiffs and the Class Members their wages — are common to the Settlement Classes. (See Dkt. No. 1180 at 4 (incorporating by reference Dkt. No. 781 at 14–15)).

As to typicality, each Class Member's claim arises from the same course of events, i.e., their work in the PDP for the Settling Defendants, who subjected the Class Members to uniform policies and failed to pay them timely wages. (See Dkt. No. 1180 at 4 (incorporating by reference

Dkt. No. 781 at 17)). See Barrows v. Becerra, 24 F.4th 116, 131–32 (2d Cir. 2022) (finding typicality satisfied where each class member's claim arose from the same course of events and presented similar liability issues).

As to adequacy, Plaintiffs do not have any interests that conflict with other Officers and the Service Payment Recipients in particular "have worked extensively on behalf of" the Settlement Classes to achieve the settlements memorialized in the Agreements. (See Dkt. Nos. 1180 at 4 (incorporating by reference Dkt. No. 781 at 17–18); 1187 ¶¶ 25–26). In addition, the Firm has extensive experience representing employees in federal wage and hour class actions in the Second Circuit courts. (Dkt. No. 1187 ¶¶ 3–4). See Piney I, 2025 WL 2451011, at *10 (finding the Firm adequate).

Accordingly, all four elements of Rule 23(a) are met for the Settlement Classes.

**b. Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met as to the Agreements. Questions common to all Class Members — including whether the Settling Defendants maintained improper compensation practices and failed to provide adequate wage notices and statements — are subject to generalized proof and predominate over any potential individual issues. See In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013). In addition, a class settlement is a superior method for the fair and efficient adjudication of the claims of the Class Members, many of whom have already opted

in to this action and none of whom have filed separate actions against the Settling Defendants. (Dkt. No. 1187 ¶¶ 11, 25–28).

c. Ascertainability

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries." In re Petrobras Sec., 862 F.3d 259, 264 (2d Cir. 2017). The Settlement Classes are easily ascertainable given the parties' representations about the numbers of Class Members, which are based on "comprehensive and detailed time records and payroll data[.]" (Dkt. No. 1187 ¶ 14). See Amigon v. Safeway Constr. Enters., LLC, No. 20 Civ. 5222 (PK), 2024 WL 5040436, at *8 (E.D.N.Y. Dec. 9, 2024) (finding settlement class was ascertainable where class members were identifiable from defendants' wage data records).

d. Rule 23(e)(2)

i. Adequate representation (Rule 23(e)(2)(A))

As found above, Plaintiffs are adequate class representatives, and their interests are not antagonistic to other Class Members. (See § III.B.1.a, supra). The Firm's extensive experience in federal wage-and-hour class actions has been an advantage in advocating for the Class Members and successfully negotiating the Agreements. (Dkt. No. 1187 ¶¶ 3–6). See Piney I, 2025 WL 2451011, at *10. Thus, this factor weighs in favor of preliminary approval of the Agreements and naming the Firm as Class Counsel.

ii. Arm's length negotiation (Rule 23(e)(2)(B))

Courts apply a "presumption of fairness" to a class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class

litigation." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). Plaintiffs and the Settling Defendants, who were each represented by capable counsel experienced in wage and hour litigation, entered into the Agreements after exchanging the Officers' employment records as well as numerous demands and offers during direct settlement negotiations, which were ultimately successful. (Dkt. No. 1187 ¶¶ 5–6, 9, 12–17). This factor therefore also weighs in favor of preliminary approval.

**iii. Adequacy of relief (Rule 23(e)(2)(C))**

In determining whether the Agreements provide adequate relief to the Settlement Classes, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Only the first three factors are pertinent here.

The first factor — the "costs, risks, and delay of trial and appeal" — "subsumes several Grinnell factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 Civ. 4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021). Courts favor a settlement that "results in substantial and tangible present recovery, without the attendant risk and delay of trial." Sykes v. Harris, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016). "Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent [a s]ettlement, continued litigation would have required extensive time and expense." Garland v. Cohen & Krassner, No. 08 Civ. 4626 (KAM)

(RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011). "In considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." Mikhlin, 2021 WL 1259559, at *5.

Here, the TAC asserts claims under federal and state statutes, the Settling Defendants' liability for which remains in dispute. (See Dkt. Nos. 631; 1187-1 at 2 (MetLife denying Plaintiffs' allegations); 1187-5 at 2 (Best Buy denial); 1187-9 at 2 (QJC denial); 1187-13 at 2 (RPJC denial); 1187-17 at 2 (TTA denial); 1187-21 at 2 (Alo denial)). Plaintiffs and the Settling Defendants exchanged some information about the Officers' employment, but a case management plan setting a formal discovery schedule has not yet been entered. (See Dkt. Nos. 613; 1187 ¶¶ 9, 12–15). Plaintiffs' attempt to certify a collective action was unresolved. (See Dkt. Nos. 54–78; 127; 196; 1187 ¶ 10). Further litigation would inevitably involve additional expense and delay, extensive fact discovery, and motion practice. (See Dkt. No. 1180 at 4 (incorporating by reference Dkt. No. 781 at 29–30)). Given these challenges, the Settlement Classes faced substantial risks in obtaining the maximum possible recovery. (See Dkt. No. 1180 at 3 (incorporating by reference Dkt. No. 781 at 29–32)). The Agreements, however, will provide Class Members with a recovery of 65% of potential damages. (Dkt. Nos. 1180 at 1; 1187 ¶¶ 18–23). This recovery is comparable to the recoveries in other wage-and-hour settlements that courts within the Second Circuit have approved. See, e.g., Bondi v. DeFalco, No. 17 Civ. 5681 (KMK), 2020 WL 2476006, at *4 (S.D.N.Y. May 13, 2020) (finding that FLSA settlement that provided plaintiffs with recovery of two-thirds of their maximum damages was reasonable); Khan v. Dunwoodie Gas Station, Inc., No. 19 Civ. 5581 (KMK), 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) (same); see also Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding that

FLSA settlement that provided plaintiffs with recovery of 50% of their maximum damages was reasonable). The Agreements therefore represent favorable outcomes for the Settlement Classes, particularly when balancing the parties' claims and defenses with the risks and uncertainties of continued litigation. The first Rule 23(e)(2)(C) factor, and Grinnell factors (1), (4), (5), and (6) therefore weigh in favor of preliminary approval.

In evaluating the second Rule 23(e)(2)(C) factor, we must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "A plan for allocating settlement funds need not be perfect," and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." Mikhlin, 2021 WL 1259559, at *6. The Agreements provide for creation of the NAFs, from which the Administrator will (i) determine each Class Member's proportionate share of the NAFs using the same formula, and (ii) pay each Authorized Claimant by check. (See Dkt. Nos. 1187-1 §§ I.D, G; 1187-5 §§ I.D, G; 1187-9 §§ I.D, G; 1187-13 §§ I.D, G; 1187-17 §§ I.D, G; 1187-21 §§ I.D, G). The Notices describe the terms of the Agreements and provide clear explanations of how to file a claim form, opt out, or object. (See Dkt. Nos. 1187-2; 1187-6; 1187-10; 1187-14; 1187-18; 1187-22). The second Rule 23(e)(2)(C) factor thus also weighs in favor of preliminary approval.

The third Rule 23(e)(2)(C) factor contemplates that, before final approval, the Court "will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." Hart v. BHH, LLC, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). "One method for calculating attorneys' fees, which is the trend in this Circuit, is the percentage of the fund method." Amigon, 2024 WL 5040436, at *5. "Under this method, the Court considers whether the requested fees are

reasonable as compared to the settlement amount[,]" considering "fees awarded in similar cases, the risks to [c]lass [c]ounsel, and the lodestar calculation." Id. Here, Plaintiffs have not yet applied for attorneys' fees and costs, but as for fees, the Firm has agreed to seek a maximum of one-third of each of the GSFs, or up to $1,673.98 (and $350.00 for costs) under the MetLife Agreement, $117,472.97 (and $5,000.00 for costs) under the Best Buy Agreement, $4,083.33 (and $500.00 for costs) under the QJC Agreement, $2,251.80 (and $350.00 for costs) under the RPJC Agreement, and $50,000.00 (and $5,000.00 for costs) under each of the TTA and Alo Agreements. (Dkt. Nos. 1187-1 § I.B; 1187-5 § I.B; 1187-9 § I.B; 1187-13 § I.B; 1187-17 § I.B; 1187-21 § I.B). This "is a reasonable baseline" consistent with fee awards in other wage and hour class action settlements in the Second Circuit. Pickard v. OnSite Facility Servs., LLC, No. 22 Civ. 207 (AMN) (ML), 2023 WL 7019256, at *10 (N.D.N.Y Oct. 25, 2023) (collecting cases); see Medina v. NYC Harlem Foods Inc., No. 21 Civ. 1321 (VSB), 2024 WL 230745, at *6 (S.D.N.Y. Jan. 22, 2024) (noting that one-third contingency fees in FLSA cases are "routinely approved" in the Second Circuit). While the Court reserves judgment pending receipt of a formal application for attorneys' fees and costs, (see Dkt. No. 1187 ¶ 29), the third factor does not preclude preliminary approval.

Accordingly, all three applicable Rule 23(e)(2)(C) factors, and the corresponding Grinnell factors, weigh in favor of preliminary approval.

**iv. Equitable treatment (Rule 23(e)(2)(D))**

In evaluating whether the Agreements "treat[] class members equitably relative to each other[,]" Fed. R. Civ. P. 23(e)(2)(D), the Court may consider "whether the apportionment of relief among class members takes appropriate account of the differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the

apportionment of relief." Id. advisory committee's note to 2018 amendment. "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." Moses v. N.Y. Times Co., 79 F.4th 235, 245 (2d Cir. 2023). "In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." Guippone v. BH S&B Holdings LLC, No. 09 Civ. 1029 (CM), 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016).

As we have found, the method of distribution in the Agreements appears equitable and reasonable. (See § III.B.1.d.iii, supra). Other than the service awards, the proposed method of calculation and distribution of the NAFs treats all Class Members uniformly by awarding each Authorized Claimant a proportionate amount of the hours they worked in the PDP based on actual compensation and payroll data. (Dkt. Nos. 1187-1 § I.D.a; 1187-5 § I.D.a; 1187-9 § I.D.a; 1187-13 § I.D.a; 1187-17 § I.D.a; 1187-21 § I.D.a). In addition, the service awards are a reasonable amount in comparison to the efforts of the Service Payment Recipients, (see Dkt. Nos. 1187-1 § I.C; 1187-5 § I.C; 1187-9 § I.C; 1187-13 § I.C; 1187-17 § I.C; 1187-21 § I.C), and consistent with awards that other courts in this District have approved. See, e.g., Silverstein v. AllianceBernstein, L.P., No. 09 Civ. 5904 (JPO), 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (approving service awards of $25,000 to named plaintiffs and $1,500 to opt-in plaintiffs); Aponte v. Comprehensive Health Mgmt., Inc., No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) (approving service awards of $10,000 to named plaintiffs and $500 to opt-in plaintiffs); see also Piney VI, 2026 WL 2110844, at *9; Piney V, 2026 WL 1894332, at *3, 8;

Piney III, 2026 WL 937059, at *10; Piney I, 2025 WL 2451011, at *12. This factor therefore also weighs in favor of preliminary approval.

**v. Remaining Grinnell factors**

Having considered each of the Rule 23(e)(2) factors, the remaining Grinnell factors are "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Grinnell, 495 F.2d at 463.

As to the second Grinnell factor, although Class Members have not yet received formal notice of the Agreements, we note that hundreds of Officers who worked for the Settling Defendants have joined this action as opt-in plaintiffs and have expressed their strong support for the Agreements. (Dkt. No. 1187 ¶¶ 11, 27).

As to the stage of the proceedings and the amount of discovery completed (Grinnell factor (3)), the purpose is to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them[.]" Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999). Here, Plaintiffs and the Settling Defendants entered into the Agreements after exchanging and analyzing the Officers' employment records, calculating the damages due to the Officers, "engag[ing] in substantial and arm's length settlement discussions, [and] exchanging numerous settlement proposals, damages calculations, and additional data." (Dkt. No. 1187 ¶¶ 12–16). The Firm represents that the exchange of information enabled it to evaluate the "strengths and

weaknesses of Plaintiffs' claims as well as the claims of all other Officers who worked PDP shifts for" the Settling Defendants, and their defenses. (Id. ¶ 12). This record reflects that the parties engaged in "substantial investigation and prosecution of the claims, and substantial informal and formal settlement negotiations." Amigon, 2024 WL 5040436, at *6. This factor thus also weighs in favor of preliminary approval.

As to the Settling Defendants' ability to withstand a greater judgment (Grinnell factor (7)), we note that a defendant's "ability to pay is much less important than the other Grinnell factors, especially where the other factors weigh in favor of approving settlement." Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). Further, "a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Manley v. Midan Rest. Inc., No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27, 2017). Here, while there is no evidence that the Settling Defendants could not "likely withstand a greater judgment[,]" (Dkt. No. 1180 at 4 (incorporating by reference Dkt. No. 781 at 30)), this factor, "does not, standing alone, indicate that the settlement is unreasonable or inadequate." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997). This factor is therefore neutral as to preliminary approval. See id.; Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("The amount of the settlement . . . when considered with the other Grinnell factors, does not alone render the settlement unfair.").

As to the range of reasonableness of the NAFs in light of the best possible recovery (Grinnell factor (8)) and the range of reasonableness of the NAFs to a possible recovery in light of all the attendance risks of litigation (Grinnell factor (9)), the NAFs represent 65% of the potential damages for each of the Settlement Classes. (Dkt. Nos. 1180 at 1; 1187 ¶¶ 18–23). This

percentage exceeds the range of reasonableness approved by other courts in this Circuit. See Amigon, 2024 WL 5040436, at *6 (approving 12.32% of the best possible recovery); Mikhlin, 2021 WL 1259559, at *9 (approving 52% recovery of total possible damages and stating that "[c]ourts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness."). The last two Grinnell factors, therefore, also weigh in favor of preliminary approval.

Accordingly, four of the five remaining applicable Grinnell factors weigh in favor of, and one is neutral as to, preliminary approval of the Agreements.

**vi. Cheeks review – Wolinsky factors**

As other courts in the Second Circuit have noted, "the Wolinsky factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement under Rule 23(e)[,]" including "the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement results from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion." Caccavale v. Hewlett-Packard Co., No. 2:20 Civ. 974 (NJC) (ST), 2024 WL 4250337, at *22 (E.D.N.Y. Mar. 13, 2024). Some courts have therefore found that "satisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." D'Angelo v. Hunter Bus. Sch., Inc., No. 21 Civ. 3334 (JMW), 2023 WL 4838156, at *5 n.1 (E.D.N.Y. July 28, 2023); see Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 201–07 (2d Cir. 2015). The crux of the inquiry is "whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." Mills v. Cap. One, N.A., No. 14 Civ. 1937 (HBP), 2015 WL 5730008,

at *6–7 (S.D.N.Y. Sept. 30, 2015) (citing Wolinsky and noting that Cheeks review of collective action settlement is less stringent than review of Rule 23 class action settlement).

Our analysis above substantially addresses the first three Wolinsky factors — the range of possible recovery, the avoidance of burdens and expenses, and the seriousness of the litigation risks. 900 F. Supp. 2d at 335. As to the remaining two factors, the Court has no trouble concluding that the Agreements resulted from arm's-length negotiations by experienced counsel concerning complex, disputed issues of fact and law. (See Dkt. No. 1187 ¶¶ 3–4, 15–17). Finally, "there is no evidence that even suggests any collusion." Mills, 2015 WL 5730008, at *7.

Accordingly, the Court finds that, under the totality of the circumstances, the Agreements are fair and reasonable under Cheeks.

* * *

For the foregoing reasons, preliminary approval of the Agreements, conditional certification of the Settlement Classes, and final certification of the Collectives are warranted, pending the Fairness Hearing.

**2. Appointment of Class Counsel**

When a court certifies a class under Rule 23, it must also "appoint class counsel . . . [who] must fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(A)–(B). In appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

For the reasons set forth above, (see §§ III.B.1.a, III.B.1.d.i, supra), the Firm will fairly and adequately represent the interests of the Settlement Classes and the Court therefore appoints the Firm as Class Counsel.

**3. Proposed Notice and Distribution**

Having determined that preliminary approval of the Agreements and conditional certification of the Settlement Classes are warranted, the Court "must direct notice in a reasonable manner to all class members who would be bound by the" Agreements. Fed. R. Civ. P. 23(e)(1)(B). For Rule 23(b)(3) classes, the Court must direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements . . . Notice is adequate if it may be understood by the average class member." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005). In addition, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." Mikhlin, 2021 WL 1259559, at *12.

The Notices contain a general description of the claims and defenses, the persons included in the Settlement Classes, the calculation of Class Members' proportionate share of the NAFs, and the procedure to submit a claim form, object, and opt out. (Dkt. Nos. 1187-2; 1187-6; 1187-10; 1187-14; 1187-18; 1187-22). The Notices also explain how Class Members can be heard at the Fairness Hearing, that the Court will exclude from the Settlement Classes any member who timely and properly requests exclusions, and the binding effect of a class judgment on Class Members who do not opt out. (Dkt. Nos. 1187-2; 1187-6; 1187-10; 1187-14; 1187-18; 1187-22).

To the extent they have not already done so, by **September 10, 2026**, the Settling Defendants shall provide the Administrator and the Firm with lists containing contact information for Class Members for each Settlement Class (the "Class List"). See Marin v. 310 Bowery Grp. LLC, No. 24 Civ. 1340 (SLC), 2025 WL 893731, at *10 (S.D.N.Y. Mar. 24, 2025). By **September 24, 2026**, the Administrator shall mail the Notices to the Class Members for each Settlement Class. (See Dkt. Nos. 1187-1 § III.B.; 1187-2; 1187-5 § III.C; 1187-6; 1187-9 § III.B; 1187-10; 1187-13 § III.B; 1187-14; 1187-17 § III.C; 1187-18; 1187-21 § III.B; 1187-22). By the Bar Date, Class Members must return the claim form, provide written notice of their intention to opt out of the Agreement, or mail a written statement of objections to be heard at the Fairness Hearing. (Dkt. Nos. 1187-1 §§ III.B–D; 1187-5 §§ III.C–E; 1187-9 §§ III.B–D; 1187-13 §§ III.B–D; 1187-17 §§ III.C–E; 1187-21 §§ B–D).

Because the Notices and the notice procedures set forth in the Agreements provide reasonable notice to all Class Members and clearly and concisely state in plain, easily understood language the information required by Rule 23(c)(2)(B), the Court approves the Notices.

## IV. CONCLUSION

For the reasons set forth above, the Motion is **GRANTED**, and it is **ORDERED** that:

(1) For the purposes of settlement only, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court **GRANTS** conditional certification of the following Settlement Classes:

a. The MetLife Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work at MetLife sites through the PDP at any time from March 11, 2020 through May 31, 2025, and who do not opt out. Excluded from the MetLife Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the MetLife Notice (Dkt. No. 1187-2) and this Opinion and Order.

b. The Best Buy Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work at Best Buy Locations through the PDP at any time from January 23, 2019 through May 4, 2025, and who do not opt out. Excluded from the Best Buy Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the Best Buy Notice (Dkt. No. 1187-6) and this Opinion and Order.

c. The QJC Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for QJC through the PDP at any time from January 23, 2019 through

December 25, 2023, and who do not opt out. Excluded from the QJC Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the QJC Notice (Dkt. No. 1187-10) and this Opinion and Order.

d. The RPJC Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for RPJC through the PDP at any time from January 23, 2019 through October 2, 2025, and who do not opt out. Excluded from the RPJC Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the RPJC Notice (Dkt. No. 1187-14) and this Opinion and Order.

e. The TTA Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed paid detail shifts at TTA through the PDP at any time from January 23, 2019 through October 29, 2023, and who do not opt out. Excluded from the TTA Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the TTA Notice (Dkt. No. 1187-18) and this Opinion and Order.

f. The Alo Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Alo through the PDP at any time from January 23, 2019 through April 17, 2026, and who do not opt out. Excluded from the Alo Settlement

Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the Alo Notice (Dkt. No. 1187-22) and this Opinion and Order.

(2) For settlement purposes only, the Court **GRANTS** final certification of the following FLSA collective actions:

a. The MetLife Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for MetLife through the PDP at any time from March 11, 2020 through May 31, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

b. The Best Buy Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work at Best Buy Locations through the PDP at any time from January 23, 2019 through May 4, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

c. The QJC Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for QJC through the PDP at any time from January 23, 2019 through December 25, 2023, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

d. The RPJC Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed

work for RPJC through the PDP at any time from January 23, 2019 through October 2, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

e. The TTA Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed paid detail shifts for TTA through the PDP at any time from January 23, 2019 through October 29, 2023, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

f. The Alo Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for Alo through the PDP at any time from January 23, 2019 through April 17, 2026, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

(3) For purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23, the Court appoints the following class representatives (the “Lead Plaintiffs”) on behalf of the Settlement Classes:

a. The MetLife Lead Plaintiff is M. Mostayen Faysal.

b. The Best Buy Lead Plaintiff is Devon Dawkins.

c. The QJC Lead Plaintiff is Arturo Delgado.

d. The RPJC Lead Plaintiffs are M. Mostayen Faysal and Brayan Antonio.

e. The TTA Lead Plaintiffs are Devon Dawkins, Jaynel Pantoja, and Alexis Yanez.

f. The Alo Lead Plaintiffs are Devon Dawkins and Alexis Yanez.

(4) For settlement purposes only, pursuant to Rule 23(g), Faruqi & Faruqi, LLP is certified as Class Counsel for the Settlement Classes and is authorized to act on behalf of the Lead Plaintiffs, the Settlement Classes, and the Class Members with respect to all acts or consent required or that may be given pursuant to the Agreements, including all acts that are reasonably necessary to consummate the Agreements.

(5) For settlement purposes only, the prerequisites of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied as to the Settlement Classes, in that: (i) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (ii) there are questions or law or fact common to the Settlement Classes; (iii) the claims of the Lead Plaintiffs are typical of the claims of the Class Members of the respective Settlement Classes; (iv) the Lead Plaintiffs will fairly and adequately represent the interests of their respective Settlement Class; (v) questions of law and fact common to the Settlement Classes predominate over any questions affecting only individual Class Members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of this action.

(6) The Court **GRANTS** preliminary approval of the Agreements, in that: (i) the Agreements result from good faith, arm's-length negotiations; (ii) the relief provided to the Settlement Classes is adequate; (iii) the Agreements treats Class Members equitably relative to each other; and (iv) Class Counsel and the Settling Defendants' counsel are experienced in class-action wage-and-hour litigation and had sufficient information to evaluate the Agreements.

(7) The Court substantially approves the form, substance, and requirements of the Class Notices and Claim Forms. (Dkt. Nos. 1187-2; 1187-6; 1187-10; 1187-14; 1187-18; 1187-22). The parties shall update any dates and deadlines prescribed in the Class Notices and Claim Forms to conform with this Opinion and Order.

(8) Analytics Consulting LLC is appointed as Administrator and is authorized to mail the Notices and Claim Forms, once updated, consistent with the Agreements and this Opinion and Order, to the Class Members as provided in the Agreements.[40]

(9) Within three (3) days after the Bar Date, the Administrator shall file any written objections to the Agreement submitted by a Class Member who has not opted-out and that is postmarked on or before the Bar Date.

(10) The Fairness Hearing is scheduled for **February 9, 2027 at 10:00 a.m. ET** in Courtroom 18A, 500 Pearl Street, New York, NY 10007. Any participant requesting permission to bring an electronic device (e.g., cellphone, laptop, tablet) into the Courthouse for use at the Fairness Hearing must email to Chambers (Cave_NYSDChambers@nysd.uscourts.gov) a completed Electronic Device Order on or before **February 2, 2027**. The Electronic Device Order form is available on the Court's website at https://nysd.uscourts.gov/forms/fillable-form-electronic-devices-general-purpose.

The parties submitted proposed orders setting forth the settlement procedures and schedule (Dkt. Nos. 1187-3; 1187-7; 1187-11; 1187-15; 1187-19; 1187-23), which we will enter separately following this Opinion and Order.

---

[40] (See n.38, supra).

The Clerk of Court is respectfully directed to close Dkt. No. 1180.

Dated: New York, New York
August 25, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge