UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT PINEY, et al., on behalf of themselves and others similarly situated,

Plaintiffs,

v.

CITY OF NEW YORK, et al.,

Defendants.

CIVIL ACTION NO. 25 Civ. 671 (JMF) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Albert Piney and others ("Plaintiffs"),[1] on behalf of themselves and others similarly situated, bring this putative collective and class action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York State and City law against Defendants City of New York (the "City"), the New York City Police Department ("NYPD"), 178 corporate entities (the "Vendors"),[2] and several John Does (the City, NYPD, Vendors, and John Does, together, "Defendants"). (Dkt. No. 631 (the "TAC")).

Plaintiffs and 27 of the Vendors previously entered into settlement agreements, which the Court preliminarily approved.[3] The Court has also entered final approval as to eight of the settlements. (Dkt. Nos. 826–30; 1238; 1300; 1340).

---

[1] See Dkt. No. 631 ¶¶ 11–72 (listing 31 Plaintiffs).

[2] See Dkt. No. 631 ¶¶ 84–1177 (listing 178 Vendors named as Defendants).

[3] See Piney v. City of New York, No. 25 Civ. 671 (JMF) (SLC), 2026 WL 2719732 (S.D.N.Y. Sept. 15, 2026) ("Piney VIII"); Piney v. City of New York, No. 25 Civ. 671 (JMF) (SLC), 2026 WL 2495247 (S.D.N.Y. Aug. 25, 2026) ("Piney VII"); Piney v. City of New York, No. 25 Civ. 671 (JMF) (SLC), 2026 WL 2110844 (S.D.N.Y. July 22, 2026) ("Piney VI"); Piney v. City of New York, No. 25 Civ. 671 (JMF) (SLC), 2026 WL 1894332 (S.D.N.Y. July 1, 2026) ("Piney V"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2026 WL 1345920 (S.D.N.Y. May 14, 2026) ("Piney IV"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2026 WL 937059 (S.D.N.Y. Apr. 7, 2026) ("Piney III"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2025

Plaintiffs and ten additional Vendors — MIR Hanson Associates, LLC ("MIR"), Church of the City of New York ("COTC"), Bryant Park Corporation ("BPC"), 34th Street Partnership, Inc. ("34th Street"), Target Corporation ("Target"), Levy Premium Foodservice Limited Partnership ("Levy"), Rabbinical Seminary of America ("RSA"), Young Israel of Forest Hills ("YIFH"), Burlington Coat Factory Warehouse Corporation ("Burlington"), and Yavneh Minyan of Flatbush ("YMF," together, "Settling Defendants") — have now entered into substantially similar settlements, for which Plaintiffs, without opposition, seek: (i) preliminary approval of their settlement agreements; (ii) certification of settlement classes and collectives; (iii) appointment of Faruqi and Faruqi, LLP (the "Firm") as class counsel; (iv) approval of the proposed notice of settlement and claim forms; and (v) approval of the proposed schedule for final settlement approval and setting of a date for a fairness hearing. (Dkt. Nos. 1319–1320-41 (the "Motion")). Plaintiffs and the Settling Defendants consented to Magistrate Judge jurisdiction with respect to the Motion. (Dkt. Nos. 1329–38).

For substantially the same reasons as with prior settlements in this action and as explained further below, the Motion is **GRANTED**.

## II. BACKGROUND

We presume the reader's familiarity with the factual and procedural background, which we set forth in Piney I and incorporate by reference. See 2025 WL 2451011, at *1–3. We set forth only those facts necessary to analyze the Motion.

WL 3089894 (S.D.N.Y. Nov. 5, 2025) ("Piney II"); Piney v. City of New York, No. 25 Civ. 671 (DEH) (SLC), 2025 WL 2451011 (S.D.N.Y. Aug. 26, 2025) ("Piney I").

### A. Settlement Terms

Plaintiffs have submitted for the Court's review the settlement agreements with the Settling Defendants. (Dkt. Nos. 1320-1 (the "MIR Agreement"); 1320-5 (the "COTC Agreement"); 1320-9 (the "BPC Agreement"); 1320-13 (the "34th Street Agreement"); 1320-17 (the "Target Agreement,"); 1320-22 (the "Levy Agreement"); 1320-26 (the "RSA Agreement"); 1320-30 (the "YIFH Agreement"); 1320-24 (the "Burlington Agreement"); 1320-38 (the "YMF Agreement," together, the "Agreements").[4] The Agreements are substantially similar to the settlement agreements the Court has previously approved, with material differences noted below.

#### 1. The Settlement Classes and Collectives

The Agreements define the settlement classes, class periods, and collectives as follows:

| Agreement | Settlement Class & Class Period | Collective[5] |
|---|---|---|
| MIR | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for MIR [] in New York State, through the PDP, at any time from January 23, 2019 through December 23, 2024, and who do not opt out of the Settlement"[6] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for MIR [] in New York State, through the PDP, at any time from January 23, [2022] through December 23, 2024," and who have filed a |

[4] Capitalized terms not otherwise defined in this Opinion and Order have the same meaning as in the Agreements.

[5] Although each of the Agreements defines the respective Settlement Class and Collective with the same language, consistent with the FLSA, we presume the parties intended to define each Collective (1) not to include those "who do not opt out of the Settlement (Dkt. Nos. 1320-1 § III.A; 1320-5 § III.A; 1320-9 § III.A; 1320-13 § III.A; 1320-17 §§ 1.6, 1.8, 1.9; 1320-22 § III.A; 1320-26 § III.A; 1320-30 § III.A; 1320-34 § III.A; 1320-38 § III.A), but rather those who opted in by filing a Consent to Join Form in the Action or submitting a Claim Form, and (2) to extend no more than three years, not six years, before Plaintiffs filed this action. See 29 U.S.C. § 255(a). (Dkt. Nos. 1; 1320-1 §§ I.D.b.i (defining Authorized Claimant), II.B (explaining how Authorized Claimants release Federal Claims); 1320-5 §§ I.D.b.i, II.B; 1320-9 §§ I.D.b.i, II.B; 1320-13 §§ I.D.b.i, II.B; 1320-17 §§ 1.19, 1.32, 2.8; 1320-22 §§ I.D.b.i, II.B; 1320-26 §§ I.D.b.i, II.B; 1320-30 §§ I.D.b.i, II.B; 1320-34 §§ I.D.b.i, II.B; 1320-38 §§ I.D.b.i, II.B). Below, we conform the definition of the Collectives accordingly. (See § IV.2, infra). See Piney VIII, 2026 WL 2719732, at *2 n.6.

[6] Dkt. No. 1320-1 § III.A.

| | | |
|---|---|---|
| | | Consent to Join Form in the Action and/or who submit a Claim Form[7] |
| COTC | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for COTC in New York State, through the PDP, at any time from January 23, 2019 through May 8, 2026, and who do not opt out of the Settlement."[8] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for COTC in New York State, through the PDP, at any time from January 23, [2022] through May 8, 2026," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[9] |
| BPC | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [BPC] in New York State, through the PDP, at any time from January 23, 2019 through March 2, 2025, and who do not opt out of the Settlement"[10] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [BPC], through the PDP, at any time from January 23, [2022] through March 2, 2025," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[11] |
| 34th Street | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains and Inspectors who worked for 34th Street in New York State, through the PDP, at any time from January 23, 2019 through April 28, 2025, and who do not opt out of the Settlement"[12] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains and Inspectors who worked for 34th Street in New York State, through the PDP, at any time from January 23, [2022] through April 28, 2025," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[13] |
| Target | "all current and former Officers, Detectives, Sergeants, and Lieutenants, Captains, and Inspectors (together referred to as 'Officers') of the NYPD, or the authorized legal representatives of such Officers, who worked paid | "all current and former Officers, Detectives, Sergeants, and Lieutenants, Captains, and Inspectors (together referred to as 'Officers') of the NYPD, or the authorized legal representatives of such Officers, who worked paid |

[7] Dkt. No. 1320-1 § III.A.
[8] Dkt. No. 1320-5 § III.A.
[9] Dkt. No. 1320-5 § III.A.
[10] Dkt. No. 1320-9 § III.A.
[11] Dkt. No. 1320-9 § III.A.
[12] Dkt. No. 1320-13 § III.A.
[13] Dkt. No. 1320-13 § III.A.

| | | |
|---|---|---|
| | details at a Target location in New York State during [January 23, 2019 through August 31, 2025] who are included on the Class List[14] and who do not opt out of the Settlement"[15] | details at a Target location in New York State during [January 23, [2022] through August 31, 2025] who are included on the Class List," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[16] |
| Levy | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked at Levy in New York State, through the PDP, at any time from January 23, 2019 through September 7, 2025, and who do not opt out of the Settlement"[17] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked at Levy in New York State, through the PDP, at any time from January 23, [2022] through September 7, 2025," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[18] |
| RSA | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [RSA] in New York State, through the PDP, at any time from January 23, 2019 through October 12, 2024, and who do not opt out of the Settlement"[19] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [RSA] in New York State, through the PDP, at any time from January 23, [2022] through October 12, 2024," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[20] |
| YIFH | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [YIFH] in New York State, through the PDP, at any time from January 23, 2019 through May 10, 2023, and who do not opt out of the Settlement"[21] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [YIFH] in New York State, through the PDP, at any time from January 23, [2022] through May 10, 2023" and who have filed a Consent to |

[14] See Dkt. No. 1320-17 § 1.8 (defining Class List).
[15] Dkt. No. 1320-17 § 1.6.
[16] Dkt. No. 1320-17 §§ 1.6, 1.8, 1.9, 2.8(A).
[17] Dkt. No. 1320-22 § III.A.
[18] Dkt. No. 1320-22 § III.A.
[19] Dkt. No. 1320-26 § III.A.
[20] Dkt. No. 1320-26 § III.A.
[21] Dkt. No. 1320-30 § III.A.

| | | |
|---|---|---|
| | | Join Form in the Action and/or who submit a Claim Form[22] |
| Burlington | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for, or provided services to, Burlington through the PDP in New York State at any time from January 23, 2019 through February 13, 2025, and who do not opt of the Settlement"[23] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for, or provided services to, Burlington through the PDP in New York State at any time from January 23, [2022] through February 13, 2025," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[24] |
| YMF | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [YMF] in New York State, through the PDP, at any time from January 23, 2019 through April 26, 2025, and who do not opt out of the Settlement"[25] | "all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for [YMF] in New York State, through the PDP, at any time from January 23, [2022] through April 26, 2025," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form[26] |

## 2. Settlement Amounts, Settlement Administrator, and Releases

The Settling Defendants are to make gross settlement payments in the amounts below (the "Gross Settlement Fund" or "GSF"), from which is to be deducted (i) Plaintiffs' counsel's attorneys' fees and costs, and (ii) service payments to the Plaintiffs who served as representatives of each Settlement Class, to arrive at each "Net Allocation Fund" ("NAF"):

| Agreement | GSF | NAF | Service Payments |
|---|---|---|---|
| MIR | $49,575.00[27] | $25,050.00[28] | $2,500.00 x 2[29] |

[22] Dkt. No. 1320-30 § III.A.
[23] Dkt. No. 1320-34 § III.A.
[24] Dkt. No. 1320-34 § III.A.
[25] Dkt. No. 1320-38 § III.A.
[26] Dkt. No. 1320-38 § III.A.
[27] Dkt. No. 1320-1 § I.A.
[28] Dkt. No. 1320-1 § I.D.
[29] The MIR Service Payment Recipients are James Divino and Alexis Yanez. (Dkt. No. 1320-1 § I.C).

| | | | |
|---|---|---|---|
| COTC | $20,604.16[30] | $11,236.11[31] | $1,000.00 x 2[32] |
| BPC | $180,394.93[33] | $102,763.29[34] | $1,500.00 x 5 & $1,000.00 x 5[35] |
| 34th Street | $185,778.48[36] | $106,852.32[37] | $2,000.00 x 6[38] |
| Target | $3,750,000.00[39] | $2,327,500.00[40] | $6,500.00 x 15[41] |
| Levy | $20,196.09[42] | $11,464.06[43] | $1,500.00 x 1[44] |
| RSA | $14,332.50[45] | $7,055.00[46] | $1,000.00 x 2[47] |
| YIFH | $13,834.53[48] | $7,223.02[49] | $1,500.00 x 1[50] |
| Burlington | $1,187,818.16[51] | $762,878.77[52] | $3,000.00 x 8[53] |

---

[30] Dkt. No. 1320-5 § I.A.

[31] Dkt. No. 1320-5 § I.D.

[32] The COTC Service Payment Recipients are John Cannon and Wang Ting. (Dkt. No. 1320-5 § I.C).

[33] Dkt. No. 1320-9 § I.A.

[34] Dkt. No. 1320-9 § I.D.

[35] The BPC Service Payment Recipients are Arturo Delgado, Anna Garlinska, Tuhin Kahn, Wang Ting, and Alexis Yan[e]z (receiving $1,500.00 each), and Sophia Daly, Devin Dawkins, M. Mostayen Faysal, Tamara Lauzier, and Sudan Osorio (receiving $1,000.00 each). (Dkt. No. 1320-9 § I.C).

[36] Dkt. No. 1320-13 § I.A.

[37] Dkt. No. 1320-13 § I.D.

[38] The 34th Street Service Payment Recipients are Sophia Daly, Devon Dawkins, Arturo Delgado, Anna Garlinska, Jose Martinez, and Wang Ting. (Dkt. No. 1320-13 § I.C).

[39] Dkt. No. 1320-17 §§ 1.21, 3.1.A.

[40] Dkt. No. 1320-17 § 3.1(E). Under the Target Agreement, the NAF is comprised of "two sub-funds[,]" the FLSA Net Settlement Fund, comprised of 25% of the NAF, and the State Net Settlement Fund, comprised of 75% of the NAF. (Dkt. No. 1320-17 § 3.1.E.i). The Target Agreement further provides that each FLSA Authorized Claimant shall receive at least $25 from the FLSA Net Settlement Fund, and each Fully Participating Claimant shall receive at least $25 from the FLSA Net Settlement Fund and at least $25 from the State Net Settlement Fund. (Dkt. No. 1320-17 §§ 1.19, 1.20, 3.1.E.iv).

[41] The Target Service Payment Recipients are Michael Miron, James Divino, Jose Martinez, Michael Kmiotek, Alexis Yanez, Wang Ting, Sophia Daly, Anna Garlinska, Desmond Grant, Tuhin Khan, Tamara Lauzier, Sudan Osorio, Devon Dawkins, M. Mostayen Faysal, and Charlie Ruiz-Reyes. (Dkt. No. 1320-17 §§ 1.35, 3.1.C).

[42] Dkt. No. 1320-22 § I.A.

[43] Dkt. No. 1320-22 § I.D.

[44] The Levy Service Payment Recipient is Tamara Lauzier. (Dkt. No. 1320-22 § I.C).

[45] Dkt. No. 1320-26 § I.A.

[46] Dkt. No. 1320-26 § I.D.

[47] The RSA Service Payment Recipients are M. Mostayen Faysal and Michael Miron. (Dkt. No. 1320-26 § I.C).

[48] Dkt. No. 1320-30 § I.A.

[49] Dkt. No. 1320-30 § I.D.

[50] The YIFH Service Payment Recipient is Arturo Delgado. (Dkt. No. 1320-30 § I.C).

[51] Dkt. No. 3120-34 § I.A.

[52] Dkt. No. 1320-34 § I.D.

[53] The Burlington Service Payment Recipients are John Cannon, Devon Dawkins, M. Mostayen Faysal, Anna Garlinska, Tamara Lauzier, Sudan Osorio, Charlie Ruiz-Reyes, and Wang Ting. (Dkt. No. 1320-34 § I.C).

| | | | |
|---|---|---|---|
| YMF | $9,102.21[54] | $4,068.14[55] | $750.00 x 2[56] |

The members of the Settlement Classes will each recover approximately 65% of their potential wage damages. (Dkt. Nos. 1319 at 1; 1320 ¶¶ 18–27). Under the Agreements, each Class Member's share of the NAF is calculated:

> by dividing the total amount allegedly owed to the Class Member for work performed for [the Settling Defendants] through the [PDP] by the total amount owed to all Class Members for such work. This percentage is then multiplied by the NAF to determine the Individual Settlement Payment each Class Member is eligible to receive. The formula is based on actual time and payroll data for each Class Member.

(Dkt. Nos. 1320-1 § I.D.a; 1320-5 § I.D.a; 1320-9 § I.D.a; 1320-13 § I.D.a; 1320-22 § I.D.a; 1320-26 § I.D.a; 1320-30 § I.D.a; 1320-34 § I.D.a; 1320-38 § I.D.a).[57]

To receive their Individual Settlement Payment, each Class Member must become an "Authorized Claimant" by either (i) submitting a Consent to Join Form before the entry of this Order and not opting out, or (ii) submitting a Claim Form before the "Bar Date." (Dkt. Nos. 1320-1 § I.D.b.i; 1320-5 § I.D.b.i; 1320-9 § I.D.b.i; 1320-13 § I.D.b.i; 1320-17 §§ 1.19, 2.8, 3.1.E; 1320-22 § I.D.b.i; 1320-26 § I.D.b.i; 1320-30 § I.D.b.i; 1320-34 § I.D.b.i; 1320-38 § I.D.b.i). The Bar Date will be:

---

[54] Dkt. No. 1320-38 § I.A.

[55] Dkt. No. 1320-38 § I.D.

[56] The YMF Service Payment Recipients are Randy Chow and Tamara Lauzier. (Dkt. No. 1320-38 § I.C).

[57] The Target Settlement words this calculation slightly differently, but for the same result: "Each Class Member's share of the Total Net Allocation Fund . . . shall be established in advance of distribution of the Settlement Checks by dividing the total amount allegedly owed to the Class Member for paid details worked at Target locations, by the total amount owed to all Class Members for paid details worked at Target locations. This percentage will then be multiplied by the Total Net Allocation Fund to determine the Individual Settlement Amount to each Class Member." (Dkt. No. 1320-17 § 1.36). As noted above, the Target Agreement contemplates dividing each Class Member's Individual Settlement Amount into two parts, 25% to the Class Member's allocation of the FLSA Net Settlement Fund, and 75% to the Class Member's allocation of the State Net Settlement Fund. (Id.; see id. § 3.1.E).

> (i) sixty (60) days from the date of the initial mailing [of the Settlement Notice and Claim Form] or as otherwise set by the Court; and (ii) an additional fifteen (15) days for any Class Members who did not receive or did not timely receive the Settlement Notice, or were unable to return the Claim Form within sixty (60) days due to such factors as military service, medical issues, or other extraordinary circumstances.

(Dkt. Nos. 1320-1 § III.B.a; 1320-5 § III.B.a; 1320-9 § III.B.a; 1320-13 § III.B.a; 1320-22 § III.B.a; 1320-26 § III.B.a; 1320-30 § III.B.a; 1320-34 § III.B.a; 1320-38 § III.B.a).[58]

Under the Agreements, in exchange for their Individual Settlement Payments, each Class Member who does not timely opt out releases the respective Settling Defendant from all wage-and-hour claims under New York State or New York City law arising from the Class Member's provision of services for the Settling Defendant in New York State through the PDP (collectively, the "Released State Law Claims") for the following time periods: (i) for MIR, from January 23, 2019 through December 23, 2024 (Dkt. No. 1320-1 § II.A); (ii) for COTC, from January 23, 2019 through May 8, 2026 (Dkt. No. 1320-5 § II.A); (iii) for BPC, from January 23, 2019 through March 2, 2025 (Dkt. No. 1320-9 § II.A); (iv) for 34th Street, from January 23, 2019 through April 28, 2025 (Dkt. No. 1320-13 § II.A); (v) for Target, from "the beginning of time through August 31, 2025" (Dkt. No. 1320-17 § 1.33);[59] (vi) for Levy, from January 23, 2019 through September 7, 2025 (Dkt. No. 1320-22 § II.A; (vii) for RSA, from January 23, 2019 through October 12, 2024 (Dkt. No. 1320-26 § II.A); (viii) for YIFH, from January 23, 2019 through May 10,

---

[58] The Target Agreement uses similar language but permits the parties to modify the date in writing. (Dkt. No 1320-17 § 1.5).

[59] The time period of the Released State Law Claims in the Target Agreement is permissible because it is limited to New York State and City law claims "that relate to paid details that Plaintiffs worked at Target locations in New York State." (Dkt. No. 1320-17 § 1.33). See Hernandez v. El Azteca y El Guanaco Rest Corp., No. 20 Civ. 10316 (ER), 2021 WL 5847648, at *3 (S.D.N.Y. Dec. 9, 2021) (approving release in FLSA settlement agreement that "appropriately discharge[d] only claims and causes of action which have accrued from the beginning of time through the date that the parties executed the agreement, relating specifically to the claims in th[e] action").

2023 (Dkt. No. 1320-30 § II.A; (ix) for Burlington, from "the beginning of time through February 13, 2025" (Dkt. No. 1320-34 § II.A);[60] and (x) for YMF, from January 23, 2019 through April 26, 2025. (Dkt. No. 1320-38 § II.A). In addition, all Authorized Claimants — i.e., Class Members who submitted a Consent to Join Form before the entry of this Order and did not opt out, or who timely submitted Claim Forms — also release all federal (including FLSA) wage-and-hour claims against the respective Settling Defendants that arise from the Class Member's provision of services in New York State through the PDP (the "Released Federal Law Claims") as follows: (i) for MIR, from January 23, 2022 through December 23, 2024 (Dkt. No. 1320-1 § II.B); (ii) for COTC, from January 23, 2022 through May 8, 2026 (Dkt. No. 1320-5 § II.B); (iii) for BPC, from January 23, 2022 through March 2, 2025 (Dkt. No. 1320-9 § II.B); (iv) for 34th Street, from January 23, 2022 through April 28, 2025 (Dkt. No. 1320-13 § II.B); (v) for Target, from the beginning of time through August 31, 2025 (Dkt. No. 1320-17 § 1.32); (vi) for Levy, from January 23, 2022 through September 7, 2025 (Dkt. No. 1320-22 § II.B); (vii) for RSA, from January 23, 2022 through October 12, 2024 (Dkt. No. 1320-26 § II.B); (viii) for YIFH, from January 23, 2022 through May 10, 2023 (Dkt. No. 1320-30 § II.B); (ix) for Burlington, from the beginning of time through February 13, 2025 (Dkt. No. 1320-34 § II.B); and (x) for YMF, from January 23, 2022 through April 26, 2025 (Dkt. No. 1320-38 § II.B). In addition, the Target Service Payment Recipients will release Target from "any and all claims of any kind that arise from, are based on, or are in any way related or incidental to the paid details that [they] worked at any

---

[60] The time period of the Released State Law Claims in the Burlington Agreement is permissible for the same reasons as the Target Agreement. (See n.59, supra).

Target location in New York State under federal, state, or local law or common law . . . ." (Dkt. No. 1320-17 § 4.A).[61]

The Agreements contemplate the appointment of Analytics Consulting LLC as the Settlement Administrator (the "Administrator") to administer the Agreements. (Dkt. Nos. 1320-1 § I.E; 1320-5 § I.E; 1320-9 § I.E; 1320-13 § I.E; 1320-17 §§ 1.2, 2.3;[62] 1320-22 § I.E; 1320-26 § I.E; 1320-30 § I.E; 1320-34 § I.E; 1320-38 § I.E). The Administrator's fee will not exceed: $280.00 under the MIR Agreement; $750.00 under the COTC Agreement; $3,000.00 under the BPC Agreement; $2,000.00 under the 34th Street Agreement; $32,210.00 under the Target Agreement; $280.00 under the Levy Agreement; $750.00 under the RSA Agreement; $750.00 under the YIFH Agreement; $13,500.00 under the Burlington Agreement; and $350.00 under the YMF Agreement, and under each of the Agreements will be paid out of the GSF, unless the GSF is insufficient, in which case the Settling Defendant will pay the Administrator fee up to the caps stated above. (Dkt. Nos. 1320-1 § I.E; 1320-5 § I.E; 1320-9 § I.E; 1320-13 § I.E; 1320-17 §§ 1.3, 1.30, 3.1.B; 1320-22 § I.E; 1320-26 § I.E; 1320-30 § I.E; 1320-34 § I.E; 1320-38 § I.E).

### 3. Notice and Opportunities to Opt-Out and Object

The Agreements include notices that inform members of the Settlement Classes of their opportunity to object or opt out, appear at the Fairness Hearing, and submit a Claim Form. (Dkt. Nos. 1320-2 (the "MIR Notice"); 1320-6 (the "COTC Notice"); 1320-10 (the "BPC Notice"); 1320-14 (the "34th Street Notice"); 1320-18–1320-19 (the "Target Notices"); 1320-23

---

[61] This provision notes that the Target Service Payment Recipients have "not made any claims or allegations related to discrimination, or harassment. . . ." (Dkt. No. 1320-17 § 4.A). The Court has previously approved a similar general release as to Service Payment Recipients. See Piney IV, 2026 WL 1345920, at *3 & n.7; Piney III, 2026 WL 937059, at *3 & n.7.

[62] The Target Agreement details the responsibilities of the Administrator. (Dkt. No. 1320-17 § 2.4).

(the "Levy Notice"); 1320-27 (the "RSA Notice"); 1320-31 (the "YIFH Notice"); 1320-35 (the "Burlington Notice"); 1320-39 (the "YMF Notice," and together, the "Notices")). The Agreements contemplate that, following entry of this Opinion and Order, the Administrator will send the Notices and accompanying Claim Forms to members of the Settlement Classes. (Dkt. Nos. 1320-1 § III.B; 1320-5 § III.B; 1320-9 § III.B; 1320-13 § III.B; 1320-17 §§ 1.39, 2.4.A, 2.7.A, 2.7.B; 1320-22 § III.B; 1320-26 § III.B; 1320-30 § III.B; 1320-34 § III.B; 1320-38 § III.B). As noted above, Class Members will then have 60 days to return a completed Claim Form to the Administrator, and only those Class Members who timely do so, or who submit a Consent to Join Form and do not otherwise opt out, will be deemed Authorized Claimants. (See § II.A.2, supra). Class Members who choose to opt out must mail to the Administrator by the Bar Date a written, signed statement of their intention to opt out. (Dkt. Nos. 1320-1 § III.C; 1320-5 § III.C; 1320-9 § III.C; 1320-13 § III.C; 1320-17 §§ 1.26, 2.4.M, 2.9; 1320-22 § III.C; 1320-26 § III.C; 1320-30 § III.C; 1320-34 § III.C; 1320-38 § III.C).

The Court will hold a Fairness Hearing to hear any timely and properly submitted objections to the Agreements, make a final determination as to the fairness, adequacy, and reasonableness of the Agreements, fix the amounts of attorneys' fees and costs to Class Counsel and the Service Payments, and, if appropriate, enter final judgment. (Dkt. Nos. 1320-1 §§ III.B, D; 1320-2 at 6; 1320-5 §§ III.B, D; 1320-6 at 6; 1320-9 §§ III.B, D; 1320-10 at 6; 1320-13 §§ III.B, D; 1320-14 at 6; 1320-17 §§ 1.14, 2.10, 2.11; 1320-18 at 7; 1320-19 at 6; 1320-22 §§ III.B, D; 1320-23 at 6; 1320-26 §§ III.B, D; 1320-27 at 6; 1320-30 §§ III.B, D; 1320-31 at 6; 1320-34 §§ III.B, D; 1320-35 at 6; 1320-38 §§ III.B, D; 1320-39 at 6). Class Members who seek to appear and object to the Agreements at the Fairness Hearing must first mail to the Administrator by the

Bar Date a statement including "all reasons for the objection and any supporting documentation[,]" to which the parties may respond before the Fairness Hearing; the Court will not consider any objections not timely submitted in writing. (Dkt. Nos. 1320-1 § III.D; 1320-5 § III.D; 1320-9 § III.D; 1320-13 § III.D; 1320-17 §§ 1.24, 2.4.D, 2.10; 1320-22 § III.D; 1320-26 § III.D; 1320-30 § III.D; 1320-34 § III.D; 1320-38 § III.D).

**4. Other Provisions**

The Agreements are governed by New York law and contemplate that the Court will retain jurisdiction over their implementation. (Dkt. Nos. 1320-1 §§ III.P, Q; 1320-5 §§ III.P, Q; 1320-9 §§ III.P, Q; 1320-13 §§ III.P, Q; 1320-17 §§ 5.13, 5.14, 5.20; 1320-22 §§ P, Q; 1320-26 §§ R, S; 1320-30 §§ R, S; 1320-34 §§ N, O; 1320-38 §§ Q, R).

The Target Agreement contains additional terms not present in the other Agreements. First, the Target Agreement provides for a "Reserve Fund" of $25,000.00 "to make payments to Class Members whose Claim[] Forms are untimely or invalid but are otherwise accepted by the Parties or to otherwise rectify any errors or omissions in administering" the Target Agreement. (Dkt. No. 1320-17 §§ 1.34, 3.1.D). Second, the Target Agreement provides Target "the option to void the Agreement if over fifteen percent (15%) of the Class Members opt-out of the Settlement." (Dkt. No. 1320-17 § 2.13). Third, as noted above, the Target Agreement divides the NAF into two parts, 25% to the FLSA Net Settlement Fund and 75% to the State Net Settlement Fund. (Dkt. No. 1320-17 § 3.1.E). Fourth, the Target Agreement contains the broader release by the Service Payment Recipients. (Dkt. No. 1320-17 § 4.A).

## III. DISCUSSION

### A. Legal Standards

We incorporate by reference the legal standards set forth in Piney III. See 2026 WL 937059, at *4–6.[63]

### B. Application

#### 1. Preliminary Approval & Certification of Settlement Classes

Considering the procedural and substantive factors in Rules 23(a), 23(b)(3), and 23(e)(2) as well as the Grinnell and Wolinsky factors, the Court grants both preliminary approval of the Agreements as fair, reasonable, and adequate, as well as provisional certification of the Settlement Classes and final certification of the Collectives. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

##### a. Rule 23(a)

The Settlement Classes satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a). As to numerosity, the parties estimate that the MIR Settlement Class consists of 66 members, the COTC Settlement Class consists of 109 members, the BPC Settlement Class consists of 477 members, the 34th Street Settlement Class consists of 311 Class Members, the Target Settlement Class consists of 2,858 Class Members, the Levy Settlement Class consists of 52 Class Members, the RSA Settlement Class consists of 111 Class Members, the YIFH Settlement Class consists of 109 Class Members, the Burlington Class consists of 936 Class Members, and the YMF Settlement Class consists of 69

---

[63] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

Class Members. (Dkt. Nos. 1319; 1320 ¶ 8). These numbers exceed 40 members, which is the number at which "numerosity is presumed" in the Second Circuit, so numerosity is satisfied for each of the Agreements. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

As to commonality, the primary issues in this case — (i) whether the Settling Defendants employed Plaintiffs and the Class Members; (ii) whether the Settling Defendants were "hiring parties" with respect to Plaintiffs and the Class Members; (iii) whether Plaintiffs and the Class Members were "freelance workers;" and (iv) whether the Settling Defendants timely paid Plaintiffs and the Class Members their wages — are common to the Settlement Classes. (See Dkt. No. 1319 at 5 (referencing Dkt. No. 781 at 14–15)).

As to typicality, each Class Member's claim arises from the same course of events, i.e., their work in the PDP for the Settling Defendants, who subjected the Class Members to uniform policies and failed to pay them timely wages. (See Dkt. No. 1319 at 5 (referencing Dkt. No. 781 at 17)). See Barrows v. Becerra, 24 F.4th 116, 131–32 (2d Cir. 2022) (finding typicality satisfied where each class member's claim arose from the same course of events and presented similar liability issues).

As to adequacy, Plaintiffs do not have any interests that conflict with other Officers and the Service Payment Recipients in particular have "worked extensively on behalf of" the Settlement Classes to achieve the settlements memorialized in the Agreements. (See Dkt. Nos. 1319 at 5 (referencing Dkt. No. 781 at 17–18); 1320 ¶¶ 29–32). In addition, the Firm has extensive experience representing employees in federal wage and hour class actions in the Second Circuit courts. (Dkt. No. 1320 ¶¶ 3–4). See Piney I, 2025 WL 2451011, at *10 (finding the Firm adequate).

Accordingly, all four elements of Rule 23(a) are met for each of the Settlement Classes.

**b. Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met as to the Agreements. Questions common to all Class Members — including whether the Settling Defendants maintained improper compensation practices and failed to provide adequate wage notices and statements — are subject to generalized proof and predominate over any potential individual issues. See In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013). In addition, a class settlement is a superior method for the fair and efficient adjudication of the claims of the Class Members, many of whom have already opted in to this action and none of whom have filed separate actions against the Settling Defendants. (Dkt. No. 1320 ¶¶ 11, 31).

**c. Ascertainability**

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries." In re Petrobras Sec., 862 F.3d 259, 264 (2d Cir. 2017). The Settlement Classes are easily ascertainable given the parties' representations about the numbers of Class Members, which are based on "comprehensive and detailed time records and payroll data[.]" (Dkt. No. 1320 ¶ 14). See Amigon v. Safeway Constr. Enters., LLC, No. 20 Civ. 5222 (PK), 2024 WL 5040436, at *8 (E.D.N.Y. Dec. 9, 2024) (finding settlement class was ascertainable where class members were identifiable from defendants' wage data records).

**d. Rule 23(e)(2)**

**i. Adequate representation (Rule 23(e)(2)(A))**

As found above, Plaintiffs are adequate class representatives, and their interests are not antagonistic to other Class Members. (See § III.B.1.a, supra). The Firm's extensive experience in federal wage-and-hour class actions has been an advantage in advocating for the Class Members and successfully negotiating the Agreements. (Dkt. No. 1320 ¶¶ 3–6). See Piney I, 2025 WL 2451011, at *10. Thus, this factor weighs in favor of preliminary approval of the Agreements and naming the Firm as Class Counsel.

**ii. Arm's length negotiation (Rule 23(e)(2)(B))**

Courts apply a "presumption of fairness" to a class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). Plaintiffs and the Settling Defendants, who were each represented by capable counsel experienced in wage and hour litigation, entered into the Agreements after exchanging the Officers' employment records as well as numerous demands and offers during direct settlement negotiations, which were ultimately successful. (Dkt. No. 1320 ¶¶ 5–6, 9, 12–17). This factor therefore also weighs in favor of preliminary approval.

**iii. Adequacy of relief (Rule 23(e)(2)(C))**

In determining whether the Agreements provide adequate relief to the Settlement Classes, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees,

including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Only the first three factors are pertinent here.

The first factor — the "costs, risks, and delay of trial and appeal" — "subsumes several Grinnell factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 Civ. 4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021). Courts favor a settlement that "results in substantial and tangible present recovery, without the attendant risk and delay of trial." Sykes v. Harris, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016). "Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent [a s]ettlement, continued litigation would have required extensive time and expense." Garland v. Cohen & Krassner, No. 08 Civ. 4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011). "In considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." Mikhlin, 2021 WL 1259559, at *5.

Here, the TAC asserts claims under federal and state statutes, the Settling Defendants' liability for which remains in dispute. (See Dkt. Nos. 631; 1320-1 at 2 (MIR denying Plaintiffs' allegations); 1320-5 at 2 (COTC denial); 1320-9 at 2 (BPC denial); 1320-13 at 2 (34th Street denial); 1320-17 at 2–3 (Target denial); 1320-22 at 2 (Levy denial); 1320-26 (RSA denial); 1320-30 (YIFH denial); 1320-34 (Burlington denial); 1320-38 (YMF denial)). Plaintiffs and the Settling Defendants exchanged some information about the Officers' employment, but a case management plan setting a formal discovery schedule has not yet been entered. (See Dkt. Nos. 613; 1320 ¶¶ 9, 12–15). Plaintiffs' attempt to certify a collective action was unresolved.

(See Dkt. Nos. 54–78; 127; 196; 1320 ¶ 10). Further litigation would inevitably involve additional expense and delay, extensive fact discovery, and motion practice. (See Dkt. No. 1319 at 5 (referencing Dkt. No. 781 at 29–30)). Given these challenges, the Settlement Classes faced substantial risks in obtaining the maximum possible recovery. (See id.) The Agreements, however, will provide Class Members with a recovery of 65% of potential damages. (Dkt. Nos. 1319 at 1; 1320 ¶¶ 18–27). This recovery tracks the percentage that Plaintiffs have recovered in the other Piney settlements, see, e.g., Piney VIII, 2026 WL 2719732, at *3, and is comparable to the recoveries in other wage-and-hour settlements that courts within the Second Circuit have approved. See, e.g., Bondi v. DeFalco, No. 17 Civ. 5681 (KMK), 2020 WL 2476006, at *4 (S.D.N.Y. May 13, 2020) (finding that FLSA settlement that provided plaintiffs with recovery of two-thirds of their maximum damages was reasonable); Khan v. Dunwoodie Gas Station, Inc., No. 19 Civ. 5581 (KMK), 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) (same); see also Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding that FLSA settlement that provided plaintiffs with recovery of 50% of their maximum damages was reasonable). The Agreements therefore represent favorable outcomes for the Settlement Classes, particularly when balancing the parties' claims and defenses against the risks and uncertainties of continued litigation. The first Rule 23(e)(2)(C) factor, and Grinnell factors (1), (4), (5), and (6) therefore weigh in favor of preliminary approval.

In evaluating the second Rule 23(e)(2)(C) factor, we must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "A plan for allocating settlement funds need not be perfect," and "need only have a reasonable, rational

basis, particularly if recommended by experienced and competent class counsel." Mikhlin, 2021 WL 1259559, at *6. The Agreements provide for creation of the NAFs, from which the Administrator will (i) determine each Class Member's proportionate share of the NAFs using the same, or similar, formula, and (ii) pay each Authorized Claimant by check. (See Dkt. Nos. 1320-1 §§ I.D, G; 1320-5 §§ I.D, G; 1320-9 §§ I.D, G; 1320-13 §§ I.D, G; 1320-17 §§ 1.38, 3.3; 1320-22 §§ I.D, G; 1320-26 §§ I.D, G; 1320-30 §§ I.D, G; 1320-34 §§ I.D, G; 1320-38 §§ I.D, G). The Notices describe the terms of the Agreements and provide clear explanations of how to file a claim form, opt out, or object. (See Dkt. Nos. 1320-2; 1320-6; 1320-10; 1320-14; 1320-18; 1320-19; 1320-23; 1320-27; 1320-31; 1320-35; 1320-39). The second Rule 23(e)(2)(C) factor thus also weighs in favor of preliminary approval.

The third Rule 23(e)(2)(C) factor contemplates that, before final approval, the Court "will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." Hart v. BHH, LLC, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). "One method for calculating attorneys' fees, which is the trend in this Circuit, is the percentage of the fund method." Amigon, 2024 WL 5040436, at *5. "Under this method, the Court considers whether the requested fees are reasonable as compared to the settlement amount[,]" considering "fees awarded in similar cases, the risks to [c]lass [c]ounsel, and the lodestar calculation." Id. Here, Plaintiffs have not yet applied for attorneys' fees and costs, but as to fees, the Firm has agreed to seek a maximum of one-third of each of the GSFs. (Dkt. Nos. 1320-1 § I.B; 1320-5 § I.B; 1320-9 § I.B; 1320-13 § I.B; 1320-17 § 3.1.B; 1320-22 § I.B; 1320-26 § I.B; 1320-30 § I.B; 1320-34 I.B; 1320-38 § I.B). This "is a reasonable baseline" consistent with fee awards in this and in other wage and hour class action settlements in the Second Circuit. See, e.g., Piney VIII, 2026 WL 2719732, at *7 (contemplating

comparable fee and cost awards in five other settlements); Pickard v. OnSite Facility Servs., LLC, No. 22 Civ. 207 (AMN) (ML), 2023 WL 7019256, at *10 (N.D.N.Y Oct. 25, 2023) (collecting cases); see Medina v. NYC Harlem Foods Inc., No. 21 Civ. 1321 (VSB), 2024 WL 230745, at *6 (S.D.N.Y. Jan. 22, 2024) (noting that one-third contingency fees in FLSA cases are "routinely approved" in the Second Circuit). While the Court reserves judgment pending receipt of a formal application for attorneys' fees and costs, (see Dkt. No. 1320 ¶ 33), the third factor does not preclude preliminary approval.

Accordingly, all three applicable Rule 23(e)(2)(C) factors, and the corresponding Grinnell factors, weigh in favor of preliminary approval.

**iv. Equitable treatment (Rule 23(e)(2)(D))**

In evaluating whether the Agreements "treat[] class members equitably relative to each other[,]" Fed. R. Civ. P. 23(e)(2)(D), the Court may consider "whether the apportionment of relief among class members takes appropriate account of the differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Id. advisory committee's note to 2018 amendment. "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." Moses v. N.Y. Times Co., 79 F.4th 235, 245 (2d Cir. 2023). "In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." Guippone v. BH S&B Holdings LLC, No. 09 Civ. 1029 (CM), 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016).

As we have found, the method of distribution in the Agreements appears equitable and reasonable. (See § III.B.1.d.iii, supra). Other than the service awards, the proposed method of calculation and distribution of the NAFs treats all Class Members uniformly by awarding each Authorized Claimant a proportionate amount of the hours they worked in the PDP based on actual compensation and payroll data. (Dkt. Nos. 1320-1 § I.D.a; 1320-5 § I.D.a; 1320-9 § I.D.a; 1320-13 § I.D.a; 1320-17 § 1.36; 1320-22 § I.D.a; 1320-26 § I.D.a; 1320-30 § I.D.a; 1320-34 § I.D.a; 1320-38 § I.D.a). In addition, the service awards are a reasonable amount in comparison to the efforts of the Service Payment Recipients, (see Dkt. Nos. 1320 ¶¶ 13, 29; 1320-1 § I.C; 1320-5 § I.C; 1320-9 § I.C; 1320-13 § I.C; 1320-17 §§ 1.35, 3.1.C; 1320-22 § I.C; 1320-26 § I.C; 1320-30 § I.C; 1320-34 § I.C; 1320-38 § I.C), and consistent with the other Piney settlements and with awards that other courts in this District have approved. See, e.g., Piney VIII, 2026 WL 2719732, at *8 (approving service payments of $350 to $2,500); Piney VII, 2026 WL 2495247, at *9 (approving service payments of $500 to $5,000); Silverstein v. AllianceBernstein, L.P., No. 09 Civ. 5904 (JPO), 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (approving service awards of $25,000 to named plaintiffs and $1,500 to opt-in plaintiffs); Aponte v. Comprehensive Health Mgmt., Inc., No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) (approving service awards of $10,000 to named plaintiffs and $500 to opt-in plaintiffs); see also Piney VI, 2026 WL 2495247, at *9; Piney VI, 2026 WL 2110844, at *9; Piney V, 2026 WL 1894332, at *3, 8; Piney III, 2026 WL 937059, at *10; Piney I, 2025 WL 2451011, at *12. This factor therefore also weighs in favor of preliminary approval.

**v. Remaining Grinnell factors**

Having considered each of the Rule 23(e)(2) factors, the remaining Grinnell factors are "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Grinnell, 495 F.2d at 463.

As to the second Grinnell factor, although Class Members have not yet received formal notice of the Agreements, we note that hundreds of Officers who worked for the Settling Defendants have joined this action as opt-in plaintiffs and have expressed their strong support for the Agreements. (Dkt. No. 1320 ¶¶ 11, 31).

As to the stage of the proceedings and the amount of discovery completed (Grinnell factor (3)), the purpose is to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them[.]" Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999). Here, Plaintiffs and the Settling Defendants entered into the Agreements after exchanging and analyzing the Officers' employment records, calculating the damages due to the Officers, "engag[ing] in substantial and arm's length settlement discussions, [and] exchanging numerous settlement proposals, damages calculations, and additional data." (Dkt. No. 1320 ¶¶ 12–16). The Firm represents that the exchange of information enabled it to evaluate the "strengths and weaknesses of Plaintiffs' claims as well as the claims of all other Officers who worked PDP shifts for" the Settling Defendants, and their defenses. (Id. ¶ 12). This record reflects that the parties

engaged in "substantial investigation and prosecution of the claims, and substantial informal and formal settlement negotiations." Amigon, 2024 WL 5040436, at *6. This factor thus also weighs in favor of preliminary approval.

As to the Settling Defendants' ability to withstand a greater judgment (Grinnell factor (7)), we note that a defendant's "ability to pay is much less important than the other Grinnell factors, especially where the other factors weigh in favor of approving settlement." Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). Further, "a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." Manley v. Midan Rest. Inc., No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27, 2017). Here, while there is no evidence that the Settling Defendants could not "likely withstand a greater judgment[,]" (Dkt. No. 1319 at 5 (referencing Dkt. No. 781 at 30)), this factor, "does not, standing alone, indicate that the settlement is unreasonable or inadequate." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 129 (S.D.N.Y. 1997). This factor is therefore neutral as to preliminary approval. See id.; Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("The amount of the settlement . . . when considered with the other Grinnell factors, does not alone render the settlement unfair.").

As to the range of reasonableness of the NAFs in light of the best possible recovery (Grinnell factor (8)) and the range of reasonableness of the NAFs to a possible recovery in light of all the attendance risks of litigation (Grinnell factor (9)), the NAFs represent 65% of the potential damages for each of the Settlement Classes. (Dkt. Nos. 1319 at 1; 1320 ¶¶ 18–27). This percentage exceeds the range of reasonableness approved by other courts in this Circuit. See Amigon, 2024 WL 5040436, at *6 (approving 12.32% of the best possible recovery); Mikhlin, 2021

WL 1259559, at *9 (approving 52% recovery of total possible damages and stating that "[c]ourts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness."). The last two Grinnell factors, therefore, also weigh in favor of preliminary approval.

Accordingly, four of the five remaining applicable Grinnell factors weigh in favor of, and one is neutral as to, preliminary approval of the Agreements.

**vi. Cheeks review – Wolinsky factors**

As other courts in the Second Circuit have noted, "the Wolinsky factors substantially overlap with the factors that courts consider when reviewing a proposed class action settlement under Rule 23(e)[,]" including "the plaintiff's possible recovery if litigation were to continue, the liability risks of the parties, the potential expense of continued litigation, whether the agreement results from arm's-length bargaining, whether plaintiff's counsel was experienced, and the possibility of fraud or collusion." Caccavale v. Hewlett-Packard Co., No. 20 Civ. 974 (NJC) (ST), 2024 WL 4250337, at *22 (E.D.N.Y. Mar. 13, 2024). Some courts have therefore found that "satisfaction of the Grinnell factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." D'Angelo v. Hunter Bus. Sch., Inc., No. 21 Civ. 3334 (JMW), 2023 WL 4838156, at *5 n.1 (E.D.N.Y. July 28, 2023); see Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 201–07 (2d Cir. 2015). The crux of the inquiry is "whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." Mills v. Cap. One, N.A., No. 14 Civ. 1937 (HBP), 2015 WL 5730008, at *6–7 (S.D.N.Y. Sept. 30, 2015) (citing Wolinsky and noting that Cheeks review of collective action settlement is less stringent than review of Rule 23 class action settlement).

Our analysis above substantially addresses the first three Wolinsky factors — the range of possible recovery, the avoidance of burdens and expenses, and the seriousness of the litigation risks. 900 F. Supp. 2d at 335. As to the remaining two factors, the Court has no trouble concluding that the Agreements resulted from arm's-length negotiations by experienced counsel concerning complex, disputed issues of fact and law. (See Dkt. No. 1320 ¶¶ 3–4, 15–17). Finally, "there is no evidence that even suggests any collusion." Mills, 2015 WL 5730008, at *7.

Accordingly, the Court finds that, under the totality of the circumstances, the Agreements are fair and reasonable under Cheeks.

* * *

For the foregoing reasons, preliminary approval of the Agreements, conditional certification of the Settlement Classes, and final certification of the Collectives are warranted, pending the Fairness Hearing.

**2. Appointment of Class Counsel**

When a court certifies a class under Rule 23, it must also "appoint class counsel . . . [who] must fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(A)–(B). In appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

For the reasons set forth above, (see §§ III.B.1.a, III.B.1.d.i, supra), the Firm will fairly and adequately represent the interests of the Settlement Classes and the Court therefore appoints the Firm as Class Counsel.

**3. Proposed Notice and Distribution**

Having determined that preliminary approval of the Agreements and conditional certification of the Settlement Classes are warranted, the Court "must direct notice in a reasonable manner to all class members who would be bound by the" Agreements. Fed. R. Civ. P. 23(e)(1)(B). For Rule 23(b)(3) classes, the Court must direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements . . . Notice is adequate if it may be understood by the average class member." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005). In addition, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." Mikhlin, 2021 WL 1259559, at *12.

The Notices contain a general description of the claims and defenses, the persons included in the Settlement Classes, the calculation of Class Members' proportionate share of the NAFs, and the procedure to submit a claim form, object, and opt out. (Dkt. Nos. 1320-2; 1320-6; 1320-10; 1320-14; 1320-18; 1320-19; 1320-23; 1320-27; 1320-31; 1320-35; 1320-39). The Notices also explain how Class Members can be heard at the Fairness Hearing, that the Court will exclude from the Settlement Classes any member who timely and properly requests exclusions, and the binding effect of a class judgment on Class Members who do not opt out.

To the extent they have not already done so, by **November 30, 2026**, the Settling Defendants shall provide the Administrator and the Firm with lists containing contact information for Class Members for each Settlement Class (the "Class List"). See Marin v. 310 Bowery Grp. LLC, No. 24 Civ. 1340 (SLC), 2025 WL 893731, at *10 (S.D.N.Y. Mar. 24, 2025). By **December 14, 2026**, the Administrator shall mail the Notices to the Class Members for each Settlement Class. (See § II.A.3, supra). By the Bar Date, Class Members must return the claim form, provide written notice of their intention to opt out of the Agreement, or mail a written statement of objections to be heard at the Fairness Hearing. (Id.)

Because the Notices and the notice procedures set forth in the Agreements provide reasonable notice to all Class Members and clearly and concisely state in plain, easily understood language the information required by Rule 23(c)(2)(B), the Court approves the Notices.

## IV. CONCLUSION

For the reasons set forth above, the Motion is **GRANTED**, and it is **ORDERED** that:

(1) For the purposes of settlement only, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court **GRANTS** conditional certification of the following Settlement Classes:

a. The MIR Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for MIR in New York State, through the PDP, at any time from January 23, 2019 through December 23, 2024, and who do not opt out of the Settlement. Excluded from the MIR Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the MIR Notice (Dkt. No. 1320-2) and this Opinion and Order.

b. The COTC Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for COTC in New York State, through the PDP, at any time from January 23, 2019 through May 8, 2026, and who do not opt out of the Settlement. Excluded from the COTC Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the COTC Notice (Dkt. No. 1320-6) and this Opinion and Order.

c. The BPC Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for BPC in New York State, through the PDP, at any time from January 23, 2019 through March 2, 2025, and who do not opt out of the Settlement. Excluded from the BPC Settlement Class are any Class Members who validly and timely

request exclusion in accordance with the requirements set forth in the BPC Notice (Dkt. No. 1320-10) and this Opinion and Order.

d. The 34th Street Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains and Inspectors who worked for 34th Street in New York State, through the PDP, at any time from January 23, 2019 through April 28, 2025, and who do not opt out of the Settlement. Excluded from the 34th Street Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the 34th Street Notice (Dkt. No. 1320-14) and this Opinion and Order.

e. The Target Settlement Class is comprised of all current and former Officers, Detectives, Sergeants, and Lieutenants, Captains, and Inspectors (together referred to as "Officers") of the NYPD, or the authorized legal representatives of such Officers, who worked paid details at a Target location in New York State during January 23, 2019 through August 31, 2025 who are included on the Class List[64] and who do not opt out of the Settlement. Excluded from the Target Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the Target Notices (Dkt. Nos. 1320-18; 1320-19) and this Opinion and Order.

f. The Levy Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who

[64] See Dkt. No. 1320-17 § 1.8 (defining Class List).

worked at Levy in New York State, through the PDP, at any time from January 23, 2019 through September 7, 2025, and who do not opt out of the Settlement. Excluded from the Levy Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the Levy Notice (Dkt. No. 1320-23) and this Opinion and Order.

g. The RSA Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for RSA in New York State, through the PDP, at any time from January 23, 2019 through October 12, 2024, and who do not opt out of the Settlement. Excluded from the RSA Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the RSA Notice (Dkt. No. 1320-27) and this Opinion and Order.

h. The YIFH Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for YIFH in New York State, through the PDP, at any time from January 23, 2019 through May 10, 2023, and who do not opt out of the Settlement. Excluded from the YIFH Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the YIFH Notice (Dkt. No. 1320-31) and this Opinion and Order.

i. The Burlington Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for, or provided services to, Burlington through the PDP in

New York State at any time from January 23, 2019 through February 13, 2025, and who do not opt of the Settlement. Excluded from the Burlington Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the Burlington Notice (Dkt. No. 1320-35) and this Opinion and Order.

j. The YMF Settlement Class is comprised of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for YMF in New York State, through the PDP, at any time from January 23, 2019 through April 26, 2025, and who do not opt out of the Settlement. Excluded from the YMF Settlement Class are any Class Members who validly and timely request exclusion in accordance with the requirements set forth in the YMF Notice (Dkt. No. 1320-39) and this Opinion and Order.

(2) For settlement purposes only, the Court **GRANTS** final certification of the following FLSA collective actions:

a. The MIR Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for MIR in New York State, through the PDP, at any time from January 23, 2022 through December 23, 2024, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

b. The COTC Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for COTC in New York State, through the PDP, at any time from January 23, 2022

through May 8, 2026, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

c. The BPC Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for BPC through the PDP at any time from January 23, 2022 through March 2, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

d. The 34th Street Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains and Inspectors who worked for 34th Street in New York State, through the PDP, at any time from January 23, 2022 through April 28, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

e. The Target Collective consists of all current and former Officers, Detectives, Sergeants, and Lieutenants, Captains, and Inspectors (together referred to as "Officers") of the NYPD, or the authorized legal representatives of such Officers, who worked paid details at a Target location in New York State during January 23, 2022 through August 31, 2025 who are included on the Class List, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

f. The Levy Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked at Levy in New York State, through the PDP, at any time from January 23, 2022

through September 7, 2025," and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

g. The RSA Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for RSA in New York State, through the PDP, at any time from January 23, 2022 through October 12, 2024, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

h. The YIFH Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for YIFH in New York State, through the PDP, at any time from January 23, 2022 through May 10, 2023, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

i. The Burlington Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who performed work for, or provided services to, Burlington through the PDP in New York State at any time from January 23, 2022 through February 13, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

j. The YMF Collective consists of all current and former NYPD Officers, Detectives, Sergeants, Lieutenants, Captains, and Inspectors who worked for YMF in New York State, through the PDP, at any time from January 23, 2022

through April 26, 2025, and who have filed a Consent to Join Form in the Action and/or who submit a Claim Form.

(3) For purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23, the Court appoints the following class representatives (the "Lead Plaintiffs") on behalf of the Settlement Classes:

a. The MIR Lead Plaintiffs are James Divino and Alexis Yanez.

b. The COTC Lead Plaintiffs are John Cannon and Wang Ting.

c. The BPC Lead Plaintiffs are Arturo Delgado, Anna Garlinska, Tuhin Kahn, Wang Ting, Alexis Yanez, Sophia Daly, Devon Dawkins, M. Mostayen Faysal, Tamara Lauzier, and Sudan Osorio.

d. The 34th Street Lead Plaintiffs are Sophia Daly, Devon Dawkins, Arturo Delgado, Anna Garlinska, Jose Martinez, and Wang Ting.

e. The Target Lead Plaintiffs are Michael Miron, James Divino, Jose Martinez, Michael Kmiotek, Alexis Yanez, Wang Ting, Sophia Daly, Anna Garlinska, Desmond Grant, Tuhin Kahn, Tamara Lauzier, Sudan Osorio, Devon Dawkins, M. Mostayen Faysal, and Charlie Ruiz-Reyes.

f. The Levy Lead Plaintiff is Tamara Lauzier.

g. The RSA Lead Plaintiffs are M. Mostayen Faysal and Michael Miron.

h. The YIFH Lead Plaintiff is Arturo Delgado.

i. The Burlington Lead Plaintiffs are John Cannon, Devon Dawkins, M. Mostayen Faysal, Anna Garlinska, Tamara Lauzier, Sudan Osorio, Charlie Ruiz-Reyes, and Wang Ting.

j. The YMH Lead Plaintiffs are Randy Chow and Tamara Lauzier.

(4) For settlement purposes only, pursuant to Rule 23(g), Faruqi & Faruqi, LLP is certified as Class Counsel for the Settlement Classes and is authorized to act on behalf of the Lead Plaintiffs, the Settlement Classes, and the Class Members with respect to all acts or consent required or that may be given pursuant to the Agreements, including all acts that are reasonably necessary to consummate the Agreements.

(5) For settlement purposes only, the prerequisites of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied as to the Settlement Classes, in that: (i) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (ii) there are questions or law or fact common to the Settlement Classes; (iii) the claims of the Lead Plaintiffs are typical of the claims of the Class Members of the respective Settlement Classes; (iv) the Lead Plaintiffs will fairly and adequately represent the interests of their respective Settlement Class; (v) questions of law and fact common to the Settlement Classes predominate over any questions affecting only individual Class Members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of this action.

(6) The Court **GRANTS** preliminary approval of the Agreements, in that: (i) the Agreements result from good faith, arm's-length negotiations; (ii) the relief provided to the Settlement Classes is adequate; (iii) the Agreements treat Class Members equitably relative to each other; and (iv) Class Counsel and the Settling Defendants' counsel are experienced in class-action wage-and-hour litigation and had sufficient information to evaluate the Agreements.

(7) The Court substantially approves the form, substance, and requirements of the Class Notices and Claim Forms. (Dkt. Nos. 1320-2; 1320-6; 1320-10; 1320-14; 1320-18; 1320-19; 1320-23; 1320-27; 1320-31; 1320-35; 1320-39). The parties shall update any dates and deadlines prescribed in the Class Notices and Claim Forms to conform with this Opinion and Order.

(8) Analytics Consulting LLC is appointed as Administrator and is authorized to mail the Notices and Claim Forms, once updated, consistent with the Agreements and this Opinion and Order, to the Class Members as provided in the Agreements.

(9) Within three (3) days after the Bar Date, the Administrator shall file any written objections to the Agreement submitted by a Class Member who has not opted-out and that is postmarked on or before the Bar Date.

(10) The Fairness Hearing is scheduled for **April 27, 2027 at 10:00 a.m. ET** in Courtroom 18A, 500 Pearl Street, New York, NY 10007. Any participant requesting permission to bring an electronic device (e.g., cellphone, laptop, tablet) into the Courthouse for use at the Fairness Hearing must email to Chambers (Cave_NYSDChambers@nysd.uscourts.gov) a completed Electronic Device Order on or before **April 20, 2027**. The Electronic Device Order form is available on the Court's website at https://nysd.uscourts.gov/forms/fillable-form-electronic-devices-general-purpose.

The parties submitted proposed orders setting forth the settlement procedures and schedule (Dkt. Nos. 1320-3; 1320-7; 1320-11; 1320-15; 1320-20; 1320-24; 1320-28; 1320-32; 1320-36; 1320-40), which we will enter separately following this Opinion and Order.

The Clerk of Court is respectfully directed to close Dkt. No. 1319.

Dated: New York, New York
November 12, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge